1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL MITCHELL, ROBIN BALL, LUKE
RETTMER, ARMEN TOOLOEE,
NATHANIEL CASEY, MATTHEW WALD,
SECOND AMENDMENT FOUNDATION, and
NATIONAL RIFLE ASSOCIATION,

Plaintiffs,

v.

CHUCK ATKINS, in his official capacity as the
Sheriff of Clark County, Washington, CRAIG
MEIDL, in his official capacity as the Chief of
Police of Spokane, Washington, and TERESA
BERNTSEN, in her official capacity as the
Director of the Washington State Department
of Licensing,

Defendants.

The Honorable Ronald B. Leighton

No. 3:19-cv-05106-RBL

OPPOSITION TO ATKINS AND MEIDL
MOTIONS TO DISMISS

ORAL ARGUMENT REQUESTED

OPPOSITION TO ATKINS & MEIDL MOTION TO DISMISS - i
No. 3:18-cv-05106-RBL

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................... 1

II. STANDARD OF REVIEW .............................................................................. 1

III. RELEVANT FACTS AND LAW GOVERNING PLAINTIFFS AND THE LEOS ............. 2

IV. ARGUMENT .................................................................................................. 3

    A.  The FAC States Proper Official Capacity Claims ...................................... 3

    B.  The Dealers And Young Adults Have Standing ........................................ 4

    C.  Mitchell States A Commerce Clause Claim Against Atkins ..................... 10

    D.  The FAC States Claims By Young Adults Against The LEOs .................. 12

    E.  The Organizations Have Stated A Claim Against The LEOs .................... 13

    F.  All Plaintiffs' Claims Are Ripe ................................................................. 14

    G.  Qualified Immunity Is Irrelevant In A Suit Seeking Prospective Relief Against State Actors Named In Their Official Capacities ....................................... 15

    H.  The LEOs Passing Remarks On Subject Matter Jurisdiction Neither Preserve An Argument Nor Withstand Scrutiny ......................................................... 15

    I.  If the FAC Is Not Adequately Pled, Plaintiffs Must Be Granted Leave to Amend ......................................................................................................... 16

V. CONCLUSION .............................................................................................. 17

OPPOSITION TO ATKINS & MEIDL MOTION TO DISMISS - ii
No. 3:18-cv-05106-RBL

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## Table of Authorities

### Cases

*Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041 (9th Cir. 2000) ...................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 1, 11

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) ................................. 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 1

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573 (1986) ................... 10

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997) .................... 10, 11

*D.C. v. Heller*, 554 U.S. 570 (2008) ................................................................. 5, 9

*Doe v. Bolton*, 410 U.S. 179 (1973) ...................................................................... 9

*E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018)............................... 14

*Ex parte Young*, 209 U.S. 123 (1908)............................................................... 8, 16

*Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1 (1928)............................................11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ........................................................... 15

*Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754 (9th Cir.).................................. 16

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977)........................... 14

*Jackson v. City & Cty. of San Francisco*, 829 F. Supp. 2d 867 (N.D. Cal. 2011) ....................... 5, 10

*Jessop v. City of Fresno*, 918 F.3d 1031 (9th Cir. 2019) ......................................... 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..............................................7, 12

*Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101 (9th Cir. 2000)............................................................................................... 4

*Matson v. United Parcel Servs., Inc.*, No. C10-1528 RAJ, 2018 WL 3608396 (W.D. Wash. July 26, 2018) .............................................................................. 13

*MedImmune v. Genentech*, 549 U.S. 118 (2007) .............................................. 5, 8, 9

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005)......................................... 3, 4

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)........................... 4

*Moore v. Urquhart*, 899 F.3d 1094 (9th Cir. 2018) .............................................. 13

*Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017).................................................... 15

*National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012) ....................11

*New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982)....................................11

*Nw. Sch. of Safety v. Ferguson*, 699 F. App'x 707 (9th Cir. 2017) ................................... 6

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

*Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008 (9th Cir. 1994) ................................................11

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................... 15

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) .................................. 13

*Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992) ........................................ 12

*Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007)................................... 12

*Rodriguez v. Prudential Insurance Company of America*, 2019 WL 1040406 (W.D. Wash. 2019) ................................................................................................................... 2

*Roe v. Wade*, 410 U.S. 113 (1973) ................................................................................... 12

*San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ..............................5, 6, 12

*Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646 (9th Cir. 2002) ................................................ 6

*Steffel v. Thompson*, 415 U.S. 452 (1974) ....................................................................... 9

*Stoianoff v. State of Mont.*, 695 F.2d 1214 (9th Cir. 1983) .......................................................... 6

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ........................................................ 9

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) ............................ 6, 14

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002)........................................ 16

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) ..................................................... 12

### STATUTES

42 U.S.C. § 1983 .......................................................................................................... 16

RCW 9.41.110 ................................................................................................2, 3, 4, 5

RCW 9.41.124 .......................................................................................................... 2, 3

RCW 9.41.240.......................................................................................................... 2, 3

### RULES

Fed. R. Civ. P. 12.................................................................................................. 11, 15

Fed. R. Civ. P. 15.................................................................................................... 16

Opposition To Atkins & Meidl Motion To Dismiss - iv
No. 3:18-cv-05106-RBL

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

# I. Introduction

Initiative No. 1639 ("I-1639") amends Washington firearms law to make certain sales of self-loading rifles illegal. Plaintiffs have challenged the ban as an unconstitutional infringement of their Second Amendment rights. They seek only prospective relief from Defendants Atkins and Meidl, both sued in their official capacities. That prospective relief, both declaratory and injunctive, will allow constitutionally permissible sales to go forward in full compliance with state law, eliminating the now-existing threat that Plaintiffs Mitchell and Ball will lose their businesses if they make certain rifle sales.

