HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL MITCHELL, et al,

     Plaintiff,

 v.

CHUCK ATKINS, et al,

     Defendant.

CASE NO. 3:19-cv-05106-RBL

ORDER ON MOTIONS TO DISMISS

## INTRODUCTION

THIS MATTER is before the Court on Defendants Chuck Atkins and Craig Meidl's Motions to Dismiss Plaintiffs' First Amended Complaint (FAC). Dkt. #32 & #34. Plaintiffs are a group consisting of gun dealers ("Dealers"), aspiring gun owners under the age of 21 ("Young Adults"), and gun rights advocacy organizations. They seek a declaration that several of I-1639's amendments to Washington's gun control laws are unconstitutional and ask the Court to enjoin enforcement. Specifically, Plaintiffs challenge the portions of the initiative that prohibit the sale of pistols and semiautomatic assault rifles to individuals under the age of 21 and prohibit the sale of semiautomatic assault rifles to residents of another state. They also allege a claim under 28

U.S.C. § 1983, arguing that the challenged portions of I-1639 infringe their Second Amendment rights and violate the Commerce Clause.

Atkins is the Sheriff of Clark County and Meidl is the Chief of Police of Spokane. They argue that Plaintiffs lack standing to assert a claim against them because neither officer has enforced I-1639 against Plaintiffs or threatened to do so. Atkins and Meidl also contend that they are not proper defendants in this action because any potential injuries Plaintiffs suffered are the result of I-1639 itself, not its enforcement. Finally, Atkins and Meidl assert that Plaintiffs' 1983 claim fails because Clark County and Spokane's enforcement of I-1639 is non-discretionary.

For the following reasons, Atkins and Meidl's Motions to Dismiss are GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs filed this action in February of 2019. Their lawsuit challenges the constitutionality of sections 12 and 13 of I-1639, which was approved by voters in 2018. Section 12 amends RCW 9.41.124, which formerly permitted out-of-state individuals to purchase any weapon available to Washington residents. The amendment created by I-1639 creates an exception for "firearms defined as semiautomatic assault rifles." RCW 9.41.124.

Section 13 amends RCW 9.41.240 to include the following: "A person under twenty-one years of age may not purchase a pistol or semiautomatic assault rifle, and except as otherwise provided in this chapter, no person may sell or transfer a semiautomatic assault rifle to a person under twenty-one years of age." Section 13 also changes the rules around possession of semiautomatic assault rifles for young adults, but Plaintiffs do not appear to challenge those provisions.

1        While it is not directly challenged in this lawsuit, section 3 of I-1369 amends the

2   procedures for background checks under RCW 9.41.090. Background checks are now required

3   for all sales of semiautomatic assault rifles as well as pistols. RCW 9.41.090(6)(a). Dealers are

4   required to collect an application from the purchaser containing certain information and send it to

5   the chief of police of the municipality or the sheriff of the county, or the state if it opts to set up

6   its own background check system. RCW 9.41.090(3)(b), (6)(c). The relevant authority has the

7   power to deny the application if the applicant is ineligible to purchase the firearm under any state

8   or federal law. RCW 9.41.090(6)(c). This, too, is a change from the previous law, which only

9   allowed the authority to deny the application under state law if the purchaser was ineligible for

10  reasons related to criminal history. *See* RCW 9.41.040.

11       Two of the Plaintiffs, Daniel Mitchell and Robin Ball, are licensed firearm dealers from

12  Vancouver and Spokane, respectively. Dkt. #17 at 2. Plaintiffs Luke Rettmer, Nathaniel Casey,

13  Armen Tooloee, and Mathew Wald are all Washington residents under the age of 21 but over the

14  age of 18. *Id*. at 3. According to the FAC, each of the Young Adults contacted one of the Dealers

15  on a specific date to inquire about purchasing a semiautomatic assault rifle. *Id*. at 7-10. When the

16  Young Adults stated their age, the Dealers informed them that they could not sell them

17  semiautomatic rifles under the new Washington law because of the risk it would pose to their

