The Honorable Ronald B. Leighton

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9 | DANIEL MITCHELL, *et al.*,

NO. 3:19-cv-5106

10 |              Plaintiffs,

DEFENDANTS AND
INTERVENOR-DEFENDANT'S
REPLY IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT

11 |     v.

12 | CHARLES ATKINS, *et al.*,

13 |              Defendants,

**RE-NOTE ON MOTION**
**CALENDAR: MAY 24, 2020**
**ORAL ARGUMENT**
**REQUESTED**

14 |     and

15 | SAFE SCHOOLS SAFE COMMUNITIES,

16 |      Intervenor-Defendant.

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .......................................................................................................... 1

II.     ARGUMENT IN REPLY ............................................................................................. 1

        A.      Defendants' Material Evidence is Undisputed or Unrebutted ................................. 1

        B.      The Age Provision Does Not Offend the Second Amendment ................................. 2

                1.      The Ninth Circuit's Second Amendment framework governs this case ........... 2

                2.      The Age Provision is constitutional .................................................................. 4

        C.      The Nonresident Sales Provision Does Not Violate the Dormant Commerce Clause.......................................................................................................................... 8

                1.      The Nonresident Sales Provision does not bar sales across state lines ............. 8

                2.      The Nonresident Sales Provision is nondiscriminatory ................................... 12

                3.      The Nonresident Sales Provision is constitutional as a matter of law ............. 13

        D.      Plaintiffs Fail to Provide Sufficient Evidence Establishing Justiciability ............... 14

III.    CONCLUSION ............................................................................................................. 14

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

**Federal Cases**                                                                    Page(s)

*Bias v. Moynihan,*
 508 F.3d 1212 (9th Cir. 2007) ........................................................................... 2

*Burlington N. & Santa Fe Ry. Co. v. White,*
 548 U.S. 53 (2006)............................................................................................ 10

*C & A Carbone, Inc. v. Town of Clarkstown,*
 511 U.S. 383 (1994).......................................................................................... 10

*Caetano v. Massachusetts,*
 136 S. Ct. 1027 (2016)........................................................................................ 3

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
 520 U.S. 564 (1997).......................................................................................... 12

*Chinatown Neighborhood Ass'n v. Harris,*
 794 F.3d 1136 (9th Cir. 2015) ......................................................................... 13

*City of Phila. v. New Jersey,*
 437 U.S. 617 (1978).......................................................................................... 12

*Craig v. Boren,*
 429 U.S. 190 (1976).......................................................................................... 14

*District of Columbia v. Heller,*
 554 U.S. 570 (2008)................................................................................... passim

*Fyock v. Sunnyvale,*
 779 F.3d 991 (9th. Cir. 2015) .................................................................... 2, 3, 7

*General Motors Corp. v. Tracy,*
 519 U.S. 278 (1997).......................................................................................... 13

*Gould v. Morgan,*
 907 F.3d 659 (1st Cir. 2018).............................................................................. 5

*Heller v. District of Columbia,*
 670 F.3d 1244 (D.C. Cir. 2011) ......................................................................... 3

DEFENDANTS' REPLY IN SUPPORT OF                         ii
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Jackson v. City & Cty. of San Francisco,*
  746 F.3d 953 (9th Cir. 2014) ....................................................................... 8

*Kachalsky v. Cty. of Westchester,*
  701 F.3d 81 (2d Cir. 2012) .......................................................................... 7

*Kolbe v. Hogan,*
  849 F.3d 114 (4th Cir. 2017) ....................................................................... 2

*Mai v. United States,*
  952 F.3d 1106 (9th Cir. 2020) .................................................................. 6, 7

*Mance v. Sessions,*
  896 F.3d 390 (5th Cir. 2018) (per curiam) ................................................. 3

*McBurney v. Young,*
  569 U.S. 221 (2013) ................................................................................... 12

*McDonald v. City of Chicago,*
  561 U.S. 742 (2010) ..................................................................................... 3

*Moy v. Cowen,*
  958 F.2d 168 (7th Cir. 1992) (per curiam) ............................................... 11

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown,*
  567 F.3d 521 (9th Cir. 2009) ..................................................................... 13

*Nat'l Rifle Ass'n v. Bur. of Alcohol, Tobacco, Firearms & Explosives,*
  700 F.3d 185 (5th Cir. 2012) ........................................................... 4, 5, 6, 7

*New Energy Co. of Ind. v. Limbach,*
  486 U.S. 269) (1988) ................................................................................. 12

*Pena v. Lindley,*
  898 F.3d 969 (9th Cir. 2018) ....................................................................... 6

*Pike v. Bruce Church, Inc.,*
  397 U.S. 137 (1970) ............................................................................. 13, 14

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.,*
  763 F.3d 1232 (9th Cir. 2014) .................................................................. 11

*Rhode v. Becerra,*
  No. 18-cv-802-BEN, 2020 WL 1955363 (S.D. Cal. Apr. 23, 2020) ...................... 3

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Rhode v. Becerra,*
No. 20-55437, 2020 WL 2049091 (9th Cir. Apr. 24, 2020).................................... 3

*Rosenblatt v. City of Santa Monica,*
940 F.3d 439 (9th Cir. 2019) .............................................................. 8, 10, 12, 13

*Shaver v. United States,*
174 F.2d 618 (9th Cir. 1949) ........................................................................ 10

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009)....................................................................................... 14

*Thomas v. Anchorage Equal Rights Comm'n,*
220 F.3d 1134 (9th Cir. 1999) (en banc) .................................................... 14

*United States v. Chovan,*
735 F.3d 1127 (9th Cir. 2013) ....................................................................... 2

*United States v. Henry,*
688 F.3d 637 (9th Cir. 2012) ......................................................................... 2

*United States v. Nordbrock,*
38 F.3d 440 (9th Cir. 1994) ......................................................................... 11

*Worman v. Healey,*
922 F.3d 26 (1st Cir. 2019)....................................................................... 2, 4


