The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL MITCHELL, ROBIN BALL, LUKE RETTMER, NATHANIEL CASEY, MATTHEW WALD, SECOND AMENDMENT FOUNDATION, AND NATIONAL RIFLE ASSOCIATION,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHUCK ATKINS, in his official capacity as the Sheriff of Clark County, Washington, CRAIG MEIDL, in his official capacity as the Chief of Police of Spokane, Washington, and TERESA BERNTSEN, in her official capacity as the director of the Washington State Department of Licensing,<br><br>*Defendants,*<br><br>and<br><br>SAFE SCHOOLS SAFE COMMUNITIES,<br><br>*Defendant-Intervenor.* | NO. 3:19-CV-05106-RBL<br><br>**BRIEF OF *AMICI CURIAE* GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE AND BRADY IN SUPPORT OF DEFENDANTS AND INTERVENOR-DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTED ON MOTION CALENDAR: August 18, 2020** |

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# **CORPORATE DISCLOSURE**

Giffords Law Center to Prevent Gun Violence and Brady have no parent corporations. They have no stock and hence no publicly held company owns 10% or more of their stock. None of their members or owners is in a joint venture or limited liability corporation (LLC), they have no partners in a partnership or limited liability partnership (LLP), and they have no corporate member.

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# **TABLE OF CONTENTS**

**Page**

INTEREST OF *AMICUS CURIAE* ................................................................................................ 1

INTRODUCTION ......................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

    I.    Eighteen-to-Twenty-Year-Olds Attempt Suicide at Disproportionately High Rates, and Access to Firearms, Especially Long Guns, Increases the Likelihood and Lethality of Those Suicide Attempts. .......................................... 5

    II.    Eighteen-to-Twenty-Year-Olds Are Disproportionately Likely to Carry Out Mass Shootings at Schools. ............................................................................. 7

    III.    The Initiative Defines "Semiautomatic Assault Rifles" to Encompass an Exceptionally Lethal Subset of Long Guns. ........................................................... 9

CONCLUSION ............................................................................................................................ 11

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of N.J. Rifle & Pistol Clubs v. Attorney Gen. N.J.*,
   910 F.3d 106 (3d Cir. 2018) ................................................................................................1

*Coal. for Econ. Equity v. Wilson*,
   122 F.3d 692 (9th Cir. 1997) ..............................................................................................11

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ............................................................................................................1

*Fyock v. City of Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015) ...........................................................................................1, 4

*Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   417 F. Supp. 3d 747 (W.D. Va. 2019) .................................................................................1

*Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   No. 19-2250 (4th Cir. 2020) ................................................................................................2

*Kasler v. Lockyer*,
   23 Cal. 4th 472 (2000) .........................................................................................................9

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ............................................................................................................1

*Md. Shall Issue v. Hogan*,
   353 F. Supp. 3d 400 (D. Md. 2018) .....................................................................................1

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   700 F.3d 185 (5th Cir. 2012) ............................................................................................2, 7

*People v. Fields*,
   24 N.E.3d 326 (Ill. App. Ct. 2014) ......................................................................................4

*Peruta v. County of San Diego*,
   824 F.3d 919 (9th Cir. 2016) ...............................................................................................1

*Silvester v. Harris*,
   843 F.3d 816 (9th Cir. 2016) ...............................................................................................4

AMICI-CURIAE GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Case 3:19-cv-05106-RBL   Document 111   Filed 07/01/20   Page 5 of 20

*Stimmel v. Sessions*,
    879 F.3d 198 (6th Cir. 2018) ............................................................................................1

*Teixeira v. County of Alameda*,
    873 F.3d 670 (9th Cir. 2017) ............................................................................................1

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ......................................................................................3, 4

*United States v. Hayes*,
    555 U.S. 415 (2009) ..........................................................................................................1

*United States v. Masciandaro*,
    638 F.3d 458 (4th Cir. 2011) ..........................................................................................11

*United States v. Torres*,
    911 F.3d 1253 (9th Cir. 2019) ..........................................................................................3

*Washington v. State Department*,
    No. 2:20-cv-00111-RAJ (W.D. Wash. 2020) ...................................................................1

**Other Authorities**

*Active Shooter: Shooter's Age*, K-12 School Shooting Database, Center for
    Homeland Defense and Security .......................................................................................8

Adam Lankford & James Silver, *Why Have Public Mass Shootings Become More
    Deadly? Assessing how Perpetrators' Motives and Methods Have Changed
    Over Time*, 19 Criminology & Public Policy 37 (2020) ..................................................8

American Public Health Association, *Reducing Suicides by Firearms* (2018) .............................5

Centers for Disease Control and Prevention, Web-based Injury Statistics Query
    and Reporting System (WISQARS), *Leading Cause of Death Reports* .........................5

