The Honorable John C. Coughenour

United States District Court
For The Western District Of Washington
At Tacoma

Daniel Mitchell, Robin Ball, and Second Amendment Foundation,

*Plaintiffs*,

v.

Chuck Atkins, in his official capacity as the Sheriff of Clark County, Washington, Craig Meidl, in his official capacity as the Chief of Police of Spokane, Washington, and Teresa Berntsen, in her official capacity as the Director of the Washington State Department of Licensing,

*Defendants*,

and

Safe Schools Safe Communities,

*Defendant-Intervenor.*

No. 3:19-cv-05106-JCC

Motion for Summary Judgment

Noting Date: January 30, 2024

## I. Introduction.

In light of the Court's Order dismissing Counts I and III, this Motion addresses only Count II, the interstate commerce clause violation.

The violation of the interstate commerce clause occurred in this case because the drafters of the initiative (who lacked the resources and exchange of viewpoints that benefit a bill proposed in the Legislature) failed to understand and therefore account for the unique procedures that accompany the sale of firearms. As a result, the challenged statute prohibits the very type of interstate commerce that the constitution protects.

Motion for Summary Judgment - 1
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## II. Argument.

### A. I-1639 Bans Certain Interstate Commerce.

RCW 9.41.124 states that "[r]esidents of a state other than Washington may *purchase* rifles and shotguns, *except those firearms defined as semiautomatic assault rifles*, in Washington …" (emphasis added). This bars not only in-state *sales* and in-state *deliveries*, to non-Washington residents, but also sales where the firearm is transferred by a Washington FFL to an FFL in another state for delivery to a non-Washington resident in his or her home state.

In firearms law, a transaction in which a licensed dealer exchanges a firearm for money can constitute a "purchase" without an accompanying "sale," or can be a "sale" without a "purchase." Because these terms have firearms-specific federal definitions designed to ensure compliance with relevant federal law, and are not governed by general contract law, the new state ban on "purchase" of semiautomatic rifles by non-Washington residents does not have *merely* in-state effect and does not *merely* serve the State's asserted background check interest. It instead directly bans interstate commerce in which the State has no interest and which it has no right to regulate.

Prior to the passage of I-1639, a Georgia resident could give a Washington FFL money to purchase a semi-automatic firearm without entering Washington state. The Washington FFL would transfer the firearm to a Georgia FFL. The Georgia FFL would then comply with Georgia law before delivering the firearm to the Georgia resident, in Georgia. Under these circumstances, the Georgia resident *purchased* the firearm in Washington from the Washington FFL, even though the Washington FFL did not *sell* or *deliver* that firearm according to Washington law. This follows because Washington law defines the terms "sale" and "sell" with respect to firearms in a manner different from the use of those terms in other contexts:

> 'Sale' and 'sell' mean the actual approval of the delivery of a firearm in consideration of payment or promise of payment.

RCW 9.41.010. Federal law bans any licensed dealer from selling handguns to non-residents by forbidding the *sale or delivery* to a person who is not a resident of the state in which the dealer

Motion for Summary Judgment - 2
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

operates. *See* 18 U.S.C. § 922(b)(3).[1] Following that pattern and respectful of the distinction between purchase on the one hand, and sale or delivery on the other, Washington law has no ban on "purchase" of handguns akin to the new interstate ban challenged here. Instead, tracking federal law, an out-of-state resident may purchase a handgun from a Washington FFL. The Washington FFL cannot *deliver* it to the non-Washington resident, nor approve that delivery. 18 U.S.C. § 922(b)(3). Instead, the Washington FFL sends it to a licensed dealer in the purchaser's state of residence, whereupon the dealer will run required background checks and deliver the firearm to the purchaser. Thus, while a Washington FFL takes money in exchange for the firearm, he does not "sell" the firearm as that term is defined under law.

Furthermore, if the non-Washington FFL, in the purchaser's home state, performs the background check and delivers the firearm (after approval) as a professional courtesy to the Washington FFL, without charging the Washington FFL or firearm recipient, this means that neither the Washington FFL nor the out-of-state FFL "sold" the firearm for purposes of Chapter 9.41 RCW. The Washington FFL did not make "actual approval of the delivery" because the out-of-state FFL did. But that local FFL made delivery without payment or promise of payment. Thus, however counterintuitive it may appear, it is possible to have a firearms *purchase* without a firearms *sale*.