Plaintiffs' First Amended Complaint ("FAC") alleges facts that show, in light of governing state law, all Plaintiffs have suffered harm because of the enforcement threat posed by Defendants Clark County Sheriff Chuck Atkins and Spokane Chief of Police Craig Meidl (the "LEOs"). Plaintiffs Luke Rettmer, Armen Tooloee, Nathaniel Casey, and Matthew Wald (the "Young Adults") have all been denied the right to purchase certain rifles because the LEOs are obliged by state law to revoke the license of any dealer who sells to them. Plaintiffs Dan Mitchell and Robin Ball (the "Dealers") have both lost potential sales, again because the LEOs will revoke their licenses if they make those sales. And Plaintiffs National Rifle Association and Second Amendment Foundation (the "Organizations"), of which various among the Young Adults and Dealers are members, stand in the shoes of these and other members who similarly want to make now-banned firearms sales and purchases but cannot because of the LEOs' enforcement threat. The FAC states claims by all Plaintiffs against the LEOs in their official capacities, seeking prospective declaratory and injunctive relief, against which the LEOs cannot assert qualified immunity.

# II. Standard Of Review

Determining the merits of a motion to dismiss for failure to state a claim requires that the facts alleged in the complaint are taken as true, and all reasonable inferences are drawn in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face." *Rodriguez v. Prudential Insurance Company of America*, Slip Copy at *1, 2019 WL 1040406

Opposition To Atkins & Meidl Motion To Dismiss - 1
No. 3:18-cv-05106-RBL

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

(W.D. Wash. 2019).Viewed in this light, the FAC clearly states a claim by at least one Dealer, at least one Young Adult, and both Organizations against each LEO. Notably, in reviewing the LEOs' Motions to Dismiss, it is apparent that both motions ask the Court to make only inferences against the Plaintiffs and FAC, and that most of the requested inferences are not reasonable, but unreasonably tilt away from reading the FAC as stating any claim.

## III. RELEVANT FACTS AND LAW GOVERNING PLAINTIFFS AND THE LEOs

Three relevant portions of state law govern the actions of the parties to this case, and require the LEOs to remain parties in their official capacities, so that the plaintiffs can secure the complete declaratory and injunctive relief they seek.

First, I-1639 bans selling self-loading rifles to young adults. RCW 9.41.240(1). Second, I-1639 bans selling self-loading rifles to residents of other states, effective July 1, 2019. RCW 9.41.124. State law requires every firearms dealer to have a license, to self-report details of every sale to the official who issues that license, and requires that official to revoke the license for any violations of state law. RCW 9.41.110(4).

The LEOs are proper defendants in their official capacities due to their roles defined in state law. "The duly constituted licensing authorities of any city, town, or political subdivision of this state shall grant licenses in forms prescribed by the director of licensing effective for not more than one year from the date of issue permitting the licensee to sell firearms within this state *subject to the following conditions*, for breach of any of which the license *shall be forfeited* and the licensee subject to punishment as provided in RCW 9.41.010 through 9.41.810." RCW 9.41.110(4) (emphasis added). Pursuant to this statute, Atkins issues a license to Mitchell, FAC ¶ 44, and Meidl issues a license to Ball. FAC ¶ 49.

Among the "following conditions" to which the Dealers' licenses are subject is that "[n]o pistol or semiautomatic assault rifle may be sold: (i) In violation of any provisions of RCW 9.41.010 through 9.41.810; nor (ii) may a pistol or semiautomatic assault rifle be sold under any circumstances unless the purchaser is personally known to the dealer or shall present clear evidence of his or her identity." RCW 9.41.110(8)(a). In other words, if Mitchell or Ball sells a self-

OPPOSITION TO ATKINS & MEIDL MOTION TO DISMISS - 2
No. 3:18-cv-05106-RBL

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  loading rifle in violation of any provision of RCW 9.41.010 through 9.41.810, the LEO who issued

2  the license requires them to forfeit it.