18  licensed status. *Id*. The FAC alleges that this harmed the Young Adults by infringing their

19  Second Amendment rights and harmed the Dealers by causing them to lose profits. *Id*. at 7-11.

20       The FAC also alleges that both of the Dealers received their licenses from Atkins or

21  Meidl and that the officers have the authority to revoke their licenses. *Id*. at 4. While Meidl has

22  apparently not made a statement about Washington's gun laws, Atkins allegedly expressed that

23

24

1    "[t]he Clark County Sheriff's Office will adhere to the law as passed by a vote of the people

2    unless a court rules that it is unconstitutional." *Id*. at 6.

3                                        **DISCUSSION**

4    **1.      Legal Standard**

5           Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable

6    legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

7    *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege

8    facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

9    678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

10   content that allows the court to draw the reasonable inference that the defendant is liable for the

11   misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts,

12   conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper

13   12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

14   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation

15   to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

16   and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

17   must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

18   550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead

19   "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at

20   678 (citing *id*.).

21          On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to

22   amend the pleading was made, unless it determines that the pleading could not possibly be cured

23   by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242,

24

1   247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether

2   there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v.*

3   *Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

4   **2.    Justiciability**

5       Atkins and Meidl argue that the Dealers lack standing to challenge I-1639 because

6   neither of them have stated that they violated the amended statutes in the past or intend to violate

7   them at a specific time in the future. They contend that the Dealers do not allege that they were

8   ever threatened with prosecution or license revocation. Atkins and Meidl also assert that the

9   Dealers' claims are not ripe for the same reasons that standing is absent.[1] Plaintiffs respond that

10  the FAC identifies specific dates in the past when the Dealers were forced to reject the Young

11  Adults' attempts to purchase firearms because of the challenged law. In addition, Plaintiffs argue

12  that they need not actually violate a statute to challenge its constitutionality.

13      A plaintiff only has standing to sue if they present a legitimate "case of controversy,"

14  meaning the issues are "definite and concrete, not hypothetical or abstract." *Thomas v.*

15  *Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). The ripeness inquiry

16  concerns whether adjudication of a dispute would be premature, causing the court to "entangle[e]

17  [itself] in abstract disagreements." *Id*. at 1138. Ultimately, however, ripeness and standing

18  overlap by both focusing on whether an injury is "real and concrete." *Id*. (quoting Gene R.

19  Nichol, Jr., *Ripeness and the Constitution*, 54 U. Chi. L. Rev. 153, 172 (1987)).

20

21

22  [1] In a footnote, Atkins and Meidl state, "In the event the Court determines the other Plaintiffs have alleged claims against Atkins [and Meidl], [they] request [they] be dismissed from those claims for the same reasons [they] should be dismissed from Mitchell's [and Ball's] claim." Dkt. #32 at 7; Dkt. #34 at 2. However, Atkins and Meidl make no

23  justiciability arguments related to the Young Adults or the Organization Defendants. Because those arguments would likely be quite different than what is actually contained in Defendants' briefs, the Court will only address

24  standing and ripeness with respect to the Dealers.

When plaintiffs challenge a statute, the standing and ripeness requirements are met if "the plaintiffs face a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," rather than an "imaginary or speculative" threat. *Id*. (internal quotations omitted). In other words, there must be a "genuine threat of imminent prosecution." *Id*. (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126–27 (9th Cir.1996)). "In evaluating the genuineness of a claimed threat of prosecution, [courts] look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Id*. (quoting *Reno*, 98 F.3d at 1126–27).