**Washington State Cases**

*In re Williams,*
121 Wn.2d 655 (1993)................................................................................... 10

*League of Educ. Voters v. State,*
176 Wn.2d 808 (2013) .................................................................................. 14

*State v. Tvedt,*
153 Wn.2d 705 (2005)................................................................................... 10

*Transit Union Local 587 v. State,*
142 Wn.2d 183 (2000).................................................................................. 10

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**Other State Cases**

*People v. Aguilar*,
  2 N.E.3d 321 (Ill. 2013)................................................................. 5

*People v. Jordan G.*,
  33 N.E.3d 162 (Ill. 2015)............................................................... 5

**Federal Statutes**

10 U.S.C. § 246.............................................................................. 5

18 U.S.C. § 922....................................................................... 9, 10, 11

**Washington State Statutes**

RCW 2.60.020............................................................................... 11

RCW 82.32.730.............................................................................. 9

RCW 9.41.122................................................................................ 9

RCW 9.41.124........................................................................... 9, 11

RCW 9.41.010............................................................................... 11

**Other State Statutes**

Mass. Gen. Laws ch. 140, § 131E ............................................... 10

**Federal Regulations**

27 C.F.R. § 478.124...................................................................... 11

**State Regulations**

WAC 458-20-193 .......................................................................... 9

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**Other Authorities**

Senate Report No. 90-1501 (1968) ................................................................................................. 9

# I.    INTRODUCTION

If one thing is clear from Plaintiffs' briefing, it is that neither the facts nor the law are on their side. Instead of providing evidence to counter the comprehensive record Defendants have assembled, Plaintiffs offer only unsupported conclusions and rhetoric. Rather than apply the Ninth Circuit's established two-part Second Amendment framework, Plaintiffs ask this Court to adopt a test they personally consider truer to *District of Columbia v. Heller*, 554 U.S. 570 (2008)—a test no court has ever accepted. Binding precedent forecloses Plaintiffs' approach.

Mitchell's Dormant Commerce Clause claim is no more colorable. As with handguns, I-1639 permits interstate sales of SARs via FFL-to-FFL transfer. Mitchell expansively interprets the Nonresident Sales Provision to the contrary—a reading at odds with its text, purpose, and context. His linguistic gymnastics over sales, purchases, and delivery are distinctions without a difference. Under the proper legal framework, the Nonresident Sales Provision is constitutional. It does not discriminate by advancing "economic protectionism," but rather promotes public safety by ensuring an enhanced background check precedes any in-state SAR purchase. The law survives any standard of scrutiny and further is authorized by Congress. Even if Plaintiffs' claims were justiciable (and many are not), summary judgment for Defendants is warranted.

# II.    ARGUMENT IN REPLY

## A.    Defendants' Material Evidence is Undisputed or Unrebutted

Plaintiffs fail to create a genuine question of fact as to any material issue. The following facts are undisputed and, when applied under the binding frameworks, demonstrate that I-1639 is constitutional: (1) Reducing gun violence and increasing public safety—the actual purposes behind I-1639—are important government purposes; (2) I-1639 extended current laws applicable to handguns to one other subset of firearms—SARs; (3) SARs are easier to use and more lethal than other types of firearms; (4) Mass shooters often favor SARs; (5) The regions of the brain that govern impulsivity and judgment do not fully mature until the twenties; (6) 18- to 20-year-olds disproportionately commit violent crimes; (7) Numerous mass shootings, including those

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

in Newtown, CT, Parkland, FL, Burlington, WA, and Mukilteo, WA, have been carried out by 18- to 20-year-olds using SARs; (8) Minimum age laws have proven effective in addressing health and safety concerns; and (9) Enhanced background checks are more effective than NICS-only checks, and difficult if not impossible to conduct on nonresident firearm purchasers.

Plaintiffs mostly ignore these contentions or respond with unsupported or conclusory statements. For example, while Plaintiffs assert—without support—that the testimony of Defendants' expert witnesses, who are well-respected leaders in their fields, is nothing more than "claptrap," Dkt. 103 at 21 n.23, they did not move to exclude any of those experts' testimony or offer rebuttal expert testimony in response. Likewise, Plaintiffs do not cite any legislative facts or declarations in rebuttal.[1] Because Plaintiffs fail to meaningfully dispute these issues with "significant probative evidence," *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007), the Court should accept them as true and grant Defendants summary judgment.

**B.     The Age Provision Does Not Offend the Second Amendment**

**1.     The Ninth Circuit's Second Amendment framework governs this case**

Plaintiffs pretend that *Heller* is a blank slate, ignoring that the Ninth Circuit, along with every other circuit to address the issue, has adopted a two-part Second Amendment framework derived from *Heller. See Fyock v. Sunnyvale*, 779 F.3d 991, 996 (9th. Cir. 2015).[2] In place of that framework, Plaintiffs would have this Court create a new test—one unrecognized by any court—under which any condition on the sale of firearms in "common use" is unconstitutional. Dkt. 103 at 8. Plaintiffs' requested approach to leapfrog "circuit precedent" that "remains binding" is not available to this Court. *United States v. Henry*, 688 F.3d 637, 642 (9th Cir. 2012).

---

[1] Plaintiffs state that some people believe that "guns are actually part of the solution," Dkt. 103 at 2, but this unsupported statement of preferred policy does not rebut any of the specific evidence listed above.