Centers for Disease Control and Prevention, Wide-ranging Online Data for
    Epidemiologic Research (WONDER) ..............................................................................6

Daniel W. Webster et al., *Association Between Youth-Focused Firearm Laws and
    Youth Suicides*, 292 JAMA 594 (2004) ...........................................................................6

Eboni Morris, *Youth Violence: Implications for Posttraumatic Stress Disorder in
    Urban Youth*, National Urban League Policy Institute (2009) .......................................9

Elzerie de Jager et al., *Lethality of Civilian Active Shooter Incidents with and
    Without Semiautomatic Rifles in the United States*, 320 JAMA 1034 (2018) ...........9, 10

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Glenn D. Braunstein, *Violent Events Have Long-Term Effects on Children*,
  Huffington Post, Sept. 24, 2012 .................................................................................. 9

Heather Sher, *What I Saw Treating the Victims from Parkland Should Change the
  Debate on Guns*, The Atlantic, Feb. 22, 2018 ............................................................ 9

Initiative Measure No. 1639 ............................................................................... *passim*

*Initiative Measure No. 1639*, November 6, 2018 General Election Results,
  Secretary of State (Nov. 27, 2018) ............................................................................ 11

J. Michael Bostwick et al., *Suicide Attempt as a Risk Factor for Completed Suicide:
  Even More Lethal Than We Knew*, 173 Am. J. of Psychiatry 1094 (2016) .............. 5

Jane E. Brody, *After a Suicide Attempt, the Risk of Another Try*, N.Y. Times,
  Nov. 7, 2016 ................................................................................................................ 6

Jared Keller, *The Psychological Aftermath of Surviving School Shootings*, Pacific
  Standard, Mar. 25, 2019 ............................................................................................. 9

Jeremy White, *When Lawmakers Try to Ban Assault Weapons, Gunmakers Adapt*,
  N.Y. Times, July 31, 2019 ........................................................................................ 10

Jillian K. Peterson & James A. Densley, *Database of Mass Shootings in the
  United States*, The Violence Project (Nov. 2019) ..................................................... 7

Jillian Peterson & James Densley, *School shooters usually show these signs of
  distress long before they open fire, our database shows*, The Conversation,
  Feb. 8, 2019 ................................................................................................................ 8

Joseph O'Sullivan, *Washington state voters approved new gun regulations in I-
  1639. Here's what the law will do*, Seattle Times, Nov. 8, 2018 .............................. 2

Joshua D. Brown & Amie J. Goodin, *Mass Casualty Shooting Venues, Types of
  Firearms, and Age of Perpetrators in the United States, 1982–2018*, 108 Am.
  J. Pub. Health 1385 (2018) ....................................................................................... 10

Melvin D. Livingston et al., *A Descriptive Analysis of School and School Shooter
  Characteristics and the Severity of School Shootings in the United States,
  1999–2018*, 64 J. of Adolescent Health 797 (2019) ................................................ 10

*Mental Health Disorder Statistics*, Johns Hopkins Medicine (2020) ............................. 5

Merete Nordentoft et al., *Absolute Risk of Suicide after First Hospital Contact in
  Mental Disorder*, 68 Archives of General Psychiatry 1058 (2011) .......................... 5

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - iv

Davis Wright Tremaine LLP
L AW  O FFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Monika K. Goyal et al., *State Gun Laws and Pediatric Firearm-Related Mortality*, 144 Pediatrics No. 2 (2019) ...................................................................7

*Percentage of the population 3 to 34 years old enrolled in school, by age group: selected years, 1940 through 2018*, National Center for Education Statistics..........................8

RAND Corporation, *The Science of Gun Policy: A Critical Synthesis of Research Evidence on the Effects of Gun Policies in the United States* (2018) .........................................4

Sriraman Madhavan et al., *Firearm Legislation Stringency and Firearm-Related Fatalities Among Children in the US*, 229 J. Am. College Surgeons 150 (2019).................................................................................................................................7

Thomas J. Hanlon et al., *Type of Firearm Used in Suicides: Findings from 13 States in the National Violent Death Reporting System, 2005–2015*, 65 J. Adolescent Health 366 (2019) ...........................................................................................6

Tomáš Paus et al., *Why do many psychiatric disorders emerge during adolescence?*, 9 Nature Reviews Neuroscience 947 (2008).........................................5

U.S. Census Bureau, *Current Population Reports*, Population Projections of the United States by Age, Sex, Race, and Hispanic Origin: 1995 to 2050 (1996)...........................8

*Washington party shooting suspect read AR-15 gun manual right before attack*, The Guardian, Aug. 1, 2016..............................................................................................2

Zusha Elinson & Cameron McWhirter, *Gun Makers Adjust Rifles to Skirt Bans*, Wall St. J., June 21, 2019.................................................................................................11