Similarly, much of federal and state firearms law regulate *delivery*.[2] Following the structure and format of federal law, other Washington statutes (those drafted and passed by the legislature, instead of through citizen initiative) also regulate "delivery" of firearms. *See, e.g.*, RCW 9.41.080 ("No person may *deliver* a firearm to any person" if the deliverer believes such person is ineligible to receive it); RCW 9.41.090 ("no dealer may *deliver* a pistol to the purchaser thereof until"

---

[1] Read in conjunction with Washington's definition, this means federal law bans both sale, meaning "actual approval of the delivery of a [handgun] in consideration of payment or promise of payment," and delivery performed *without* payment or promise of payment.

[2] Perhaps Congress thought if it regulated only "sales" or "purchases," FFLs could evade the law by giving away firearms. For whatever reason it made this distinction, it matters for understanding the ban.

Motion for Summary Judgment - 3
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

various conditions are met); RCW 9.41.092 ("a licensed dealer may not *deliver* any firearm to a purchaser or transferee until" background check requirements are met) (all emphases added).

Because RCW 9.41.124 bans certain *purchases*, not *sales* or *deliveries*, and because a purchase can take place without a sale, when Washington state barred *purchase* instead of banning *sale* or *delivery*, it banned an out-of-state purchaser from paying a Washington FFL for a firearm to be transferred to an FFL in another state, who in turn delivers the firearm in that other state.

### B. I-1639 Violates The Interstate Commerce Clause.

In reviewing the interstate sales ban, the court begins with the admonition that "[s]tate laws discriminating against interstate commerce on their face are virtually per se invalid." *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 575 (1997) (internal citation omitted). Because RCW 9.41.124 discriminates against interstate commerce by forbidding FFL-to-FFL transfers, it is per se invalid.

As detailed above, RCW 9.41.124 bans FFL-to-FFL transfers because it regulates *purchase* instead of *sale* or *delivery*. In this, it bans interstate commerce in which the State has no legitimate interest. And further, the State cannot justify banning in-person in-state sales of semi-automatic rifles in order to promote its claimed interest in enhanced background checks of purchasers because it addresses a truly non-existent problem. The State proffered no example of a non-resident coming to Washington, purchasing a semi-automatic rifle, and subsequently using it to commit a crime in Washington state or elsewhere. A comparison of the restriction to the harm it proposes to ameliorate is straightforward: because there is no harm to address, any harm produced by the restriction is too great.

The state claims an interest in requiring every in-state purchaser of a semi-automatic rifle to undergo a comprehensive background check, including investigation by the local law enforcement officials of the person's residence. Because some other states do not engage in that kind of background check, Washington asserts it can only satisfy that interest by banning non-resident purchases. But the state's interest in running commercial-sale background checks is to prevent unauthorized persons from purchasing firearms and committing crimes with them. If the

Motion for Summary Judgment - 4
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

state cannot identify a single instance of a non-resident committing a crime with a semi-automatic rifle purchased in Washington, it cannot sustain its burden. Even if it has a legitimate interest in crime prevention, the law will not reduce the relevant crime level because it is currently non-existent. Therefore, the ban on purchases by non-residents cannot survive scrutiny.

### 1. The blanket ban on interstate commerce is unconstitutional.

The dormant Interstate Commerce Clause is not limited to preventing discrimination in the form of economic protectionism. Instead, "State laws discriminating against interstate commerce on their face are virtually per se invalid." *Town of Harrison*, 520 U.S. at 575 (internal citation omitted). As the Supreme Court has instructed:

> [T]he first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce. … As we use the term here, "discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually per se invalid.

*Oregon Waste Systems, Inc. v. Department of Environmental Quality of State of Or.*, 511 U.S. 93, 99 (1994) (internal citations and alterations omitted). Furthermore, this kind of discrimination is forbidden. "Economic protectionism is not limited to attempts to convey advantages on local merchants; it may include attempts to give local consumers an advantage over consumers in other States." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 580 (1986). This ban plainly satisfies the test. Following long-established Supreme Court jurisprudence, it does not matter whether the state describes the ban as imposing harmful burdens on its own citizens (the in-state FFLs who can no longer make profitable sales). Obviously, by limiting the ability of in-state FFLs to sell semi-automatic rifles to residents of other states, the ban can just as easily be described as "benefitting" the "economic interest" of in-state purchasers. Reducing out-of-state demand benefits the economic actors who are in-state purchasers, at the expense of the in-state sellers and out-of-state purchasers. By banning interstate commerce, the state has engaged in economic Balkanization that is forbidden by the interstate commerce clause, just as it forbade the law in *Brown-Forman* or the law challenged in *Town of Harrison*. In *Town of Harrison*, the law taxed

Motion for Summary Judgment - 5
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

in-state businesses more heavily if they catered to out-of-state residents, harming in-state businesses and benefitting in-state consumers. The Supreme Court struck down the law. "By encouraging economic isolationism, prohibitions on out-of-state access to in-state resources serve the very evil that the dormant Commerce Clause was designed to prevent." *Town of Harrison*, 520 U.S. at 578.