3      RCW 9.41.240, as amended by I-1639, forbids sales of self-loading rifles to young adults. If

4  Mitchell or Ball makes such a sale, Atkins or Meidl must revoke the license he granted. Mitchell

5  and Ball would lose their businesses because the license is required for them to operate. RCW

6  9.41.110. For that reason, the Dealers refused to sell self-loading rifles to the Young Adults. FAC

7  ¶¶ 64, 103. Similarly, as of July 1, 2019, RCW 9.41.124, as amended by I-1639, forbids a dealer from

8  selling self-loading rifles to residents of other states. Just as with banned sales to Young Adults, if

9  Mitchell makes such a sale on or after July 1, 2019, Atkins is required by state law to revoke

10  Mitchell's license. As such, Mitchell has already stopped placing orders for firearms that he would

11  otherwise order and stock in anticipation of sales beginning July 1. Those foregone orders now

12  constitute foregone sales that he will never be able to make. FAC ¶¶ 109, 115.

13      Taken together, these allegations of the FAC and relevant state laws show that the FAC

14  states claims by Rettmer, Tooloee, Wald, Mitchell, and the Organizations for three causes of action

15  against Sheriff Atkins. It states claims for two causes of action wo against Chief Meidl, by Casey,

16  Ball, and the Organizations.

17  ### IV. Argument

18  **A.   The FAC States Proper Official Capacity Claims**

19      In support of their arguments that the Complaint does not state "official capacity" claims

20  against the LEOs, both LEOs rely on two cases that demonstrate that the allegations of the FAC

21  meet the standards for claims against the LEOs in their official capacities. First, the FAC's

22  allegations show that the two LEOs exactly fit the first and second prongs of the test cited by the

23  LEOs in *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). Specifically, the FAC alleges

24  that each LEO defendant issues a required firearms dealer license to Mitchell and Ball. FAC ¶¶

25  44, 49. It alleges that long-standing state law requires them, as a non-discretionary obligation, to

26  revoke that license when presented with evidence of sales made in violation of state firearms laws.

27  FAC ¶¶ 35-36. Furthermore, under state law, each Dealer is required to self-report all details of

Opposition To Atkins & Meidl Motion To Dismiss - 3
No. 3:18-cv-05106-RBL

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

sales to their respective license-issuing LEO. RCW 9.41.110. This alleges sufficient facts that, if proven, will demonstrate "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" and alleges "that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision . . ." *Menotti*, 409 F.3d at 1147.

*Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101 (9th Cir. 2000) does not help the LEOs' case. There, the Ninth Circuit evaluated the grant of summary judgment in a challenge to an alleged *unwritten* policy. The plaintiff—having survived the pleading stage and given the opportunity for discovery—thereafter "adduced no evidence that the County had a policy that both amounted to deliberate indifference to Mabe's constitutional rights and was the moving force behind a violation of those rights." *Mabe*, 237 F.3d at 1111. But these are the precise fact allegations of the FAC as to each LEO. The FAC alleges that each LEO has a mandatory, non-discretionary obligation imposed by state law that he revoke the Dealers' licenses when the Dealers and Young Adults engage in constitutionally protected conduct.

As the Supreme Court held when it ensured that municipal actors like the LEOs can be called to account for violations of constitutional rights, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Here, the FAC alleges specific existing, written state laws of which the LEOs are the official and non-discretionary enforcers, and that have injured Plaintiffs. As required, the allegations of the FAC show "that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision." *Menotti,* 409 F.3d at 1147.

**B.    The Dealers And Young Adults Have Standing**

The LEOs assert that neither Dealer has standing to bring a claim against him because the Dealers "cannot show a genuine threat of imminent prosecution." Atkins Motion 12:7-8; Meidl

Motion 7:9-10. They cite the wrong standard, which is met in any event. First and foremost, the source of the harm to all Plaintiffs that has already occurred, as alleged in the FAC, ***does not*** result from the potential for criminal prosecution. For that alleged harm, criminal prosecution cases are irrelevant to the analysis. The harm alleged in the FAC results from the fact that a banned sale results in automatic forfeiture of the LEO-issued license that Dealers must have to operate their businesses—in other words, mandatory and automatic loss of the business. This prevents sales to the Young Adults, who are thereby harmed just as the Dealers are harmed.

Second, the FAC alleges that the LEOs will, in fact, enforce this unconstitutional statute, as required by law. FAC ¶¶ 49-53. The FAC thus alleges that Plaintiffs do not merely desire to engage in the forbidden conduct, they would have done so already but for the challenged law. It alleged specific sales transactions that Plaintiffs would engage in, but for the threat of enforcement. FAC ¶¶ 90, 102. These detailed allegations of the FAC go far beyond the allegations in the cases cited by the LEOs, and are sufficient to establish standing.

The LEOs rely on two cases involving criminal statutes, one of which, *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1127 (9th Cir. 1996), has been recognized by sister courts in this Circuit as overruled as to every relevant holding.[1] But equally important, local officials may elect to enforce or not enforce criminal statutes in a virtually unchallengeable exercise of prosecutorial discretion. Here, the LEOs are required by state law to revoke licenses upon receiving the mandatory self-reporting from Dealers of any violations of state firearms laws, including the challenged sales bans. According to the FAC and the relevant state law, the revocation is non-discretionary. FAC ¶¶ 47, 52; RCW 9.41.110(4).