However, while the threat posed by a statute needs to be more than speculative, a plaintiff need not "expose himself to liability before bringing suit to challenge the basis for the threat— for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

Plaintiffs' allegations identify a sufficiently definite injury for purposes of standing and ripeness. While Atkins and Meidl may not have expressed specific plans to enforce the challenged laws against the Dealers, the entire business of selling guns is a "course of conduct" that makes prosecution under Washington's gun laws a realistic threat. *See Babbitt*, 442 U.S. at 298. This threat is built into the operation of RCW 9.41.090, which requires a dealer to notify

law enforcement every time they want to sell a pistol or semiautomatic assault rifle. In addition, the FAC identifies specific dates on which the Dealers passed up opportunities to sell firearms for fear of prosecution under the new laws. This amounts to a "concrete plan" to engage in activity that would be unlawful unless the Dealers decided to conform their conduct to I-1639's requirements. *Thomas*, 220 F.3d at 1139. It is well-established that the Dealers did not need to take that final step over the precipice to challenge the law constraining their business. *See MedImmune*, 549 U.S. at 129 (collecting cases).

Atkins and Meidl point to *San Diego County Gun Rights Committee v. Reno*, which held that the plaintiffs lacked standing because they had no concrete plans to violate the challenged restriction on gun possession. 98 F.3d at 1127. Atkins and Meidl argue that the Dealers have only stated a plan to *obey* I-1639. But this case differs from *Reno*, where the plaintiffs wished to engage in "unspecified conduct prohibited by the [Crime Control] Act." *Id*. at 1124. Here, Plaintiffs have alleged specific instances in the past where the Dealers lost profits by choosing not to sell specific semiautomatic rifles that they had in stock. Dkt. #17 at 7-11. The requisite "time[s] and date[s]" missing in *Reno* are present in this case. *See id.* at 1127. It is difficult to see how the Dealers could sustain a more concrete form of injury without actually violating the law, which they are not required to do. The standing and ripeness requirements have therefore been satisfied.

**3.      Declaratory and Injunctive Relief**

In their Motions, Atkins and Meidl argue that Plaintiffs' claims for declaratory and injunctive relief cannot be directed at them because they did not enact I-1639 or deny the sale of firearms to the Young Adults. However, Plaintiffs respond that these claims are, in fact, directed at Atkins and Meidl. Plaintiffs argue that Atkins and Meidl have a duty to enforce the challenged

laws, making them proper defendants in an *Ex Parte Young* action.[2] Atkins and Meidl reply that they merely have a generalized duty to enforce the law, which is not enough for a plausible claim. They also argue that the department of licensing, not local law enforcement, has the power to revoke a dealer's license.

The Supreme Court's ruling in *Ex Parte Young* created a cause of action for plaintiffs to enjoin "continuing violations of federal law" by suing government officers in their official capacities. *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). "Actions under *Ex Parte Young* can be brought against both state and county officials." *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018). However, for a court to properly exercise jurisdiction over a defendant under *Ex Parte Young*, there must be "some connection between a named state officer and enforcement of a challenged state law." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (internal quotation omitted). "This connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.*

In *Moore v. Urquhart*, the plaintiff challenged an allegedly unconstitutional eviction procedure under which a landlord could obtain a court-issued writ of restitution after just one notice to a tenant who had unpaid rent. 899 F.3d at 1098. The plaintiff sued the sheriff, who had the "power and duty to serve and execute writs of restitution" under the statute. *Id.* at 1103. The court held that the sheriff's role in executing the writ made him a proper defendant in an *Ex Parte Young* action seeking to enjoin enforcement of the statute. *Id.* In *Coalition to Defend Affirmative Action v. Brown*, the plaintiff sued the head of the University of California to enjoin

---

[2] The FAC does not refer to the court-created cause of action from court-created cause of action from *Ex Parte Young*, 209 U.S. 123, 156 (1908) when describing Plaintiffs' first two claims for declaratory relief. But the FAC is rather vague in general and does not explain any other basis for the first two claims either. Because Plaintiffs' claims are compatible with *Ex Parte Young*, the Court will treat them as such.

1    enforcement of a constitutional amendment prohibiting affirmative action. 674 F.3d 1128, 1132

2    (9th Cir. 2012). The defendant argued that he merely complied with the amendment and had no

3    special enforcement duty, but the court observed that the amendment "does not designate *any*

4    entity to commence enforcement proceedings." *Id*. at 1134-35. Consequently, the university head

5    was a proper defendant because of his significant role in giving the amendment effect. *Id*.