[2] *See also Worman v. Healey*, 922 F.3d 26, 33 (1st Cir. 2019); *Kolbe v. Hogan*, 849 F.3d 114, 132–33 (4th Cir. 2017). This makes sense as the *Heller* Court noted that the Second Amendment's doctrinal structure "is no different" from the First Amendment's. 554 U.S. at 635. Application of facts to the appropriate level of scrutiny is well-recognized under the First Amendment. *See, e.g.*, *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013). Accordingly, Plaintiffs' ideological arguments regarding treating the Second Amendment as a "right" versus a "privilege" are not based in law and their characterization of the two-part test as "interest balancing" is incorrect.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106                                      2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

It also misreads *Heller*. *Heller* did not hold that firearms in "common use" are free from regulation. Rather, *Heller* invalidated a total ban on handgun possession because it infringed on the "core" right of "responsible citizens to use arms in defense of hearth and home." 554 U.S. at 630, 635. "[N]othing in our opinion," the *Heller* Court cautioned, "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, . . . laws imposing conditions and qualifications on the commercial sale of arms," or other such "presumptively lawful regulatory measures." *Id.* at 626–27 & n.26. In *McDonald v. City of Chicago*, the Court reiterated that *Heller* "recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).[3]

In fact, whether a firearm is in "common use" is relevant only as a threshold question at the first step of the framework—to determine whether a firearm may be "dangerous and unusual" such that it falls outside the Second Amendment altogether. *Fyock*, 779 F.3d at 997–1001 (though large-capacity magazines were sufficiently in "common use" to fall within Second Amendment's scope, law banning such magazines triggered only intermediate scrutiny, which it met). Plaintiffs' theory overlooks the limited relevance of "common use" in the binding test.[4]

---

[3] Plaintiffs do not cite a single case that supports their novel "common use" theory. For example, *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016), does not remotely prescribe a "common use" test. Rather, in *Caetano* the Court vacated and remanded a state court decision because the court had erroneously held that the Second Amendment does not apply to arms not in existence in the late 1700s. *Id.* at 1028. *Rhode v. Becerra*, No. 18-cv-802-BEN, 2020 WL 1955363, (S.D. Cal. Apr. 23, 2020), is also unavailing. First, the Ninth Circuit immediately stayed the district court's preliminary injunction against California's background check requirement for ammunition purchases. *Rhode v. Becerra*, No. 20-55437, 2020 WL 2049091, at *1 (9th Cir. Apr. 24, 2020) and Dkt. 13-1 (May 14, 2020). Second, the district court applied the two-part test that Plaintiffs now ask this Court to ignore. *Becerra*, 2020 WL 1955363, at *16–17. Third, the background check requirement in *Rhode* applied to purchase of any ammunition by anyone. *Id.* The Age Provision is limited to purchases of one type of firearm by a subset of the population. It is less burdensome than restrictions that bar firearm possession completely. *See* Dkt. 103 at 18.

[4] Further, the common use test expressly has been rejected in the courts. *See Heller v. District of Columbia*, 670 F.3d 1244, 1264-69 (D.C. Cir. 2011); *see also Mance v. Sessions*, 896 F.3d 390, 391-93 (5th Cir. 2018) (Higginson, J., concurring in denial of rehearing en banc) (the Supreme Court has "never suggested that courts should abandon the familiar tiers-of-scrutiny architecture built around analogous provisions like the Equal Protection Clause, Due Process Clauses, and First Amendment"). A common use test also would create a perverse incentive whereby firearm manufacturers could insulate highly lethal firearms from regulation simply by manufacturing and marketing them before a government could assess them and decide on a regulatory response.

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 3:19-cv-5106**

3

Regardless, none of Defendants' arguments rest on whether SARs are in common use. The Age Provision is outside the Second Amendment's protection not because SARs are "dangerous and unusual" (an issue this Court need not resolve), but for the separate reason that age restrictions for individuals under 21 are historically longstanding. *See* Dkt. 84 at 11–15.[5]

The Court should decline Plaintiffs' invitation to ignore circuit precedent in favor of their own idiosyncratic rewrite of *Heller*.

### 2. The Age Provision is constitutional

Plaintiffs fail to cite a single decision striking down a minimum age law or restriction on SARs (or similar weapons) under any standard. The dearth of authority is not surprising. Courts consistently have upheld minimum age laws and restrictions on SARs—including assault weapons bans. Dkt. 84 at 14–15, 25; *see also, e.g.*, *Worman*, 922 F.3d at 40 (upholding Massachusetts assault weapons ban). The Age Provision in I-1639 is no different.

### a. The Age Provision falls outside the Second Amendment

As noted above, historical firearm laws demonstrate that age restrictions are "longstanding" and thus outside the Second Amendment's ambit. *Heller*, 554 U.S. at 626–27. Defendants have established, and courts have concluded, that firearms age restrictions on 18- to 20-year-olds meet this test. Dkt. 84 at 13–15. Plaintiffs unsuccessfully try to distract from this undisputed historical record. For example, their suggestion that a firearm restriction is constitutional only if it has an analogue "as long-standing as the Second Amendment," Dkt. 103 at 13, is contrary to *Heller*, which deemed firearms restrictions from as late as the early 20th century to be "longstanding." 554 U.S. at 626–27; *Nat'l Rifle Ass'n v. Bur. of Alcohol, Tobacco, Firearms & Explosives* (*NRA*), 700 F.3d 185, 196 (5th Cir. 2012) (identifying "longstanding"

---

[5] Moreover, Plaintiffs have failed to establish that SARs are in common use for lawful purposes, let alone among 18- to 20-year-olds. Though they claim the record is "replete" with such evidence, Plaintiffs cite only one source: a declaration by Mitchell, Dkt. 103 at 4 n.5, who previously conceded that he had not consulted any sales data in arriving at his "ballpark" estimate of out-of-state SAR sales and provides no information about 18- to 20-year-olds. Dkt. 84 at 28.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

4

1    regulations that arose in the "20th-century"); Dkt. 84 at 13–14.[6] Moreover, as "the challenge

2    here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth

3    Amendment was ratified)," not 1791. *Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018).

4            Plaintiffs further state—again, without authority—that historical statutory restrictions on

5    handguns have no bearing on I-1639's regulation of long guns. Dkt. 103 at 12. Plaintiffs miss

6    the point. These laws demonstrate that age restrictions on firearms are longstanding. Plaintiffs

7    make no attempt to explain how prohibiting sales of SARs to 18- to 20-year-olds could be

8    unconstitutional when the parallel federal age prohibition on sales of handguns—"the

9    quintessential self-defense weapon," *Heller*, 554 U.S. at 629—has uniformly withstood Second

10   Amendment challenges. *See NRA*, 700 F.3d at 188; Dkt. 84 at 12 n.47.[7]

11           Finally, Plaintiffs argue that requiring 18- to 20-year-olds to serve in the militia and

12   possess a firearm somehow vests those persons with an individual right to ownership of firearms.