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Giffords Law Center to Prevent Gun Violence ("Giffords Law Center")[1] is a non-profit policy organization dedicated to researching, writing, enacting, and defending laws and programs proven to effectively reduce gun violence. The organization was founded more than a quarter-century ago following a gun massacre at a San Francisco law firm and was renamed Giffords Law Center in October 2017 after joining forces with the gun-safety organization founded by former Congresswoman Gabrielle Giffords. Today, Giffords Law Center provides free assistance and expertise to lawmakers, advocates, legal professionals, law enforcement officials, and citizens who seek to improve the safety of their communities. Giffords Law Center has provided informed analysis as an *amicus* in many firearm-related cases, including in *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 417 F. Supp. 3d 747 (W.D. Va. 2019), *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015), and *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (*en banc*).[2]

*Amicus curiae* Brady (formerly the Brady Center to Prevent Gun Violence) is a non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Brady has a substantial interest in ensuring that the Constitution and state laws are properly interpreted to allow *strong* government action to prevent gun violence. Through its Legal Action Project, Brady has filed numerous briefs in support of government regulation of firearms, including in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), *United States v. Hayes*, 555 U.S. 415 (2009), *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *Washington v. State Department*, No. 2:20-cv-00111-RAJ (W.D. Wash. 2020). Further, Brady filed *amicus* briefs

---

[1] Giffords Law Center was previously named Law Center to Prevent Gun Violence, and Legal Community Against Violence.

[2] Several courts have cited research and information from Giffords Law Center's *amicus* briefs in Second Amendment rulings. *E.g.*, *Hirschfeld*, 417 F. Supp. 3d at 754, 759; *Ass'n of N.J. Rifle & Pistol Clubs v. Attorney Gen. N.J.*, 910 F.3d 106, 121-22 (3d Cir. 2018); *Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400, 403-05 (D. Md. 2018); *Stimmel v. Sessions*, 879 F.3d 198, 204, 208, 210 (6th Cir. 2018); *Peruta v. County of San Diego*, 824 F.3d 919, 943 (9th Cir. 2016) (*en banc*) (Graber, J., concurring).

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

supporting federal minimum age laws in *National Rifle Association of America., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) and *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 19-2250 (4th Cir. 2020).

## INTRODUCTION[3]

On November 6, 2018, the people of Washington went to the polls and voted to reduce gun violence in their communities, and among young people in particular. They did so by passing a referendum—Initiative 1639 (the "Initiative")[4]—to prohibit 18-to-20-year-olds from purchasing *semiautomatic* assault rifles.[5] The Initiative passed by a strong majority, garnering more than 59% of the vote.[6]

The grassroots movement to pass the Initiative began two years earlier, after three teenagers were murdered at a house party in Mukilteo, Washington, by a former high school classmate. The 19-year-old attacker in that tragedy used an AR-15 semiautomatic assault rifle that he purchased *legally* the previous week.[7] The massacre animated Washington voters to devise measures to reduce the gun violence that was all too prevalent in their state, particularly shootings involving semiautomatic assault rifles, which they recognized "heavily" "impact[] . . . children and teenagers."[8]

---

[3] No counsel for a party authored this brief in whole or in part. No person other than *amici* or their counsel contributed money to fund this brief's preparation or submission.

[4] Initiative Measure No. 1639, approved Nov. 6, 2018, https://www.sos.wa.gov/_assets/elections/initiatives/finaltext_1531.pdf.

[5] Plaintiffs' Amended Complaint challenges only the Initiative's restrictions on *purchase* (not possession) of semiautomatic assault rifles. *See* Dkt. 17. However, Plaintiffs' Motion for Summary Judgment challenges restrictions on purchase and possession. *See* Pls.' Mot. for Summ. J., Dkt. 76 ("Pls.' MSJ"). Although the Court need only resolve the challenge brought in the Complaint, both the purchase and possession restrictions in the Initiative easily pass constitutional muster.

[6] MacNaughton Decl., Ex. 1, Joseph O'Sullivan, *Washington state voters approved new gun regulations in I-1639. Here's what the law will do*, Seattle Times, Nov. 8, 2018, https://www.seattletimes.com/seattle-news/politics/washington-state-voters-approved-new-gun-regulations-in-i-1639-heres-what-the-law-will-do/.

[7] MacNaughton Decl., Ex. 2, *Washington party shooting suspect read AR-15 gun manual right before attack*, The Guardian, Aug. 1, 2016, https://www.theguardian.com/us-news/2016/aug/01/washington-shooting-suspect-allen-ivanov-ar-15-gun-manual.

[8] Initiative 1639 § 1.