This ban is not the kind of neutral law upheld in, for example, *General Motors v. Tracy*, 519 U.S. 278 (1997). There, the Court allowed the challenged regulation because the statute was facially non-discriminatory: "The State of Ohio imposes its general sales and use taxes on natural gas purchases from all sellers, whether in-state or out-of-state, except regulated public utilities that meet Ohio's statutory definition of a 'natural gas company.'" *GM v. Tracy*, 519 U.S. at 281-282. By contrast, in *City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978), the Supreme Court struck down a New Jersey law forbidding the importation of solid or liquid waste originating outside New Jersey, despite the asserted environmental protection justification. Thus, it is *protectionism of any kind* that is *per se* unconstitutional, not just economic protectionism. Just as the desire to protect New Jersey residents from environmental degradation could not save a statute that discriminated against out-of-state sales, RCW 9.41.124 cannot be saved by claiming that it is protecting the health and safety of Washington residents (without favoring them economically).

The interstate sales ban cannot survive scrutiny under this longstanding rule. "A state is without power to prevent privately owned articles of trade from being shipped and sold in interstate commerce on the ground that they are required to satisfy local demands or because they are needed by the people of the state." *Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1, 10 (1928). The State has enacted a ban on "privately owned articles of trade from being shipped and sold in interstate commerce," a ban the state lacks the power to create. *See also New England Power Co. v. New Hampshire*, 455 U.S. 331, 338 (1982) ("Our cases consistently have held that the Commerce Clause of the Constitution, Art. I, § 8, cl. 3, precludes a state from mandating that its residents be given a preferred right of access, over out-of-state consumers, to natural resources located within its borders or to the products derived therefrom"). Because "[a] discriminatory law is virtually *per se*

Motion for Summary Judgment - 6
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

invalid … [it] will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives …" *Department of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008). "In all but the narrowest circumstances, state laws violate the Dormant Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. … State laws that directly discriminate against out-of-state entities can survive only if the state demonstrates both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means." *Nationwide Biweekly Administration, Inc. v. Owen*, 873 F.3d 716, 736 (9th Cir. 2017) (internal citations and alterations omitted)

### 2. The *Pike* test, even if it applied, could not be satisfied.

As shown above, the complete ban on FFL to FFL transfers means that the ban is unconstitutional. Even if the law were assumed to function in a way other than the one that the law specifies, so that it would permit FFL-to-FFL transfers but only banned in-person in-state sales to non-residents, the ban fails scrutiny under the balancing test of *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)

The state's asserted interest in promoting background checks through the mechanism of banning in-person purchases by visitors to the state (including active duty military personnel who are not Washington residents) does not satisfy any balancing test found in interstate commerce clause jurisprudence. Because the state pointed to no existing problem of crime that could possibly be solved by banning in-state non-residents from purchasing semi-automatic rifles, its purported interest is too weak to survive being balanced against the limits on commerce it has created.

In support of this supposed lesser ban, the State proffered its interest in all purchasers facing the new comprehensive background checks, which include investigation by local law enforcement from the jurisdiction where the purchaser lives. Even if the State's asserted interest were valid, the statute fails scrutiny. The State's legitimate interest in public safety does not allow it to impede interstate commerce to "solve" a non-existent problem. The State proffered no evidence that any non-resident, after purchasing a semiautomatic rifle in Washington,

Motion for Summary Judgment - 7
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

subsequently used that firearm in Washington in a crime of violence. Thus, the State's asserted interest in background checks is a pure *post hoc* rationalization. With no imaginable connection between the background checks and increased public safety, the State's interest is non-existent.

### III. Conclusion.

By imposing a complete ban on the sale of the banned firearms to non-resident purchasers, RCW 9.41.124 violates the constitutional protection of interstate commerce. This portion of the Initiative must be struck down.

///

I certify that the foregoing brief contains 2,413 words, in accordance with the Local Rule and this Court's Order on briefing this matter.

///

November 14, 2023.

Ard Law Group PLLC

By: _____
Joel B. Ard, WSBA # 40104
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243
Attorneys for Plaintiffs

Albrecht Law PLLC

By: _____
Matthew C. Albrecht, WSBA #36801
David K. DeWolf, WSBA #10875
421 W. Riverside Ave., Ste. 614
Spokane, WA 99201
(509) 495-1246
Attorneys for Plaintiffs

Motion for Summary Judgment - 8
No. 3:19-cv-05106-JCC

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243