---

[1] *Gun Rights Committee* was overruled in part by *D.C. v. Heller*, 554 U.S. 570 (2008), inasmuch as the Court in *Gun Rights Committee* rested its decision on the long-discredited theory that the Second Amendment "does not protect the possession of a weapon by a private citizen." *Gun Rights Comm.*, 98 F.3d at 1124. This is, of course, not true. "There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *Heller*, 554 U.S. at 595. The standing rules of *Gun Rights Committee* also were recognized as apparently overruled by *MedImmune v. Genentech*, 549 U.S. 118 (2007), discussed *infra*, by the Northern District of California in *Jackson v. City & Cty. of San Francisco*, 829 F. Supp. 2d 867, 871 (N.D. Cal. 2011) ("The continued vitality of *Gun Rights Committee* is also questionable in light of *MedImmune . . .*").

Opposition To Atkins & Meidl Motion To Dismiss - 5
No. 3:18-cv-05106-RBL

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Furthermore, unlike *Gun Rights Comm.*, 98 F.3d at 1127, where the court held that plaintiffs "have not articulated concrete plans to violate" the challenged Act, here the Plaintiffs cited specific dates on which they would have made banned sales but for the existence of I-1639. FAC ¶¶ 64, 104. Similarly, in *Nw. Sch. of Safety v. Ferguson*, 699 F. App'x 707, 709 (9th Cir. 2017), an unpublished memorandum decision, the Court indicated that the plaintiffs had no concrete plan to violate the challenged act, and may not even have alleged past activities within the ambit of the statute. Here, by contrast, the Dealers and Young Adults specifically alleged dates on which they would have engaged in prohibited conduct but for the ban enacted by I-1639.

Moreover, while the LEOs' recitation of the constitutional standard for standing from *Scott*, *Thomas*, and *Stoianoff* is correct, it actually reveals that the FAC alleges sufficient facts to demonstrate standing. In *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646 (9th Cir. 2002), the plaintiff filed suit to challenge the use of racial classifications in enrollment decisions, but did so before the process for enrollment decisions had even begun. In the event, no racial classifications were used in decisions, and the Court concluded that the plaintiff had lacked standing at the outset. *Id.* at 655. And in *Stoianoff*, the court held that "appellant had no standing to challenge this advertising prohibition . . . [where] Appellant admitted, in his brief and at oral argument, that he has no plans to advertise and that he does not fear prosecution under this portion of the statute." *Stoianoff v. State of Mont.*, 695 F.2d 1214, 1223 (9th Cir. 1983). Finally, in *Thomas*, also cited by the LEOs, although the plaintiffs challenged a 25-year-old law, the only concrete harm they claimed was that they violated the law to support one set of their beliefs, yet in contravention of another set of beliefs requiring compliance with laws. The Ninth Circuit regarded this as "essentially another way of saying that the mere existence of a statute can create a constitutionally sufficient direct injury, a position that we have rejected before and decline to adopt now." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).[2] Here, by contrast, the Dealers have

---

[2] As in *Stoianoff*, the *Thomas* plaintiffs also challenged an advertising ban, but admitted that they had never violated it nor intended ever to violate it in the future. *Thomas*, 220 F.3d at 1140 n.5.

already suffered financial harm by forgoing banned sales, which they would otherwise undertake but for the required forfeiture of their entire businesses. FAC ¶¶ 64, 104.

LEOs cite both *Thomas* and *Gun Rights Committee* for the principal that plaintiffs' "general intent to violate a statute at some unknown date in the future" is insufficient for standing. Atkins 13:8-9; Meidl, 8:14-15. But the FAC does not allege such vague generalities. Instead, it alleges exact dates and times in the recent past that Young Adults sought to purchase banned firearms from Dealers, and Dealers refused because to make that sale would require them each to forfeit their business licenses to the LEOs who issue them. FAC ¶¶ 64, 104. This is no "vague generality," but a concrete harm that each Young Adult and each Dealer has already suffered because of the mandate on the LEOs that they revoke Dealers' licenses if they engage in conduct that the Plaintiffs challenge as constitutionally protected.

Two Supreme Court cases demonstrate that the allegations of the FAC are sufficient to demonstrate standing. The leading Supreme Court case on standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), requires plaintiffs to allege "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal citations and alterations omitted). Each of these elements is alleged as fact in the FAC. The Dealers have a legally protected interest in selling, and the Young Adults a legally protected interest in buying, the banned rifles. That interest is invaded by I-1639 and the LEOs' mandatory state law obligation to revoke the Dealers' licenses if such sales occur. This is not hypothetical; the FAC cites dates on which such sales would have occurred but for the ban and enforcement mechanisms that threatens the very livelihood of the Dealers. That also creates the causal connection, as alleged in the FAC: the enforcement mechanism of state law, which mandates license forfeiture by the LEOs, is the sole reason those sales did not go forward. Finally,

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1   if the challenged act is declared unconstitutional and enjoined, the harm is relieved, and the desired

2   sales and purchases can proceed.