6         Here, Atkins and Meidl's are proper defendants because of their role in enforcing

7    Washington's new gun control laws. I-1639's amendments to RCW 9.41.090 provide that a

8    dealer may not deliver a pistol or semiautomatic assault rifle until they have obtained an

9    application from the purchaser, delivered it to the local chief of police or sheriff, and waited the

10   requisite time period without receiving a response. RCW 9.41.090(6)(a)-(c). If the chief of police

11   or sheriff find that the purchaser is ineligible to buy a firearm, including under RCW 9.41.240's

12   age requirements and RCW 9.41.124's residence requirements, they must deny the application.

13   RCW 9.41.090(6)(c). Washington law therefore charges local sheriff and police departments

14   with a "direct duty" to enforce I-1639's new firearm purchase restrictions. *See Urquhart*, 899

15   F.3d at 1098. Furthermore, RCW 9.41.810 makes it a misdemeanor to violate any part of RCW

16   9.41. As the heads of local law enforcement in the jurisdictions where Plaintiffs live, "the buck

17   stops with" Atkins and Meidl when it comes to enforcing the new restrictions created by I-1639.

18   *See Brown*, 674 F.3d at 1135.

19        Atkins and Meidl argue that they are not proper defendants because, contrary to

20   Plaintiffs' allegations, they do not possess the authority to revoke dealers' licenses. Instead,

21   under RCW 9.41.137, the department of licensing "shall have the authority, after notice and

22   hearing, to revoke the license of any licensed dealer found to be in violation of this chapter." But

23   regardless of whether Atkins and Meidl lack final authority to revoke a license, their on-the-

24

ground enforcement of Washington's gun laws means they carry out "vital steps" in the license revocation process. See *Planned Parenthood Arizona, Inc. v. Brnovich*, 172 F. Supp. 3d 1075, 1094 (D. Ariz. 2016) (holding that officer's authority to sign orders subject to board approval gave her a sufficiently important role in the license revocation process to be a proper defendant). While the department of licensing may be responsible for the administrative adjudication, it relies on local police to enforce RCW 9.41's provisions in a way that could form the basis for revocation.

Atkins and Meidl also attempt to distinguish this case from *Urquhart* on the basis that, unlike *Urquhart*, the police Defendants in this case took no concrete steps to enforce the law against Plaintiffs. *See* 899 F.3d at 1098 (writ of restitution directing sheriff to evict the plaintiffs had been issued). This is beside the point. *Urquhart*'s ruling was not based on the sheriff's actions against the plaintiffs in particular, but rather on the sheriff's "power and duty to serve and execute writs of restitution." *Id*. Although the enforcement scheme for Washington's gun laws is more complex, Atkins and Meidl are in a similar role of authority here.

Finally, Atkins and Meidl contend that the proper approach in a case like this is to proceed against state defendant to invalidate the law itself rather than stop enforcement. Defendants appear to misunderstand the nature of *Ex Parte Young* actions, which exist precisely to enjoin the enforcement of state statutes that violates federal law. While the attorney general is entitled to intervene in any action where a state law's constitutionality is questioned, *see* 28 U.S.C. § 2403(b), simply suing a high-ranking state official is not necessarily correct in an *Ex Parte Young* action. *See Wasden*, 376 F.3d at 919 (explaining that the attorney general may be an improper defendant when they cannot bindingly direct prosecutions). Here, police department

1   heads like Atkins and Meidl play a direct role in enforcing the challenged laws. This makes them

2   proper defendants.

3   **4.      Section 1983**

4         Plaintiffs sue Atkins and Meidl only in their official capacities and include a cause of

5   action under 28 U.S.C. § 1983. Atkins and Meidl argue that Plaintiffs fail to state a plausible

6   1983 claim because the enforcement of state laws creating mandatory restrictions on gun sales is

7   not the kind of local policy that can subject a government entity to liability. Plaintiffs respond

8   that Atkins' and Meidl's departments have long-standing policies of enforcing Washington's gun

9   laws, including the amendments created by I-1639.