13   Dkt. 103 at 9–12. But in *Heller*, the Court decoupled the right to bear arms from the duty to serve

14   in the militia. *Heller*, 554 U.S. at 589–94. Thus, when Plaintiff NRA raised this same militia

15   argument in another case, the Fifth Circuit rejected it, explaining that *Heller* held that "the right

16   to arms is not co-extensive with the duty to serve in the militia." *NRA*, 700 F.3d at 204 n.17.[8]

17   This distinction is made clearer by the federal prohibition on possession of handguns by 18- to

18   20-year-olds despite their ability to use those same firearms for military purposes. *Id.* at 211.[9]

19

20           [6] Contrary to Plaintiffs' contention, no court has held that firearms restrictions are permissible only for
     persons who have "forfeited their rights or ha[ve] been legally subjected to state control." Dkt. 103 at 9. To the
21   contrary, *Heller* explains that presumptively lawful restrictions include "conditions and qualifications on the
     commercial sale of arms"—the exact type of restriction at issue here. 554 U.S. at 626-27.

22           [7] Plaintiffs also ignore both that many courts have held that 18- to 20-year-olds are not "responsible"
     persons and that the "responsible" standard comes from *Heller* itself. *See, e.g.*, *NRA*, 700 F.3d at 206.

23           [8] *See also People v. Aguilar*, 2 N.E.3d 321, 329 (Ill. 2013) ("[A]lthough many colonies *permitted* or even
     *required* minors to own and possess firearms for purposes of militia service, nothing like a *right* for minors to
24   own and possess firearms has existed at any time in this nation's history"); *People v. Jordan G.*, 33 N.E.3d 162,
     168 (Ill. 2015) ("[W]e find our conclusion in *Aguilar*, that age based restrictions on the right to keep and bear
25   arms are historically rooted, applies equally to those persons under 21 years of age").

             [9] Plaintiffs' citation of 10 U.S.C. § 246, which limits members of the militia to 17- to 44-year-olds, is also
26   of no import. Such age requirements cannot define the scope of the Second Amendment right, unless Plaintiffs
     seriously contend that 17-year-olds enjoy its full protections while persons age 45 and over do not.

### b. Plaintiffs' arguments against intermediate scrutiny fail

Even if the Age Provision burdened conduct protected by the Second Amendment, it would be constitutional under intermediate scrutiny, which applies because the Age Provision does not "severely burden[]" the "core Second Amendment right of self-defense of the home." *Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018) (quotation marks and citation omitted).

Plaintiffs do not even attempt to establish how the Age Provision "severely burdens" their core right to self-defense, or even why SARs are necessary for self-defense. Rather, Plaintiffs again simply ignore binding case law cabining the scope of the *core* right.[10] Moreover, the purchase portion of the Age Provision is a commercial regulation—a type of restriction *Heller* recognized as presumptively valid. 554 U.S. at 626–27. And the "temporary nature of this burden" is "far less onerous" than a lifetime ban. *NRA*, 700 F.3d at 207; *cf. Mai v. United States*, 952 F.3d 1106, 1115 (9th Cir. 2020) (intermediate scrutiny applies even to a lifetime ban).[11]

Plaintiffs do not deny that other firearms remain available for self-defense or any other lawful activity. Instead they argue that such viable alternatives are irrelevant under *Heller*. But this argument ignores *Heller*'s pivotal conclusion that handguns are the "quintessential" firearm for self-defense. 554 U.S. at 629. Plaintiffs provided no evidence that SARs hold a similar position, that SARs are the primary firearm 18- to 20-year-olds use for self-defense, or that alternatives are inadequate. Moreover, the broad ban on handgun possession in *Heller* is nothing like the Age Provision, which permits 18- to 20-year-olds to possess multiple firearms, including SARs, in the home for self-defense and many other lawful purposes. Dkt. 84 at 7.[12]

The Age Provision triggers at most intermediate scrutiny, which it easily satisfies. I-

---

[10] Defendants have never maintained that the Second Amendment is limited to the right of self-defense in the home, *cf.* Dkt. 103 at 14, but simply have pointed out that such purpose is the "core" Second Amendment right as described in *Heller* and as relevant to the two-step test, Dkt. 84 at 16.

[11] Plaintiffs do not apply any Ninth Circuit precedent to their arguments, including failing to state the standard for when strict scrutiny applies, what it requires, or how it would apply to these facts.

[12] Plaintiffs' claim that the Age Provision prohibits using SARs for self-defense, marksmanship, and hunting is false. Dkt. 84 at 7 (listing exceptions for a variety of lawful purposes).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106                                    6                    ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1639's purposes are to "increase public safety and reduce gun violence." Dkt. 84 at 20. Plaintiffs do not dispute that these objectives are important public purposes.[13]

Limiting SAR purchases by 18- to 20-year-olds, the same as for handguns, has a "reasonable fit" with those purposes. *See Fyock*, 779 F.3d at 1000. Tellingly, Plaintiffs don't even mention the most directly analogous case that applied this analysis: *NRA*, 700 F.3d at 207–11, which upheld the federal minimum age requirement for handgun purchases. Instead, Plaintiffs cite a First Amendment case that applies a completely different standard. Dkt. 103 at 19. Intermediate scrutiny requires only that a measure have a "reasonable fit" with an "important" state objective. *Fyock*, 779 F.3d at 1000; *see also Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) ("Unlike strict scrutiny review, we are not required [under intermediate scrutiny] to ensure that the [law] is 'narrowly tailored' . . . .").