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs contend that the Initiative prevents them from exercising rights conferred by the Second Amendment. Dkt. 17 ¶ 3. This ignores well-established Second Amendment law, which has long permitted sensible firearm regulations like the Initiative that reasonably fit the state's interest in promoting public safety.

Social science data cited in Defendants' cross-motion for summary judgment confirms the more than reasonable fit between the Initiative's restrictions and Washington's compelling interest in protecting the safety of its citizens. This *amicus* brief presents three additional arguments, rooted in social science research, that further justify the Initiative under the applicable legal standard: (i) young people aged 18 to 20 are at higher risk of using firearms to attempt suicide, (ii) this group is disproportionately likely to carry out mass shootings at schools using semiautomatic assault rifles, and (iii) the Initiative's definition of semiautomatic assault rifles, which focuses on these rifles' mechanics, ensures that the most lethal types of rifles are regulated. The Initiative easily passes constitutional muster.

**ARGUMENT**

Courts in the Ninth Circuit apply a "two-step inquiry to analyze claims that a law violates the Second Amendment." *United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019). This test "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Id*. (quoting *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)). Here, the Initiative's minimum age requirement passes at both steps. As Defendants explained, history and tradition show that state and federal governments have regulated 18-to-20-year-olds' access to firearms since the founding of this nation. *See* Defs.' & Intervenor-Defs.' Cross-Mot. for Summ. J. & Opp'n to Pls.' Mot. for Summ. J., Dkt. 84 ("Defs.' MSJ") at 12-15. The Initiative's minimum age requirement is therefore constitutional at the threshold inquiry. *Id*.

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

But even if this Court proceeds to step two, the Initiative's minimum age requirement easily survives intermediate scrutiny.[9]  Intermediate scrutiny requires "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective."  *Chovan*, 735 F.3d at 1139.  Courts may look to legislative history as well as scientific or other studies to determine whether intermediate scrutiny is satisfied.  *Fyock*, 779 F.3d at 1000 (considering "studies in the record or cited in pertinent case law") (citation & internal quotation marks omitted).

The Initiative satisfies both criteria of intermediate scrutiny.  *First*, it is beyond question that the Initiative's stated public safety goals are "substantial"; the Initiative raises the minimum age to purchase semiautomatic rifles because "[s]emiautomatic assault rifles are specifically designed to kill quickly and efficiently and have been used in some of the country's deadliest mass shootings."[10]  These weapons are also disproportionately used by young people in suicide attempts.  The Ninth Circuit found it "self-evident" that the government's interests in addressing these grave public safety concerns are "substantial and important."  *Fyock*, 779 F.3d at 1000.

*Second*, empirical research overwhelmingly supports the voters' judgment: 18-to-20-year-olds are disproportionately likely to attempt suicide and commit mass shootings at schools.[11]  In part, this is because young people's brains are still developing, causing them to act impulsively and making them more likely to use guns irresponsibly.  *See* Defs.' MSJ at 21-23.  Research confirms that age-based firearm restrictions reduce firearm-related injuries and deaths.  *Infra* Section I.  Data also show that suicide attempts and mass shootings are far deadlier when carried

---

[9] As Defendants explain in their Motion for Summary Judgment, intermediate scrutiny is the appropriate level of scrutiny because the Initiative neither "implicates the core of the Second Amendment right" nor "severely burdens that right."  *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016); *see* Defs.' MSJ at 16-19.

[10] Initiative 1639 § 1.

[11] As Defendants note, 18-to-20-year-olds are also disproportionately likely to commit violent crime, *see* Defs.' MSJ at 22-23, but there's more:  This cohort is also disproportionately the *victim* of gun violence.  *See* MacNaughton Decl., Ex. 3, RAND Corporation, *The Science of Gun Policy: A Critical Synthesis of Research Evidence on the Effects of Gun Policies in the United States*, 145 (2018); *see also People v. Fields*, 24 N.E.3d 326, 344 (Ill. App. Ct. 2014) ("We also note that the 18-to-20-year-old age group is more likely to be directly interacting with and, thus, endangering juveniles under 18 years of age.").

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

out using semiautomatic assault rifles.  Accordingly, there is more than a "reasonable fit" between the voters' public safety objectives and the data-driven reforms advanced by the Initiative.

## I. Eighteen-to-Twenty-Year-Olds Attempt Suicide at Disproportionately High Rates, and Access to Firearms, Especially Long Guns, Increases the Likelihood and Lethality of Those Suicide Attempts.