3       *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), also demonstrates that Plaintiffs

4   here have alleged sufficient injury for standing in this case under the Declaratory Judgment Act. In

5   that case, MedImmune, a multi-million dollar drug company, challenged the validity of a patent it

6   licensed, without first breaching the license and incurring some degree of financial harm from

7   breach of contract. The Supreme Court agreed that it had standing, even without first electing to

8   incur some modicum of financial harm. In that case, a contract dispute between private parties, the

9   Court noted that it was merely applying the existing rule governing standing in litigation between

10  a citizen and its government: "where threatened action by government is concerned, we do not

11  require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the

12  threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own

13  action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but

14  nonetheless does not eliminate Article III jurisdiction." *MedImmune,* 549 U.S. at 128–29.

15      There could hardly be a more precise description of the case presented by the FAC. The

16  government, through the offices of Sheriff Atkins and Chief Meidl, threaten to revoke the required

17  business licenses of Mitchell and Ball. Plaintiffs are not required to expose themselves to the

18  threatened liability before bringing suit to challenge the law. If a multibillion dollar company like

19  MedImmune need not risk modest money damages for breach of contract in order to have standing

20  to challenge a patent it licenses, similarly the Dealers need not risk losing their entire businesses

21  before challenging the law that precludes them from making sales they otherwise would make.

22      Indeed, in *MedImmune*, the Court specifically addressed the topic of the LEOs' challenge

23  to standing in this case. The LEOs argue that the Dealers lack standing specifically because they

24  continue to comply with the challenged law, albeit under threat of license revocation. Atkins 14:3-

25  6; Meidl 9:11-14. Citing a series of cases including the seminal *Ex parte Young*, 209 U.S. 123 (1908),

26  the *MedImmune* Court said: "the declaratory judgment procedure is an alternative to pursuit of the

27  arguably illegal activity. . . In each of these cases, the plaintiff had eliminated the imminent threat

Opposition To Atkins & Meidl Motion To Dismiss - 8
No. 3:18-cv-05106-RBL

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute
2  handbills at the shopping center). That did not preclude subject-matter jurisdiction because the
3  threat-eliminating behavior was effectively coerced." *MedImmune*, 549 U.S. at 129. So too, in this
4  case, the FAC plainly alleges that the "threat-eliminating behavior" is coerced under threat of the
5  Dealers losing their business licenses.

6      Similarly, in *D.C. v. Heller*, 554 U.S. 570 (2008), the Supreme Court entertained a
7  challenge to a licensing regime even though the plaintiff had not violated the regulations and
8  incurred a criminal penalty. It was sufficient for the Court's jurisdiction that Heller had been
9  denied a license; he was not required to then violate the law and incur prosecution. Here, where
10 both Dealers have alleged that their respective licenses are subject to mandatory forfeiture, they
11 need not take the ultimate step of sacrificing their licenses and businesses to the LEOs before
12 challenging the unconstitutional law. This follows a long line of Supreme Court case law
13 demonstrating beyond dispute that a plaintiff need not commit a criminal act in order to challenge
14 the constitutionality of a criminal law, nor put his or her business at risk of termination to challenge
15 the civil enforcement provisions. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158
16 (2014) ("One recurring issue in our cases is determining when the threatened enforcement of a
17 law creates an Article III injury. When an individual is subject to such a threat, an actual arrest,
18 prosecution, or other enforcement action is not a prerequisite to challenging the law"); *Steffel v.*
19 *Thompson*, 415 U.S. 452, 459 (1974) (for a plaintiff challenging the constitutionality of a criminal
20 statute, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution
21 to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional
22 rights"); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("[w]hen the
23 plaintiff has alleged an intention to engage in a course of conduct arguably affected with a
24 constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution
25 thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole
26 means of seeking relief'") (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)).

27

OPPOSITION TO ATKINS & MEIDL MOTION TO DISMISS - 9
No. 3:18-cv-05106-RBL

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    In light of this long line of Supreme Court precedent, the Northern District of California in

2    *Jackson*, 829 F. Supp. 2d 867, found that the plaintiffs had standing to challenge gun restrictions.

3    "Ultimately, though, even to the extent that at least some aspects of *Gun Rights Committee* remain

4    good law, it simply is distinguishable. Plaintiffs have not merely alleged that they 'wish and intend'

5    to violate the ordinances in some vague and unspecified way, at some unknown point in the

6    future." *Jackson*, 829 F. Supp. 2d at 871–72. So too here, Plaintiffs have alleged far more than a

7    vague wish and intent, but cited dates on which banned sales would have gone forward, and a

8    mandatory enforcement regime that would end the Dealers' businesses if they proceed.

9    **C.    Mitchell States A Commerce Clause Claim Against Atkins**

10    Defendant Atkins asserts that Mitchell lacks standing to bring a commerce clause challenge

11    to the interstate sales ban on the grounds that the commerce clause does not affect laws that

12    burden, rather than favor, in-state interests. Atkins Motion at 18. Atkins also challenges the merits

13    of the claim, asserting that the FAC fails to allege that the blatant, blanket ban on interstate

14    commerce is "clearly excessive" or a "significant burden." *Id.* Both challenges fail.