10        "Personal-capacity suits seek to impose personal liability upon a government official for

11  actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). [3]

12  "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action

13  against an entity of which an officer is an agent.'" *Id*. (quoting *Monell v. New York City Dept. of*

14  *Social Services*, 436 U.S. 658, 690 n. 55 (1978)). Although in a personal capacity suit "it is

15  enough to show that the official, acting under color of state law, caused the deprivation of a

16  federal right, . . . [more] is required in an official-capacity action." *Id*. When a plaintiff sues the

17  government entity itself, they must show that it was the "moving force" behind the violation. *Id*.

18        As the Ninth Circuit has explained, "[l]iability may attach to a municipality only where

19  the municipality itself causes the constitutional violation through 'execution of a government's

20  policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

21  said to represent official policy." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984

22

23  [3] Despite suing Atkins and Meidl in their official capacities, Plaintiffs oddly also allege that Atkins and Meidl acted "under color of state law" when enforcing I-1639. Dkt. #17 at 12. This mismatch between the descriptions of the parties and the claims is confusing, but Plaintiffs' election to sue Defendants in their official capacities governs for purpose of determining the requirements for their 1983 claim.

24

1    (9th Cir. 2002). "[M]unicipal liability under § 1983 attaches where—and only where—a

2    deliberate choice to follow a course of action is made from among various alternatives by the

3    official or officials responsible for establishing final policy with respect to the subject matter in

4    question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

5        Here, the FAC's allegations do not plausibly establish that Clark County and the City of

6    Spokane made a conscious, meaningful choice to deprive Plaintiffs of a right. Any injury

7    suffered by Plaintiffs emanated from the state law itself, which makes it a misdemeanor for

8    certain people to buy or sell certain weapons. *See* RCW 9.41.124, .240, .810; *Bethesda Lutheran*

9    *Homes and Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir.1998) (holding that a plaintiff's

10   injury derives from the state law, not local policy, when a municipality was legally compelled to

11   act). Law enforcement entities' general obligation to apply the criminal code cannot make them

12   liable in a 1983 action. *See Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008);

13   *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999). If it could, entities would be forced

14   to engage in their own constitutional analysis every time a new law in a controversial area was

15   passed. Each state would become a patchwork of different enforcements regimes for laws on

16   topics like gun control. Fortunately, this is not how our legal system works—it is the judiciary

17   that interprets the law.

18       Even if Washington's gun laws did delegate some discretion to local entities, Plaintiffs do

19   not allege that Atkins or Meidl exercised such discretion here. *See Vives*, 524 F.3d at 353 ("[I]f a

20   municipality decides to enforce a statute that it is authorized, but not required, to enforce, it may

21   have created a municipal policy."); *see also Evers v. Custer Cty.*, 745 F.2d 1196, 1201 (9th Cir.

22   1984). The FAC alleges only that Atkins and Meidl "ha[ve] the authority to revoke [Plaintiffs']

23   license[s] for violations of Washington laws governing sales of firearms" and that Atkins stated

24

Clark County would enforce this new law as it does all others. Dkt. #17, at 4. Plaintiffs do not allege that any Defendant formed a specific policy to do anything beyond what is required by law—indeed, Plaintiffs describe the enforcement of I-1639 as a "non-discretionary duty." Dkt. #42 at 3. There can be no 1983 *Monell* liability under such circumstances.[4]

## CONCLUSION

For the above reasons, Defendants Atkins and Meidl's Motions to Dismiss [Dkt. #32 & #34] are GRANTED with respect to Plaintiffs' 1983 claim. The Motions are otherwise DENIED.

IT IS SO ORDERED.

Dated this 20th day of May, 2019.

Ronald B. Leighton
United States District Judge

---

[4] Fortunately for Plaintiffs, this does not actually eliminate any of the remedies available to them. Plaintiffs only ask for declaratory and injunctive relief, which is already available in an *Ex Parte Young* action.