As explained above, Plaintiffs do not dispute—or fail to rebut—most of the material facts Defendants presented to support the Age Provision, including that key regions of the brain do not fully mature until the twenties; 18- to 20-year-olds disproportionately commit violent crimes; SARs are more lethal and used more frequently in mass shootings than other firearms; and 18- to 20-year-olds have committed gun violence, including mass shootings, in Washington and nationally. Even "categorical bans on groups of persons . . . pos[ing] an increased risk of violence" meet intermediate scrutiny, *Mai*, 952 F.3d 1116, so the Age Provision does, too.[14]

---

[13] Plaintiffs attempt to artificially narrow I-1639's purpose to reducing mass shootings only. Dkt. 103 at 20. This is not correct, as the Initiative makes clear. Dkt. 94-1, Ex. A (stating the I-1639's purpose was to "increase public safety and reduce gun violence"). Plaintiffs' misstatements may stem from their decision to challenge only the Age and Nonresident Sales Provisions. But I-1639 was more than these two provisions. Consistent with its overall goal to reduce gun violence, the Initiative contains multiple related requirements, including mandating firearms safety training and an enhanced background check and waiting period prior to purchasing a SAR, and providing criminal penalties in certain circumstances if a firearm is stored unsafely. Dkt. 84 at 6 n.30.

[14] Plaintiffs' footnote 23, which distorts defense experts' testimony, is at most subjective criticism and fails to introduce any contrary facts that dispute the experts' unrebutted opinions. *See, e.g.*, Dkt. 104, Ex. F (Rivara Dep. 41:1–42:1, 50:1–51:7, 52:3–53:8) (explaining that difference between public health "problem" and "crisis" such as firearm suicides is whether it is being addressed; separately answering that he takes steps as a physician to prevent deaths due to medical errors); *id.*, Ex. G (Aylward Dep. 7:2–12:24, 30:2–32:23) (defining risky behavior and explaining common-sense point that public norms inform whether behavior is risky; explaining that responsible firearm use would entail following laws and having sufficient neurodevelopmental maturation); *id.* Ex. H (Johnson

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Plaintiffs' argument to the contrary rests on the observation that background checks will

2   not be conducted on 18- to 20-year-olds who obtain SARs *unlawfully*. Dkt. 103 at 3. This is a

3   non-sequitur. That a law does not entirely eliminate a risk does not mean that it is ineffective at

4   reducing risk. Prohibiting 18- to 20-year-olds from purchasing SARs will limit their

5   opportunities to use them for harm. For example, the Age Provision could have prevented the

6   mass shooting in Mukilteo, where the 19-year-old perpetrator legally purchased an AR-15-style

7   SAR before killing multiple people. Dkt. 84 at 23. While it is true that every mass shooting

8   averted is "theoretical," Dkt. 103 at 3, that is precisely the point of prevention—to ensure that

9   more potential shootings remain unrealized. Defendants have presented evidence that shows 18-

10  to 20-year-olds' access to firearms like SARs poses increased risks to public health and safety.

11  The State is entitled to deference in its choice of means to address that risk. *See Jackson v. City*

12  *& Cty. of San Francisco*, 746 F.3d 953, 966 (9th Cir. 2014). The Age Provision is constitutional.

13  **C.      The Nonresident Sales Provision Does Not Violate the Dormant Commerce Clause**

14  Mitchell fails to carry his "initial burden of showing discrimination" under the Dormant

15  Commerce Clause. *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 448 (9th Cir. 2019).

16  **1.      The Nonresident Sales Provision does not bar sales across state lines**

17  Perhaps the oddest feature of Plaintiffs' brief is Mitchell's argument that the Nonresident

18  Sales Provision is far broader than either what its plain meaning suggests or how the State of

19  Washington itself construes it. To transform I-1639 into an interstate sales ban, Mitchell claims

20  the Nonresident Sales Provision not only precludes SAR sales to nonresidents in Washington,

21  but also "forbids the purchase of a [SAR]" by a nonresident in all circumstances, including by

22  FFL-to-FFL transfer. Dkt. 103 at 21. This expansive reading of the law is irreconcilable with

23  every standard tool of statutory construction, including I-1639's text, context, and purpose.

24  _____

25  Dep. 7:14–12:6, 16:20–19:8) (explaining that adolescents are more prone to emotionally hot situations and
    answering irrelevant question of whether she is familiar with firearm purchase process; explaining efficacy of
26  firearm restriction in reducing injuries could be measured); *id.* Ex. I (Jones Dep. 11:19–12:2, 52) (giving opposite
    answer claimed by Plaintiffs by providing specific examples of firearms regulations that he supports).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106                                        8                    ATTORNEY GENERAL OF WASHINGTON
                                                                                  Complex Litigation Division
                                                                                 800 Fifth Avenue, Suite 2000
                                                                                   Seattle, WA 98104-3188
                                                                                       (206) 464-7744

First, under the plain language, the Nonresident Sales Provision applies only to a nonresident SAR "purchase" that occurs "in Washington." RCW 9.41.124. Mitchell concedes that the law applies to "*in-state* purchases by non-residents," Dkt. 103 at 21 (emphasis added), but argues that a FFL-to-FFL transfer to a customer located at all relevant times in another state somehow constitutes a purchase "in Washington." This argument is wrong. To say that a Texas buyer purchases a SAR "in Washington" when the buyer receives it directly from a Texas FFL, subject to Texas background check laws, and without leaving Texas, defies common sense and plain meaning. The Texas purchaser is not physically "in Washington." The Texas purchaser does not pay Washington sales tax or use tax.[15] While the Texan may have procured the gun *from* Washington, it would defy ordinary parlance to say he purchased it "in" Washington.