Eighteen-to-twenty-year-olds are disproportionately at risk of attempting suicide, and firearm access exacerbates this risk.  Many major psychiatric conditions first develop in adolescence,[12] and suicide risk "increase[s] steeply during the first few years after" an individual's first contact with psychiatric services.[13]  Data from the Centers for Disease Control and Prevention show that suicide accounts for a higher percentage of deaths for 15-to-24-year-olds than for any other age group.[14]  Indeed, suicide is the second-most common cause of death among 18-to-20-year-olds.[15]

"Access to firearms is a key risk factor for suicide."[16]  Firearm suicide is also the suicide method with the highest fatality rate—the odds of completing a suicide attempt are 140 times greater when a gun is used than for any other commonly used method.[17]  Moreover, less than 3% of people who survive one suicide attempt later die by suicide.[18]  As scholars have noted, "[s]uicide attempters often have second thoughts, but when a method like a gun works so

---

[12] *See* MacNaughton Decl., Ex. 4, Tomáš Paus et al., *Why do many psychiatric disorders emerge during adolescence?*, 9 Nature Reviews Neuroscience 947, 952 (2008) ("Anxiety disorders, bipolar disorder, depression, eating disorder, psychosis including schizophrenia and substance abuse all most commonly emerge during adolescence."); MacNaughton Decl., Ex. 5, *Mental Health Disorder Statistics*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/wellness-and-prevention/mental-health-disorder-statistics (last visited Apr. 6, 2020) (explaining that schizophrenia typically "first appears in men during their late teens or early 20s").

[13] MacNaughton Decl., Ex. 6, Merete Nordentoft et al., *Absolute Risk of Suicide after First Hospital Contact in Mental Disorder*, 68 Archives of General Psychiatry 1058, 1061 (2011).

[14] Centers for Disease Control and Prevention, Web-based Injury Statistics Query and Reporting System (WISQARS), *Leading Cause of Death Reports*, https://webappa.cdc.gov/sasweb/ncipc/leadcause.html.

[15] *Id.*

[16] MacNaughton Decl., Ex. 7, American Public Health Association, *Reducing Suicides by Firearms* (2018), https://www.apha.org/policies-and-advocacy/public-health-policy-statements/policy-database/2019/01/28/reducing-suicides-by-firearms.

[17] MacNaughton Decl., Ex. 8, J. Michael Bostwick et al., *Suicide Attempt as a Risk Factor for Completed Suicide: Even More Lethal Than We Knew*, 173 Am. J. of Psychiatry 1094, 1097 (2016).

[18] *Id.* at 1098.

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

effectively, there's no opportunity to reconsider."[19]  Therefore, a minor's access to firearms during a suicide attempt often determines whether they die or recover.

Eighteen-to-twenty-year-olds are particularly at risk for suicides involving long guns, a category of firearm that includes semiautomatic assault rifles.  Of suicides where the firearm type is known, adults are nearly three times as likely to die by handgun suicide as they are by long gun suicide.[20]  But 18-to-20-year-olds are much more likely to die by *long gun* suicides than other groups, likely at least in part because, prior to the enactment of laws like the Initiative, they have had far easier access to long guns compared to handguns.  In fact, 18- and 19-year-olds are the only groups more likely to die by long gun suicide than handgun suicide.[21]  A recent study found that, while handguns are the most common weapon utilized in suicides, long gun use is relatively higher among adolescents compared with adults.[22]  Long guns therefore pose a unique risk to the 18-to-20-year-old age group.

Moreover, studies have repeatedly found a connection between age restrictions such as the Initiative and a decline in firearm-related adolescent deaths, especially suicides.  For instance, an August 2004 study found that state laws raising the minimum legal age to purchase a handgun to 21 were associated with a 9% decline in firearm suicide rates among 18-to-20-year-olds.[23]

State gun safety laws more generally have also proven effective in reducing gun deaths among young people, including in the 18-to-20-year-old range.  A 2019 study examined the 21,241 firearm-related deaths among U.S. children from 2011 to 2015.  Eighteen-to-21-year-olds made up more than two-thirds of these deaths (68.7%).  But state laws make a difference: The

---

[19] MacNaughton Decl., Ex. 9, Jane E. Brody, *After a Suicide Attempt, the Risk of Another Try*, N.Y. Times, Nov. 7, 2016, https://www.nytimes.com/2016/11/08/well/live/after-a-suicide-attempt-the-risk-of-another-try.html.

[20] MacNaughton Decl., Ex. 10, Thomas J. Hanlon et al., *Type of Firearm Used in Suicides: Findings from 13 States in the National Violent Death Reporting System, 2005–2015*, 65 J. Adolescent Health 366, 367 (2019).

[21] Centers for Disease Control and Prevention, Wide-ranging Online Data for Epidemiologic Research (WONDER), https://wonder.cdc.gov/.  The supporting Wonder database query is on file with the author and will be supplied upon request.

[22] MacNaughton Decl., Ex. 10, *supra* n.20, at 366-67.