15    First, contrary to Atkins' theory, the interstate commerce clause and the Supreme Court's

16    dormant commerce clause jurisprudence hold that "[s]tate laws discriminating against interstate

17    commerce on their face are virtually per se invalid." *Camps Newfound/Owatonna, Inc. v. Town of*

18    *Harrison, Me.*, 520 U.S. 564, 575 (1997) (internal citation omitted). This includes laws that favor

19    out-of-state businesses over in-state businesses, like the tax law in *Town of Harrison* that taxed in

20    state businesses more heavily if they catered to out-of-state residents. "By encouraging economic

21    isolationism, prohibitions on out-of-state access to in-state resources serve the very evil that the

22    dormant Commerce Clause was designed to prevent." *Town of Harrison*, 520 U.S. at 578. The

23    interstate sales ban of I-1639 is the very kind of economic protectionism that the commerce clause

24    forbids. "Economic protectionism is not limited to attempts to convey advantages on local

25    merchants; it may include attempts to give local consumers an advantage over consumers in other

26    States." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 580 (1986).

27

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    This is hardly a new rule. "A state is without power to prevent privately owned articles of
2    trade from being shipped and sold in interstate commerce on the ground that they are required to
3    satisfy local demands or because they are needed by the people of the state." *Foster-Fountain*
4    *Packing Co. v. Haydel*, 278 U.S. 1, 10 (1928). Whatever reason the state may eventually produce for
5    why it has banned residents of Oregon from buying self-loading rifles from a Washington merchant,
6    it has enacted a ban on "privately owned articles of trade from being shipped and sold in interstate
7    commerce," a ban the state lacks the power to create. *See also New England Power Co. v. New*
8    *Hampshire*, 455 U.S. 331, 338 (1982) ("Our cases consistently have held that the Commerce Clause
9    of the Constitution, Art. I, § 8, cl. 3, precludes a state from mandating that its residents be given a
10   preferred right of access, over out-of-state consumers, to natural resources located within its
11   borders or to the products derived therefrom").

12       Second, the FAC alleges that Mitchell has already been harmed by the forthcoming
13   unconstitutional ban, specifically, his orders for rifles that he would otherwise expect to sell in
14   interstate commerce have already ceased. FAC ¶ 115. This is sufficient to state a claim, and the
15   two summary judgment cases cited by Atkins do not support his proposed Fed. R. Civ. P. 12(b)(6)
16   standard. Atkins at 17-18. Instead, they show that the question of balancing burdens and benefits
17   can be fact-specific, and not appropriate to resolve on a Rule 12(b)(6) motion. Certainly neither
18   *National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012) nor *Pac. Nw.*
19   *Venison Producers v. Smitch*, 20 F.3d 1008 (9th Cir. 1994) provides any support for the argument
20   that the FAC must allege the degree of final proof discussed in those opinions. Instead, "[t]o
21   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,
22   to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Myriad cases describe
23   the difference between this and a summary judgment standard, where a plaintiff bears the burden
24   of proving those facts. Here, the FAC easily meets the pleading standard in raising a challenge to
25   a law that is "virtually per se invalid." *Town of Harrison*, 520 U.S. at 575.

26
27

Opposition To Atkins & Meidl Motion To Dismiss - 11
No. 3:18-cv-05106-RBL

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

**D.      The FAC States Claims By Young Adults Against The LEOs**

Both LEOs assert in passing that no Young Adult has plausibly pled a claim against them because neither one has personally declined to sell a banned rifle. Atkins 10:18-19; Meidl 5:9-11. They cite no support for this assertion, because none exists. One need look no further than the caption on practically every lawsuit challenging the constitutionality of government restrictions on the exercise of protected rights to see that a proper party defendant does not need to personally engage with the plaintiffs in the protected activity in order to be liable for the constitutional violation. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973) (naming the Dallas County District Attorney in a suit seeking access to abortion); *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) (naming the Commissioner of the Texas Department of State Health Services in a suit seeking access to abortion); *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992) (naming the Pennsylvania Governor, Secretary of Health, Attorney General, and a county attorney general in a case seeking access to abortion); *Lujan*, 504 U.S. 555 (naming the U.S. Secretary of the Interior to redress the injury of not being able to look at wild animals in foreign countries); *Gun Rights Comm.*, 98 F.3d 1121 (naming the Attorney General and acting Secretary of the Treasury in suit seeking to vindicate right to purchase certain guns).