Second, reading I-1639 to allow FFL-to-FFL transfers harmonizes with the federal Gun Control Act (GCA). The GCA prohibits an FFL in one state from selling firearms to a resident of another unless (1) the firearm is a rifle or shotgun; (2) the sale takes place "in person"; and (3) the laws of "both such States" permit it. 18 U.S.C. § 922(b)(3). In turn, the Nonresident Sales Provision expressly permits nonresident purchases of "rifles and shotguns . . . in Washington," "except [SARs]." RCW 9.41.124. Thus, a Washington FFL may not sell a SAR to a nonresident "in Washington," RCW 9.41.124, because it would not "fully comply" with Washington's "legal conditions of sale," 18 U.S.C. § 922(b)(3). But neither the Nonresident Sales Provision nor § 922(b)(3) restricts *interstate* long gun sales made through FFLs, where the buyer goes "in person" to their local in-state FFL rather than physically purchasing the SAR in Washington.[16]

---

[15] *See* RCW 82.32.730(1)(b); WAC 458-20-193(2), (203)(a)–(b); Wash. Dep't of Rev., *Sales and transfers of firearms by licensed dealers* (last visited May 20, 2020), https://dor.wa.gov/get-form-or-publication/publications-subject/tax-topics/sales-and-transfers-firearms-license-dealers.

[16] Washington non-resident purchase provisions are *in pari materia* with the GCA, as 18 U.S.C. § 922(b)(3) expressly authorizes states to determine whether (1) their residents may purchase rifles and shotguns in other states and (2) nonresidents may purchase long guns within their borders. When the GCA was enacted, Congress required states to "enact enabling legislation permitting such sales" to their residents in other states. S. Rep. No. 90-1501, at 11, 21 (1968). Numerous states did so, while also enacting parallel statutes expressly permitting nonresidents to purchase long guns within their borders—making clear that nonresident purchases "fully comply" with state law under § 922(b)(3). *See, e.g.*, RCW 9.41.122., 124 (allowing residents to purchase long guns out-of-state and

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Third, Mitchell's reading cannot be squared with I-1639's expressed intent to regulate SARs in the same ways as handguns. Under federal law, nonresidents may purchase handguns (as well as other types of firearms) through FFL-to-FFL transfer but may not make an in-person purchase of a handgun in a state where they do not reside. It is undisputed that I-1639 intended the same for SARs. Dkt. 84 at 6–9. This intent was expressly conveyed to voters.[17] An "average informed voter" would understand the law to restrict in-person SAR sales only, not the FFL-to-FFL transfer process. *See Amalgam. Transit Union Local 587 v. State*, 142 Wn.2d 183, 205 (2000). Accordingly, I-1639's "purpose reinforces what the language already indicates," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006): the Nonresident Sales Provision applies to direct, in-person transactions and not to interstate FFL-to-FFL transfers.

Fourth, even if there were ambiguity—and there is not—canons of construction forbid Mitchell's expansive reading. Under the rule of lenity, the Nonresident Sales Provision should be cabined to its text to reach only SAR sales "in Washington." *See State v. Tvedt*, 153 Wn.2d 705, 710–11 (2005).[18] And the avoidance canon instructs that statutes are construed to avoid constitutional difficulties when such construction is "consistent with the purposes of the statute." *In re Williams*, 121 Wn.2d 655, 665 (1993). This doctrine, too, favors construing I-1639 to allow nonresidents to buy SARs from Washington dealers through FFL-to-FFL transfer.[19]

---

nonresidents to purchase long guns in state, respectively). *But see, e.g.*, Mass. Gen. Laws ch. 140, § 131E (permitting only residents to purchase long guns from licensed dealers). Thus, § 922(b)(3) expressly allows states to decide whether to allow *in-person* nonresident long guns purchases, *see* Dkt. 84 at 35–37—a conclusion Mitchell does not appear to dispute. *See* Dkt. 103 at 25–26. Instead, he argues that § 922(b)(3) does not permit states to ban long gun sales via FFL-to-FFL transfer. For the reasons explained herein, I-1639 does not have that interstate sweep.

[17] I-1639's preamble notes that it would "implement[] an enhanced background check system for [SARs] that is as strong as the one required to purchase a handgun." Dkt. 94-1, Ex. A at 2 (I-1639 § 1); *see also id.*, Dkt. 94-2, Ex. Q at 23, 26 (2018 General Election Voters' Pamphlet, Wash. Sec'y of State).

[18] The rule of lenity is particularly appropriate here because the Nonresident Sales Provision is framed in permissive (rather than prohibitory) terms. *See, e.g.*, *Shaver v. United States*, 174 F.2d 618, 619 (9th Cir. 1949) ("The coverage of criminal statutes cannot be supplied by implications.").

[19] The Nonresident Sales Provision would be constitutional even if it did prohibit interstate SAR sales through FFL-to-FFL transfer (which it does not) or under strict scrutiny, because it is "demonstrably justified by a valid factor unrelated to economic protectionism." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 402 (1994); *see* Dkt. 84 at 32–35. If the Court disagrees, however, it should not strike down the provision on that basis. It would be "highly problematic" for a federal court to "[c]onstru[e] a state law so as to create a constitutional

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

10

Finally, Mitchell's tangled digression into the various meanings of "sale," "purchase," and "delivery," *see* Dkt. 103 at 22–23, is difficult to unravel—and ultimately unavailing. If his point is merely that when a nonresident purchases a firearm from a Washington dealer through the FFL-to-FFL transfer process, it is not a "sale" under Washington or federal law, *id.* at 22, Defendants agree.[20] But if his position is that "it is possible to have a firearms ***purchase*** without a firearms ***sale***" under Washington law, *id.* at 23, it has no basis in the statutory text or logic. Neither RCW ch. 9.41 nor the GCA defines "purchase," so in the absence of any contrary intent it should be construed consistent with the parallel term, "sale." *See, e.g.*, *United States v. Nordbrock*, 38 F.3d 440, 444 (9th Cir. 1994) ("[S]imilar terms appearing in different sections of a statute should receive the same interpretation.").[21] Defining those terms differently would mean that when a nonresident acquires a SAR from a Washington dealer through FFL-to-FFL transfer, the buyer would violate RCW 9.41.124 because that transaction is a "purchase" but, because it is neither a "sale" nor a "delivery," the dealer would be in compliance with § 922(b)(3).[22] That absurd result is easily avoided by following the text of I-1639, which bans neither interstate sales nor purchases of SARs via FFL-to-FFL transfer.