[23] MacNaughton Decl., Ex. 11, Daniel W. Webster et al., *Association Between Youth-Focused Firearm Laws and Youth Suicides*, 292 JAMA 594, 598 (2004).

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

study found that every 10-point increase in a score measuring the strictness of a state's gun control laws "decreases the firearm-related mortality rate in children by 4%" in its fully adjusted model.[24] Another 2019 study using the same gun-law scores found that the quartile of states with the strictest laws "have an annual pediatric firearm mortality rate of 2.563 per 100,000 [children aged 0-to-19-years-old] compared with states in the lowest quartile [with the least strict laws], where the mortality rate is almost twice as high at 5.005 per 100,000."[25] These studies show that minimum age laws save lives and thereby also confirm a "reasonable fit" between Washington's public safety objective and the Initiative's restrictions.

## II. Eighteen-to-Twenty-Year-Olds Are Disproportionately Likely to Carry Out Mass Shootings at Schools.

Eighteen-to-twenty-year-olds are also especially prone to take risks and deprioritize long-term outcomes. *See Nat'l Rifle Assoc. of Am.*, 700 F.3d at 210 n.21 ("[M]odern scientific research supports the commonsense notion that 18-to-20-year-olds tend to be more impulsive" because key brain functions such as "response inhibition, emotional regulation, planning and organization . . . continue to develop between adolescence and young adulthood.") (alteration in original) (quoting, in part, American Medical Association submission). These qualities—impulsiveness and emotional volatility—make easy gun access a disproportionate public health risk for young people.

Nowhere is this clearer than in the epidemic of deadly mass shootings committed by young people in schools or targeting peers from school settings. Mass shooters tend to target people or institutions against which they have a grievance,[26] which is why most school shooters—

---

[24] MacNaughton Decl., Ex. 12, Monika K. Goyal et al., *State Gun Laws and Pediatric Firearm-Related Mortality*, 144 Pediatrics No. 2 at 3 & tbl. 2 (2019).

[25] MacNaughton Decl., Ex. 13, Sriraman Madhavan et al., *Firearm Legislation Stringency and Firearm-Related Fatalities Among Children in the US*, 229 J. Am. College Surgeons 150, 152 (2019).

[26] A comprehensive analysis of mass shootings shows that 70% of mass shooters knew at least some of their victims, and school shooters "in particular were 'insiders.'" MacNaughton Decl., Ex. 14, Jillian K. Peterson & James A. Densley, *Database of Mass Shootings in the United States*, The Violence Project, at 19 (Nov. 2019), https://www.theviolenceproject.org/wp-content/uploads/2019/11/TVP-Mass-Shooter-Database-Report-Final-compressed.pdf.

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

as high as 91% in one recent study—were current or former students of the school at which the attack occurred.[27]  As a result, the median age of school shooters is high-school-aged or slightly older.  According to data on active shooter incidents in schools collected by the Center for Homeland Defense and Security, nearly three-quarters of known active school shooters were under 21 at the time of their attack.  Roughly 14% were between 18 and 21, despite this age group accounting for less than 5% of the population.[28]  Scholars have also noted that the age of perpetrators of high-fatality mass shootings has continually decreased over the past decade.[29]  This data shows that the Initiative's age restriction is tailored to encompass the cohort that poses the greatest risk to Washington's students.

As the Initiative recognized in its statement of intent, "[t]he impacts of gun violence by assault weapons fall heavily on children and teenagers.  According to one analysis, more than two hundred eight thousand students attending at least two hundred twelve schools have experienced a shooting on campus since the Columbine mass shooting in 1999."[30]  Data from the National Center for Education Statistics show that in 2018, 18.6% of 18- and 19-year-olds in the United States were enrolled in secondary education.[31]  Extrapolating that percentage to Washington, there are likely almost 50,000 18- and 19-year-olds in Washington enrolled in

---

[27] MacNaughton Decl., Ex. 15, Jillian Peterson & James Densley, *School shooters usually show these signs of distress long before they open fire, our database shows*, The Conversation, Feb. 8, 2019, https://theconversation.com/school-shooters-usually-show-these-signs-of-distress-long-before-they-open-fire-our-database-shows-111242.

[28] Based on data from 1970 to present.  MacNaughton Decl., Ex. 16, *Active Shooter: Shooter's Age*, K-12 School Shooting Database, Center for Homeland Defense and Security, https://www.chds.us/ssdb/active-shooter-shooters-age/ (last visited Apr. 6, 2020); MacNaughton Decl., Ex. 20 at 76, U.S. Census Bureau, *Current Population Reports, Population Projections of the United States by Age, Sex, Race, and Hispanic Origin: 1995 to 2050* (1996), *available at* https://www.census.gov/library/publications/1996/demo/p25-1130.html.