Instead, as described in detail above, the LEOs plainly have the obligation to enforce the statute, and that obligation prevents the Young Adults from buying firearms legally in Washington, as they have expressly stated they desire to do and recently attempted to do. "Defendants are not required to have a 'special connection' to the unconstitutional act or conduct. Rather, state officials must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty . . ." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007). Similarly, the Ninth Circuit recently held that Washington sheriffs can be proper parties in *Ex parte Young* actions where they are responsible for action under the challenged statute:

> Actions under *Ex parte Young* can be brought against both state and county officials, so it is unnecessary for us to resolve the parties' dispute over whether the Sheriff acts on behalf of King County or the State of Washington when he executes writs of restitution. The only issue is whether the Sheriff has at least some connection to enforcement of the allegedly unconstitutional eviction procedure authorized by § 375. He does, because Washington law assigns county sheriffs the power and duty to serve and execute writs of restitution issued

Opposition To Atkins & Meidl Motion To Dismiss - 12
No. 3:18-cv-05106-RBL

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1 under § 375. The Sheriff's role in executing those writs makes him a proper defendant in
2 an *Ex parte Young* suit seeking to enjoin enforcement of § 375.

3 *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) (internal citations omitted). Similarly, the
4 Ninth Circuit has noted the proper party is the state officer who has a "fairly direct" connection
5 to the challenged law, just as the LEOs do here. "*Ex parte Young* requires 'some connection'
6 between a named state officer and enforcement of a challenged state law. . . This connection must
7 be fairly direct; a generalized duty to enforce state law or general supervisory power over the
8 persons responsible for enforcing the challenged provision will not subject an official to suit."
9 *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (internal citation
10 omitted).

11      Because each LEO has a direct connection to enforcement of the challenged law, the Young
12 Adults have properly named them as defendants to vindicate their rights to make the banned
13 purchases they seek to make. But for the LEOs obligation to revoke Dealers' licenses, the Dealers
14 would have sold specific guns to the Young Adults on identified dates in the past. It is the direct
15 connection of the LEOs to the challenged law that has resulted in the harm to the Young Adults.
16 As such, Casey has stated a claim against Meidl and the other three Young Adults against Atkins.

17 **E.      The Organizations Have Stated A Claim Against The LEOs**

18      The LEOs do not address the Organizations' standing and claims, and thereby waive any
19 argument that the Organizations are not proper parties with valid claims against each LEO. Atkins
20 simply asserts that only other plaintiffs have asserted claims. Atkins 7:13-17. Meidl footnotes an
21 assertion that the Organizations have no claims. Meidl at 4 n.6. He thereby waives it. *See, e.g.*,
22 *Matson v. United Parcel Servs., Inc.*, No. C10-1528 RAJ, 2018 WL 3608396, at *8 (W.D. Wash. July
23 26, 2018) ("Arguments raised only in footnotes, or only on reply, are generally deemed waived.").

24      In any event, even if argued, it fails. The FAC alleges sufficient facts to show that the
25 organizations have stated claims in their own right and for the benefit of their members against
26 both LEOs. As the Supreme Court held in describing the test for associational standing, "an
27 association has standing to bring suit on behalf of its members when: (a) its members would

1   otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane

2   to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires

3   the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert.*

4   *Comm'n*, 432 U.S. 333, 343 (1977). Each of those factors is met by the fact allegations of the FAC:

5   (a) the FAC alleges that the young adult plaintiffs and dealer plaintiffs are members of the

6   organizations (FAC ¶¶ 24, 32), and the foregoing discussion demonstrates that they have standing

7   in their own right; (b) the interests that the organizations seek to protect—the protection of

8   constitutional rights—are germane to the organizations' purpose; and (c) while the young adult

9   and dealer plaintiffs have individual interests that give them standing, their participation in the

10  lawsuit is not required in order to adjudicate the claims brought by the organizations..

11      The Organizations have also alleged direct standing injury, which is sufficient to support

12  standing for claims against both LEOs.

13      We have thus held that, under *Havens Realty*, "a diversion-of-resources injury is sufficient
        to establish organizational standing" for purposes of Article III, if the organization shows
14      that, independent of the litigation, the challenged "policy frustrates the organization's
        goals and requires the organization 'to expend resources in representing clients they
15      otherwise would spend in other ways."

16  *E. Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1241 (9th Cir. 2018) (internal citations

17  omitted).

18  **F.    All Plaintiffs' Claims Are Ripe**

19      The LEOs' challenge to ripeness essentially mimics the challenge to standing, citing

20  *Thomas*. Because neither LEO has yet charged any plaintiff with a crime, they assert that claims are

21  not ripe. But as shown above, the injury complained of has already occurred: lawful constitutionally

22  protected sales have not gone forth that otherwise would have, but for the LEOs' obligation to

23  revoke the Dealers' business licenses when the Dealers self-report those sales to the LEOs, as

24  required by law. The ripeness argument fails for the same reason as the standing argument. "The

25  constitutional component of the ripeness inquiry is often treated under the rubric of standing and,

26  in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d

27  at 1138. The LEOs make no argument that the Court ought to decline to exercise proper

OPPOSITION TO ATKINS & MEIDL MOTION TO DISMISS - 14
No. 3:18-cv-05106-RBL

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

jurisdiction on prudential grounds, and it should not. Plaintiffs are unable to make lawful constitutionally protected, and profitable, transactions in firearms due to the LEOs' obligation to revoke the Dealers' licenses if those transactions proceed. The case is ripe.