---

problem, and then hold[] the statute unconstitutional." *Moy v. Cowen*, 958 F.2d 168, 170 (7th Cir. 1992) (per curiam). If the Court disagrees with the Washington Attorney General's interpretation of this state law, it should certify the question to the Washington Supreme Court. *See* RCW 2.60.020; *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 763 F.3d 1232, 1235 (9th Cir. 2014).

[20] That is why a dealer may lawfully use FFL-to-FFL transfer to ship a handgun across state lines for a nonresident end purchaser, despite the federal ban on direct interstate handgun sales to non-licensees. Under federal law, an FFL-to-FFL transfer (even if the end purchaser is a nonresident) is not a sale to a non-licensee. *See* 27 C.F.R. § 478.124. Instead, ATF instructs FFLs to record the transaction to "reflect the transfer to the out-of-State FFL and not to the end purchaser." Dkt. 94-2, Ex. PP at 6. An FFL-to-FFL transfer is neither a purchase nor a sale.

[21] The terms "sale" and "sell" mean "the actual approval of the delivery of a firearm in consideration of payment or promise of payment." RCW 9.41.010. In the FFL-to-FFL transfer process, the nonresident buyer may provide payment or promise of payment to the Washington FFL, but the "actual approval of the delivery of a firearm" to the buyer does not occur until after the FFL in the buyer's state completes the background check process. Dkt. 94-3, Ex. X at 6. Because the "sale" to the nonresident is not complete until the out-of-state FFL "approv[es] of the delivery," the transaction between the nonresident and the Washington FFL does not constitute a "purchase . . . in Washington" under RCW 9.41.010. Construing "purchase" as parallel to "sale" in this way is consistent with how "purchase" is used in common parlance to mean "procure, acquire, or obtain" through payment. *See* "Purchase," *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1569 (1996).

[22] This would have been true for the past 50 years. Mitchell incorrectly suggests that I-1639 added the word "purchase" to RCW 9.41.124, Dkt. 103 at 23, when it in fact comes from the 1970 session law that first gave nonresidents the ability to purchase long guns in Washington. *See* 1970 Wash. Sess. Laws 668, § 2.

---

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

11

### 2.      The Nonresident Sales Provision is nondiscriminatory

Mitchell generally ignores Dormant Commerce Clause jurisprudence, which is "driven by a concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *McBurney v. Young*, 569 U.S. 221, 235 (2013) (quoting *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 273–74) (1988)). "The crucial inquiry" is "whether [the law] is "a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *City of Phila. v. New Jersey,* 437 U.S. 617, 624 (1978).

Mitchell cites *City of Philadelphia* for an unsupported proposition: that "*protectionism of any kind*" "*is per se unconstitutional*." Dkt. 103 at 24. Such wordplay overlooks the ordinary meaning of the word "protectionism," as well as the doctrine's fundamental purpose to root out discrimination against interstate *commerce*.[23] Mitchell misreads *City of Philadelphia*, which held that "whatever New Jersey's ultimate purpose," its "means" were "protectionist" because it "impose[d] on out-of-state commercial interests the full burden of conserving the State's remaining landfill space" when concededly "there [was] no basis to distinguish out-of-state waste from domestic waste." 437 U.S. at 626–29.[24] Regardless, Mitchell does not even identify what he alleges Washington is "protecting." It certainly is not in-state economic interests, as Washington dealers like him are allegedly *harmed* while out-of-state dealers benefit.[25]

Moreover, Washington has an undisputedly valid and non-economic reason for treating nonresidents differently with respect to a SAR sale: to ensure it occurs only after an enhanced

---

[23] *See, e.g.*, "Protectionism," *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1553 (1996) ("*Econ.* The theory, practice, or system of fostering or developing domestic industries by protecting them from foreign competition . . . .").

[24] In *City of Philadelphia*, "[i]t made no difference whether the state's intent was environmental conservation or economic protectionism because the state provided no reason, 'apart from their origin, to treat them differently.'" *Rosenblatt*, 940 F.3d at 449 (quoting *City of Phila.*, 437 U.S. at 627). By contrast, Washington has a reason unrelated to commerce to bar in-state nonresident SAR purchases.

[25] Nor is this the case of protectionism of natural resources or some other "special service" unique to the state. *Cf. Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 577 (1997). I-1639 has no effect on prices of SARs in other states, nor does Mitchell allege that Washington has unique access to SARs.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106                    12           ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

background check confirms the purchaser's eligibility. Mitchell does not deny that background checks are important for public safety, that enhanced background checks are more comprehensive than NICS-only checks, or that it is nearly impossible to conduct enhanced background checks on nonresidents. Washington is owed significant deference on this issue of public health and safety. *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 526 (9th Cir. 2009). For those reasons, which are unrelated to commerce, residents and nonresidents are not "substantially similar." *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997). Mere participation in "the same market is not sufficient to conclude that entities are similarly situated." *LensCrafters*, 567 F.3d at 527. I-1639 does not discriminate.

### 3.   The Nonresident Sales Provision is constitutional as a matter of law

Absent discrimination "in favor of in-state commerce," Mitchell must demonstrate the law imposes a "significant burden on interstate commerce." *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015). Non-discriminatory laws generally are upheld unless they regulate "an activity that is inherently national" or "require a uniform system of regulation." *Id.* at 1147. Without a proper showing, "[c]ourts may not assess the benefits of a state law or the wisdom in adopting it." *Rosenblatt*, 940 F.3d at 452. Here, in-state firearms sales are not inherently national and do not require a uniform system of regulation. And Mitchell does not otherwise establish any significant burden on interstate commerce. *See* Dkt. 84 at 31–32. His erroneous argument regarding FFL-to-FFL transfer and conclusory allegations of harm are insufficient to preclude summary judgment. This Court should uphold the law without review of the putative local benefits under *Pike v. Bruce Church, Inc*., 397 U.S. 137 (1970).