[29] MacNaughton Decl., Ex. 17 at 43, Adam Lankford & James Silver, *Why Have Public Mass Shootings Become More Deadly? Assessing how Perpetrators' Motives and Methods Have Changed Over Time*, 19 Criminology & Public Policy 37, 43 (2020).

[30] Initiative 1639 § 1.

[31] MacNaughton Decl., Ex. 18, *Percentage of the population 3 to 34 years old enrolled in school, by age group: selected years, 1940 through 2018*, National Center for Education Statistics, *available at* https://nces.ed.gov/programs/digest/d19/tables/dt19_103.20.asp?current=yes (last visited Apr. 6, 2020).

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

secondary schools.  The Initiative's sensible age restrictions are designed to protect precisely these students, who are the same age as the victims of the Mukilteo house party shooting.

But even after a shooting ends, gun violence disproportionately harms young people. Young people exposed to gun violence are at a greater risk of developing PTSD[32] and harming themselves.[33]  For instance, after the Columbine massacre, one student survivor suffering from PTSD died from suicide after losing two friends and watching his basketball coach die in the mass shooting.[34]  Similarly, two teenage survivors of the 2018 mass shooting in Parkland, Florida later died by suicide.[35]  By seeking to prevent mass school shootings and other gun violence, the Initiative's age restrictions squarely fit the state's objective of protecting the mental health and safety of young adults.

### III. The Initiative Defines "Semiautomatic Assault Rifles" to Encompass an Exceptionally Lethal Subset of Long Guns.

Semiautomatic assault rifles are exceptionally lethal.[36]  *See* Defs.' MSJ at 24-25.  These weapons fire bullets at a higher velocity than other types of firearms (such as semiautomatic handguns), which medical evidence shows results in more grievous injuries.[37]  School shootings in the United States involving rifles have a 9.73 times higher causality rate and a 14.74 times

---

[32] One study found that nearly 40% of children exposed to a shooting will develop PTSD.  *See* MacNaughton Decl., Ex. 19 at 7, Eboni Morris, *Youth Violence: Implications for Posttraumatic Stress Disorder in Urban Youth*, National Urban League Policy Institute, at 7 (2009).

[33] MacNaughton Decl., Ex. 21, Glenn D. Braunstein, *Violent Events Have Long-Term Effects on Children*, Huffington Post, Sept. 24, 2012, https://www.huffingtonpost.com/glenn-d-braunstein-md/childrenptsd_b_1901651.html.

[34] *Id.*

[35] MacNaughton Decl., Ex. 22, Jared Keller, *The Psychological Aftermath of Surviving School Shootings*, Pacific Standard, Mar. 25, 2019, https://psmag.com/education/the-psychological-aftermath-of-surviving-school-shootings.

[36] *See* MacNaughton Decl., Ex. 23 at 1034, Elzerie de Jager et al., *Lethality of Civilian Active Shooter Incidents with and Without Semiautomatic Rifles in the United States*, 320 JAMA 1034, 1034 (2018).

[37] *See, e.g.*, MacNaughton Decl., Ex. 24, Heather Sher, *What I Saw Treating the Victims from Parkland Should Change the Debate on Guns*, The Atlantic, Feb. 22, 2018, https://www.theatlantic.com/politics/archive/2018/02/what-i-saw-treating-the-victimsfrom-parkland-should-change-the-debate-on-guns/553937/ (explaining difference between injuries inflicted by semiautomatic rifles vs. handguns); *Kasler v. Lockyer*, 23 Cal. 4th 472, 484 (2000) (citing medical evidence on "special wounding characteristics" of the high-velocity ammunition like that used in semiautomatic rifles).

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

higher fatality rate compared to shootings involving handguns.[38]  A recent study estimated that one-fourth of school shooting deaths nationwide could have been prevented if 18-to-20-year-olds were barred from buying long guns.[39]

Despite this data, Plaintiffs contend the Initiative's "scope" is too broad because the Initiative defines semiautomatic assault rifles in terms of their fundamental mechanics rather than by particular features.  Pls.' MSJ" at 8-10.  Specifically, the Initiative defines semiautomatic assault rifles as "any rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge."[40]  This definition differs from some other states' assault weapons bans, which restrict specific features, "such as pistol grips or bayonet lugs or muzzle brakes."  Pls.' MSJ at 10.