**G.    Qualified Immunity Is Irrelevant In A Suit Seeking Prospective Relief Against State Actors Named In Their Official Capacities**

Atkins and Meidl argue they should be dismissed under the doctrine of qualified immunity, on the grounds that no official capacity claim is alleged, and they have qualified immunity against any personal-capacity claim. Meidl 15-16; Atkins 19-20. First, neither LEO is named in an individual capacity, and, as shown above, the official-capacity claims are proper. Second, qualified immunity only shields state officials from suits seeking money damages against them personally. As the Supreme Court stated in the case establishing the modern doctrine of qualified immunity, "We therefore hold that government officials performing discretionary functions generally are ***shielded from liability for civil damages*** insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). *See also Jessop v. City of Fresno*, 918 F.3d 1031, 1034 (9th Cir. 2019) (holding that "[t]he doctrine of qualified immunity protects government officials from '***liability for civil damages*** insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'") (emphasis added) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009), in turn quoting *Harlow*); *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (noting that "the doctrine of qualified immunity . . . protects public officials from ***liability for civil damages*** . . ."). This case seeks no money damages, only prospective injunctive and declaratory relief from Atkins and Meidl in their official capacities as law enforcement officers and licensors of Plaintiffs Mitchell and Ball.

**H.    The LEOs Passing Remarks On Subject Matter Jurisdiction Neither Preserve An Argument Nor Withstand Scrutiny**

The Motions are captioned as raising challenges under Fed. R. Civ. P. 12(b)(1) , questioning the Court's subject matter jurisdiction. No arguments are developed from which the Court could

Opposition To Atkins & Meidl Motion To Dismiss - 15
No. 3:18-cv-05106-RBL

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

conclude that it lacks subject matter jurisdiction for this 42 U.S.C. § 1983 challenge, which raises federal constitutional challenges to state law. If the LEOs intend to suggest that their immunity argument calls the Court's jurisdiction into question, they are wrong for two reasons. First, as shown above, they are not entitled to qualified immunity. Second, even successful claims of sovereign or qualified immunity do not alter the subject matter jurisdiction of a federal court. "[T]he Eleventh Amendment is not a true limitation upon the court's subject matter jurisdiction, but rather a personal privilege that a state may waive" *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 760 (9th Cir.), *opinion amended on denial of reh'g*, 201 F.3d 1186 (9th Cir. 1999).

To the extent the LEOs intend the Court to consider sovereign immunity, the Court should consider that they waived the argument by not raising it. In any event, the argument fails under *Ex parte Young*, 209 U.S. 123. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (citations omitted). "This is in line with our traditional conception of the *Young* exception, which has always distinguished between a suit against a State *qua* State and a suit against a state official to enjoin the enforcement of a state act that violates federal law: the *Young* doctrine has always permitted the latter to avoid the sovereign immunity bar." *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1048 (9th Cir. 2000).

I.      **If the FAC Is Not Adequately Pled, Plaintiffs Must Be Granted Leave to Amend**

If the Court considers any of the LEOs' arguments about deficiencies in the FAC well-taken, then "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Where the LEOs claim to have identified specific omissions in alleging supposedly required facts, plaintiffs must be given the opportunity to allege those facts if the Court concludes that they are not sufficiently alleged already.

///

///

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

V. Conclusion

The LEOs' motion to dismiss is based upon a misunderstanding of the nature of the claims that Plaintiffs have asserted against them. Instead of directing the Court toward cases in which the plaintiffs sought injunctive relief from the enforcement of regulations that burden constitutional rights, the LEOs have relied upon cases that address the limited circumstances in which a court can enjoin the enforcement of a criminal statute. Moreover, the detailed factual allegations of the complaint more than amply state causes of action that are plausible on their face. Even if this Court should require additional pleading to clarify Plaintiffs' claims, leave to amend should be granted.

April 22, 2019.

Ard Law Group PLLC

By: _____

Joel B. Ard, WSBA # 40104
Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243
Attorneys for Plaintiffs

Albrecht Law PLLC

By: _____

Matthew C. Albrecht, WSBA #36801
David K. DeWolf, WSBA #10875
421 W. Riverside Ave., Ste. 614
Spokane, WA 99201
(509) 495-1246
Attorneys for Plaintiffs

Opposition To Atkins & Meidl Motion To Dismiss - 17
No. 3:18-cv-05106-RBL

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1                                                  **CERTIFICATE OF SERVICE**

2         I certify under penalty of perjury under the laws of the United States of America that on

3 April 22, 2019, I filed the foregoing with the Court's CM/ECF system, which will give notice to

4 all parties and counsel of record.

5

6                                     ARD LAW GROUP PLLC

7

8                      By

9

10                                     Joel B. Ard, WSBA # 40104

                                    Ard Law Group PLLC

11                                     P.O. Box 11633

                                    Bainbridge Island, WA 98110

12                                     (206) 701-9243

                                    Joel@Ard.law

13

14                                     Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27