Even if the Court were to engage in *Pike* balancing, the Nonresident Sales Provision passes constitutional muster. The law's benefits are substantial and largely undisputed. *See* Dkt. 84 at 32. Mitchell does not contest that enhanced background checks are more comprehensive than NICS-only checks, or that they increase public safety. Dkt. 76 at 3; Dkt. 103 at 20. The Nonresident Sales Provision ensures that SARs sold "in Washington" are subject to such checks

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

and does not affect the police powers of other states. *Contra* Dkt. 103 at 29–30. Any incidental burden on interstate commerce would not be "clearly excessive" in relation to the law's undisputed safety benefits. *Pike*, 397 U.S. at 142.[26]

### D.    Plaintiffs Fail to Provide Sufficient Evidence Establishing Justiciability

***Matthew Wald.*** Plaintiffs argue that Wald still has an interest in "acquir[ing] and then possess[ing] a [SAR] at his parents' home." Dkt. 103 at 26. But as the owner of multiple SARs, his interest has already been fulfilled. Dkt. 84 at 38. Wald therefore lacks standing.

***Organizations.*** Neither SAF nor NRA submitted a declaration alleging they have at least one member that meets the standing requirements. Thus, each fails to support its claim. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).[27]

***Mitchell.*** Mitchell lacks standing to challenge the Nonresident Sales Provision, as he has repeatedly failed to provide any evidence of his alleged lost sales.[28] Further, lost sales based on his incorrect reading of I-1639 before its enforcement is insufficient to establish standing. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 1999) (en banc).

***Casey and Rettmer.*** Finally, Casey's and Rettmer's claims are moot because they have turned 21 and their claims should be dismissed. *Craig v. Boren*, 429 U.S. 190, 192 (1976). No Plaintiff in this case has made a claim for damages, nominal or otherwise, *see* Dkt. 17 ¶¶ 124–27, nor have Plaintiffs sought leave to amend.

### III.    CONCLUSION

For the reasons stated above and in Defendants' Cross-Motion for Summary Judgment, they respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment and enter summary judgment in Defendants' favor.

---

[26] If any portion of I-1639 is ruled unconstitutional, the remainder should be upheld. Dkt. 84 at 40 n.113; *League of Educ. Voters v. State*, 176 Wn.2d 808, 827 (2013). Plaintiffs make no argument against severance.
[27] While Mitchell alleges he is a member of the NRA, Dkt. 104 at 189 of 339, the NRA is a wholly separate party in this action and Mitchell does not claim to speak on its behalf (and he says nothing about SAF).
[28] Dkt. 84 at 39 nn.110, 111 (citing Dkt. 94-4, Ex. KK and Dkt. 94-2, Ex. R).

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT NO. 3:19-cv-5106

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    DATED this 22nd day of May, 2020.

2

3                              ROBERT W. FERGUSON
                               *Attorney General*
4
                               NOAH G. PURCELL, WSBA No. 43492
5                              *Solicitor General*

6                              *s/ Jeffrey T. Even*
7                              JEFFREY T. EVEN, WSBA No. 20367
                               Deputy Solicitor General
8                              jeffrey.even@atg.wa.gov
                               ZACHARY PEKELIS JONES, WSBA No. 44557
9                              R. JULY SIMPSON, WSBA No. 45869
                               BRENDAN SELBY, WSBA No. 55325
10                             Assistant Attorneys General
                               Complex Litigation Division
11                             zach.jones@atg.wa.gov
12                             july.simpson@atg.wa.gov
                               brendan.selby@atg.wa.gov
13                             DIONNE PADILLA-HUDDLESTON, WSBA No. 38356
                               Assistant Attorney General
14                             Licensing and Administrative Law Division
15                             dionnep@atg.wa.gov
                               lalseaef@atg.wa.gov
16                             800 Fifth Avenue, Suite 2000
                               Seattle, WA 98104-3188
17

18                             *Attorneys for Defendant Teresa Berntsen*

19

20                             PACIFICA LAW GROUP LLP

21                             *s/ Gregory J. Wong*
                               Paul J. Lawrence, WSBA NO. 3557
22                             Gregory J. Wong, WSBA NO. 39329
                               Nicholas W. Brown, WSBA NO. 33586
23                             Kai A. Smith, WSBA NO. 54749

24                             *Attorneys for Intervenor-Defendant*
                               *Safe Schools Safe Communities*
25

26

DEFENDANTS' REPLY IN SUPPORT OF            15        ATTORNEY GENERAL OF WASHINGTON
MOTION FOR SUMMARY JUDGMENT                               Complex Litigation Division
NO. 3:19-cv-5106                                          800 Fifth Avenue, Suite 2000
                                                            Seattle, WA 98104-3188
                                                               (206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_s/ Leslie A. Lopez_
Leslie A. Lopez, WSBA No. 46118
Deputy Prosecuting Attorney
Clark County Prosecutor's Office – Civil Division
PO Box 5000
Vancouver WA 98666-5000
Tele: (564) 397-2478
leslie.lopez@clark.wa.gov

_Attorney for Defendant Chuck Atkins_


_s/ Salvatore J. Faggiano_
Salvatore J. Faggiano, WSBA No. 15696
Assistant City Attorney
Office of the City Attorney
808 W. Spokane Falls Blvd.
Spokane, WA 99201-3326
Telephone: (509) 625-6818
Fax: (509) 625-6277
sfaggiano@spokanecity.org

_Attorney for Defendant Craig Meidl_

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
NO. 3:19-cv-5106

16

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on this 22nd day of May, 2020, I electronically filed the foregoing

3  document with the United States District Court ECF system, which will send notification of such

4  filing to all counsel of record.

5       Dated this 22nd day of May, 2020.

6                                                                    *s/ Thien Tran*

7                                                    Thien Duc Tran, Paralegal/Legal Assistant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY IN SUPPORT OF                    17          ATTORNEY GENERAL OF WASHINGTON
MOTION FOR SUMMARY JUDGMENT                                       Complex Litigation Division
NO. 3:19-cv-5106                                                        800 Fifth Avenue, Suite 2000
                                                                        Seattle, WA 98104-3188
                                                                          (206) 464-7744