The Initiative's approach is entirely reasonable, especially given that its goal is much narrower than an assault weapons ban.  The Initiative does not ban any weapons, but restricts minors' access to otherwise-available firearms capable of causing exceptionally serious harm if misused.  Research on the enhanced lethality of semiautomatic rifles, defined as in the Initiative, amply justifies the Initiative's holistic definition.[41]  Moreover, gun manufacturers have a well-documented history of circumventing regulations that prohibit specific features on semiautomatic rifles by engineering slight modifications so that a rifle complies with the regulation but remains similarly lethal in operation.[42]  Washington sought to avoid this pitfall in the Initiative by defining

---

[38] MacNaughton Decl., Ex. 25 at 798, Melvin D. Livingston et. al, *A Descriptive Analysis of School and School Shooter Characteristics and the Severity of School Shootings in the United States*, *1999–2018*, 64 J. of Adolescent Health 797, 798 (2019).

[39] MacNaughton Decl., Ex. 26 at 1386, Joshua D. Brown & Amie J. Goodin, *Mass Casualty Shooting Venues, Types of Firearms, and Age of Perpetrators in the United States, 1982–2018*, 108 Am. J. Pub. Health 1385, 1386 (2018).

[40] Initiative 1639 § 16.

[41] *See* MacNaughton Decl., Ex. 23, *supra* n.36 at 1034 (finding that active shootings involving a semiautomatic rifle, defined similarly to the Initiative's definition, were associated on average with more injuries and deaths than if a different kind of gun was used).

[42] *See* MacNaughton Decl., Ex. 27, Jeremy White, *When Lawmakers Try to Ban Assault Weapons, Gunmakers Adapt*, N.Y. Times, July 31, 2019, https://www.nytimes.com/interactive/2019/07/31/us/assault-weapons-ban.html;

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 10

semiautomatic assault rifles by their fundamental mechanical traits that enable their lethality. In doing so, the Initiative ensures that the limited restriction it places on 18-to-20-year-olds' ability to purchase the most lethal type of rifles promotes public safety (by, among other things, reducing fatalities from mass shootings and suicide attempts) rather than incentivizing gun manufacturers to design around the law.

## CONCLUSION

The Initiative's minimum-age restrictions reflect the judgment of nearly two million Washington voters[43] who voted to address the grave danger of gun violence.[44] Nothing in the Second Amendment requires this Court to strip the people of their power to protect their children and communities. Indeed, "[a] system which permits one judge to block with the stroke of a pen what [nearly two million] state residents voted to enact as law tests the integrity of our constitutional democracy." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 699 (9th Cir. 1997). As Judge Wilkinson, speaking for the Fourth Circuit, said: "This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011).

\*   \*   \*

The Initiative is a commonsense, calibrated, and data-driven solution with enormous potential to save lives that does not substantially burden Second Amendment rights.

---

MacNaughton Decl., Ex. 28, Zusha Elinson & Cameron McWhirter, *Gun Makers Adjust Rifles to Skirt Bans*, Wall St. J., June 21, 2019, https://www.wsj.com/articles/gun-makers-adjust-rifles-to-skirt-bans-11561109521.

[43] MacNaughton Decl., Ex. 29, *Initiative Measure No. 1639*, November 6, 2018 General Election Results, Secretary of State (Nov. 27, 2018), *available at* https://results.vote.wa.gov/results/20181106/State-Measures-Initiative-Measure-No-1639-Initiative-Measure-No-1639-concerns-firearms_ByCounty.html.

[44] Initiative 1639 § 1.

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 11

Dated: July 1, 2020

*Of Counsel for Amicus Curiae Giffords Law Center to Prevent Gun Violence:*

J. Adam Skaggs
Hannah Shearer
Hannah Friedman
GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE
268 Bush St. # 555
San Francisco, CA 94104
Tel: (415) 433-2062

Robert A. Sacks
Leonid Traps
Angela N. Ellis
Jackson Froliklong
Rachel VanGelder
Stephanie M. Kelly
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000

*Of Counsel for Amicus Curiae Brady*:

Jonathan Lowy
Kelly Sampson
BRADY
840 First Street, NE, Suite 400
Washington, DC 20002
Tel: (202) 289-7319

DAVIS WRIGHT TREMAINE LLP
*Attorney for Amici Curiae Giffords Law Center to Prevent Gun Violence and Brady*

s/ *Bonnie E. MacNaughton*
Bonnie E. MacNaughton (#36110)
920 Fifth Ave., Suite 3300
Seattle, WA 98104
Tel: (206) 622-3150
Fax: (206) 757-7700
Email: BonnieMacNaughton@dwt.com

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

*s/ Bonnie E. MacNaughton*
Bonnie E. MacNaughton, WSBA #36110

Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Ph:  (206) 622-3150
Fax:  (206) 757-7700
E-mail:  BonnieMacNaughton@dwt.com

*AMICI-CURIAE* GIFFORDS LAW CENTER AND BRADY ISO DEFS.'
CROSS-MOT FOR SUMMARY JUDGMENT AND OPP. TO PLFS.'
MOT FOR SUMMARY JUDGMENT
NO. 3:19-CV-05106-RBL - 13

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax