1

The Honorable John C. Coughenour

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

7

8

DANIEL MITCHELL, et al.,

NO. 3:19-cv-05106-JCC

9

Plaintiffs,

10

v.

DEFENDANTS' AND
INTERVENOR-DEFENDANT'S
RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND
CROSS-MOTION FOR SUMMARY
JUDGMENT

11

CHUCK ATKINS, et al.,

12

Defendants,

13

SAFE SCHOOLS SAFE COMMUNITIES,

NOTE ON MOTION CALENDAR:
January 30, 2024

14

Intervenor-Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

<u>**Cases**</u>

2

*Brown-Forman Distillers Corp. v. New York State Liquor Authority*,
    476 U.S. 573 (1986) ............................................................................................... 16, 17

3

4

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*,
    511 U.S. 383 (1994) ..................................................................................................... 13

5

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
    520 U.S. 564, 576–77 (1997) ..................................................................................... 15

6

7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................................... 8

8

*City of New York v. U.S. Dep't of Def.*,
    913 F.3d 423 (4th Cir. 2019) ....................................................................................... 5

9

10

*City of Philadelphia v. New Jersey*,
    437 U.S. 617 (1978) ............................................................................................... 13, 15

11

*Cohen v. R.I. Tpk. & Bridge Auth.*,
    775 F. Supp. 2d 439 (D.R.I. 2011) .......................................................................... 14

12

13

*Conservation Force, Inc. v. Manning*,
    301 F.3d 985 (9th Cir. 2002) ..................................................................................... 12

14

*Gen. Motors Corp. v. Tracy*,
    519 U.S. 278 (1997) ..................................................................................................... 14

15

16

*Hirst v. Skywest*,
    910 F.3d 961 (7th Cir. 2018) ..................................................................................... 24

17

*Horsley v. Trame*,
    808 F.3d 1126 (7th Cir. 2015) ..................................................................................... 2

18

19

*Int'l Franchise Ass'n, Inc. v. City of Seattle* (*Int'l Franchise Ass'n*),
    803 F.3d 389 (9th Cir. 2015) ............................................................................... 11, 13

20

*Kovaco v. Rockbestos-Surprenant Cable Corp.*,
    834 F.3d 128 (2d Cir. 2016) ....................................................................................... 10

21

22

*Maine v. Taylor*, 477 U.S. 131 (1986) ............................................................................... 12, 21

23

*Mance v. Sessions*,
    896 F.3d 699 (5th Cir. 2018) (per curiam) ...................................................... 6, 19, 20, 21

24

*Mitchell v. Atkins*,
    483 F. Supp. 3d 985 (W.D. Wash. 2020), *vacated and remanded on other grounds*,
    No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022).......................................... passim

25

26

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
  567 F.3d 521 (9th Cir. 2009) ................................................................................. 17

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
  682 F.3d 1144 (9th Cir. 2012) ......................................................................... 12, 17

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023).................................................................................... passim

*Nat'l Rifle Ass'n of Am., Inc. v. Bur. of Alcohol, Tobacco, Firearms & Explosives*
  (*NRA*), 700 F.3d 185 (5th Cir. 2012) ......................................................................... 2

*Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
  472 U.S. 159 (1985).............................................................................................. 22

*New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982) .......................................... 15

*New York State Rifle and Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022).................................................................................. 7, 8, 9

*Norfolk S. Corp. v. Oberly*,
  632 F. Supp. 1225 (D. Del. 1986),
  *aff'd*, 822 F.2d 388 (3d Cir. 1987)........................................................................ 24

*Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*,
  511 U.S. 93 (1994)................................................................................................ 20

*Penn Advert. of Baltimore, Inc. v. Mayor & City Council of Baltimore*,
  63 F.3d 1318 (4th Cir. 1995),
  *cert. granted, judgment vacated on other grounds sub nom.*
  *Penn Advert. of Baltimore, Inc. v. Schmoke*,
  518 U.S. 1030 (1996), and *adopted as modified*,
  101 F.3d 332 (4th Cir. 1996) ................................................................................. 2

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)..................................................................................... 12, 19

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) ............................................................................... 2

*Raymond Motor Transp., Inc. v. Rice*,
  434 U.S. 429 (1978)............................................................................................ 12

*Rocky Mountain Farmers Union v. Corey*,
  730 F.3d 1070 (9th Cir. 2013) ..................................................................... 13, 17

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)............................................................................................. 9

*Tenn. Wine & Spirit Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019).................................. 11

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*Thomas v. Anchorage Equal Rts. Comm'n*,
 220 F.3d 1134 (9th Cir. 2000) ................................................................. 10

*Town of Southold v. Town of E. Hampton*,
 477 F.3d 38 (2d Cir. 2007) ...................................................................... 14

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
 550 U.S. 330 (2007) ................................................................................. 12

*United States v. Cabaccang*,
 226 F. App'x 750 (9th Cir. 2007) .............................................................. 9

*United States v. Morrison*,
 529 U.S. 598 (2000) ................................................................................. 19

*United States v. Redus*,
 469 F.2d 185 (9th Cir. 1972) ..................................................................... 6

*United States v. Salerno*,
 481 U.S. 739 (1987) ................................................................................. 19

*United States v. Viltrakis*,
 108 F.3d 1159 (9th Cir. 1997) ................................................................. 10

*White v. Mass. Council of Const. Employers, Inc.*,
 460 U.S. 204 (1983) ................................................................................. 23

## Constitutional Provisions

U.S. Const. art. 1, § 8, cl. 3 ...................................................................... 11

## Rules

Fed. R. Civ. P. 56(c) .................................................................................. 8

## Regulations

27 C.F.R. § 478.99 ............................................................................... 22, 24

27 C.F.R. § 478.99(a) ................................................................................. 6

28 C.F.R. § 25.1 ......................................................................................... 5

28 C.F.R. § 25.2 ......................................................................................... 5

28 C.F.R. § 25.6(d) ..................................................................................... 5

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

**Statutes**

2    18 U.S.C. § 922 ................................................................................................... 4

3    18 U.S.C. § 922(a)(1)–(5) ................................................................................... 6

4    18 U.S.C. § 922(a)(1)(A) .................................................................................... 6

5    18 U.S.C. § 922(a)(3) ....................................................................................... 20

6    18 U.S.C. § 922(a)(5)(A) .................................................................................... 6

7    18 U.S.C. § 922(b) ............................................................................................. 6

8    18 U.S.C. § 922(b)(3) ................................................................................. passim

9    18 U.S.C. § 922(s) ............................................................................................. 4

10    18 U.S.C. § 922(t) ............................................................................................. 5

11    1970 Wash. Sess. Laws, ch. 74, § 2 .............................................................. 6, 23

12    Act of Feb. 16, 1909, ch. 51,
13      1909 W. Va. Acts 394 ................................................................................ 22

   Act of May 2, 1910, ch. 591,
14      1910 R.I. Acts 156 ..................................................................................... 22

15    Act of Aug. 12, 1910, No. 432,
16      1910 Ga. Laws 134 .................................................................................... 22

   Act of Feb. 26, 1913, ch. 256,
17      1913 Or. Laws 497 .................................................................................... 22

18    Act of May 21, 1913, ch. 608,
19      1913 N.Y. Laws 1627 ................................................................................ 22

   Act of Feb. 20, 1918, ch. 2,
20      1918 Mont. Laws 6 .................................................................................... 22

21    Act of Mar. 3, 1919, ch. 74,
22      1919 Mont. Acts 147 ................................................................................. 22

   Act of Mar. 10, 1919, ch. 197,
23      1919 N.C. Laws 397 .................................................................................. 22

24    Act of July 11, 1919,
25      1919 Ill. Laws 431 ..................................................................................... 22

   Act of Apr. 7, 1921,
26      1921 Mo. Laws 692 ................................................................................... 22

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Act of May 29, 1922, ch. 485,
  1922 Mass. Acts 560 ............................................................................................. 22

Act of Mar. 19, 1923,
  1923 Ark. Acts 379 ............................................................................................... 22

Act of Mar. 11, 1924, ch. 137,
  1924 N.J. Acts 305 ............................................................................................... 22

Act of June 2, 1927, ch. 372,
  1927 Mich. Acts 887 ............................................................................................ 22

Act of Feb. 21, 1935, ch. 63,
  1935 Ind. Laws 159 .............................................................................................. 22

Act of Feb. 25, 1939, ch. 14,
  1939 Me. Acts 53 ................................................................................................. 22

Act of Mar. 2, 1937, No. 190,
  1937 Ala. Laws 223 ............................................................................................. 22

Firearm Owners Protection Act (FOPA),
  Pub. L. No. 99-308, 100 Stat. 449 (1986) .......................................................... 23

Wash. Rev. Code § 9.41.090(1) ................................................................................ 5

Wash. Rev. Code § 9.41.090(2)(b) ............................................................................ 4

Wash. Rev. Code § 9.41.124 ...................................................................................... 6

## Other Authorities

131 Cong. Rec. S9149–50
  (daily ed. July 9, 1985) ....................................................................................... 23

Brady United, *Gun Violence by the Numbers*,
  https://www.bradyunited.org/key-statistics (last visited Dec. 11, 2023) ............... 2

CDC, *Firearms Fast Facts*,
  https://www.cdc.gov/violenceprevention/firearms/fastfact.html
  (last visited Dec. 8, 2023) ...................................................................................... 2

*Double Mass Shootings Over Weekend Set Grim U.S. Record*,
  Washington Post, B. Berkowitz (Dec. 4, 2023),
  https://www.washingtonpost.com/nation/2023/12/04/mass-shootings-record-year/ ............. 2

H.R. Rep. No. 90-1577 (1968),
  *reprinted in* 1968 U.S.C.C.A.N. 4410 ................................................................. 22

HB 1134, Laws of 2023 ..................................................................................... 5, 17

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

John Gramlich, *What the data says about gun deaths in the U.S.*, Pew Research,
    https://www.pewresearch.org/short-reads/2023/04/26/what-the-data-says-about-gun-
    deaths-in-the-u-s/ (last visited, Dec. 11, 2023) ................................................................... 2

*Maker of gun use d in Uvalde shooting, Daniel Defense, accused of targeting 'at-risk'
    young men*, Aimee Picchi, CBS News (July 20, 2022),
    https://www.cbsnews.com/news/daniel-defense-uvalde-ar-15-lawsuit-post-malone-
    pewpew/ ............................................................................................................................ 3

S. Rep. No. 90-1097 (1968),
    *reprinted in* 1968 U.S.C.C.A.N. 2112 ............................................................................. 23

S. Rep. No. 90-1501 (1968) ................................................................................................ 22

S. Rep. No. 98-583 (1984) .................................................................................................. 23

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

# I.      INTRODUCTION

Plaintiffs have voluntarily dismissed most of their claims, only their dormant Commerce Clause claim remains. This Court has already correctly dismissed that claim once (in an order that was appealed but never reviewed by the Ninth Circuit prior to remand), and it should do so again.

Washington State Initiative Measure 1639 (I-1639) made the common sense decision to require enhanced background checks for sales of the type of firearm most used in mass shootings: semiautomatic assault rifles (SARs). Because enhanced background checks cannot be done on nonresidents of Washington, I-1639 requires firearm dealers in this state to use the same process when selling a SAR that they use when selling a handgun to a nonresident: make the sale and then ship the firearm to a federal firearms licensee (FFL) of the purchaser's choosing in their home state. This straightforward and familiar process does not burden interstate commerce and, moreover, Plaintiffs have not been able to show that doing it for SARs in addition to handguns has impacted their sales. Plaintiffs' unusual argument that there is a constitutionally significant difference between sales and purchases and thus the FFL to FFL transfer process for handguns is forbidden for SARs lacks merit and has never been accepted by any government agency that regulates FFLs. For these reasons, Plaintiffs fail to state a claim upon which relief can be granted under the dormant Commerce Clause and they lack standing.

Aside from that, Judge Ronald Leighton (Ret.) already rejected Plaintiffs' arguments and held that I-1639 does not violate the dormant Commerce Clause because it is nondiscriminatory and the enhanced background checks are a local benefit that "far outweighs any alleged burden." *Mitchell v. Atkins*, 483 F. Supp. 3d 985, 999 (W.D. Wash. 2020), *vacated and remanded on other grounds*, No. 20-35827, 2022 WL 17420766 (9th Cir. Dec. 2, 2022). This Court should adopt Judge Leighton's reasoning and grant summary judgment to Defendants and Intervenor-Defendants (collectively, "Defendants").

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

## II.    BACKGROUND

### A.    I-1639 Was Designed to Reduce Gun Violence and Increase Public Safety by Extending Federal and State Laws that Apply to Handguns to SARs

"Firearm injuries are a serious public health problem." CDC, *Firearms Fast Facts*, https://www.cdc.gov/violenceprevention/firearms/fastfact.html (last visited Dec. 8, 2023). Every year, approximately 117,000 people in America are shot and over 42,000 die as a result of gun violence, which equates to 117 deaths caused by firearms every day.[1] And the problem is getting worse. In 2021, "[m]ore Americans died of gun-related injuries . . . than in any other year on record." John Gramlich, *What the data says about gun deaths in the U.S.*, Pew Research, https://www.pewresearch.org/short-reads/2023/04/26/what-the-data-says-about-gun-deaths-in-the-u-s/ (last visited, Dec. 11, 2023). And, this year, the United States set a new record for mass shootings: at least 38 to date, "the highest number of mass killings in any year since at least 2006." *Double Mass Shootings Over Weekend Set Grim U.S. Record*, Washington Post, B. Berkowitz (Dec. 4, 2023), https://www.washingtonpost.com/nation/2023/12/04/mass-shootings-record-year/. That 38th mass shooting occurred in Washington just last week, when a family of five, including a toddler, were shot and killed in Clark County. *Id.* Gun violence is so prevalent that firearm injuries are now "the leading cause of death among children and teens." CDC, s*upra.*

Mass shootings—with many committed assailants using SARs—wreak particular havoc on communities. Dkt. # 94-1 at p. 2 (I-1639 § 1); Dkt. # 94-1 at 64–69 (Mass Killings

---

[1] Brady United, *Gun Violence by the Numbers*, https://www.bradyunited.org/key-statistics (last visited Dec. 11, 2023). The articles, government reports, scholarly literature and related materials cited herein constitute "legislative facts" supporting Washington voters' decision to adopt I-1639. *See, e.g.*, *Prete v. Bradbury*, 438 F.3d 949, 969 (9th Cir. 2006) (citing *Ecumenical Ministries v. State Lottery Comm'n*, 871 F.P.2d 106, 111 n.8 (Or. 1994) for the proposition that "[i]n considering the history of a constitutional provision adopted through the initiative process, [courts] examine[], as legislative facts, other sources of information that were available to the voters at the time the measure was adopted and that disclose the public's understanding of the measure . . . .); *see also Nat'l Rifle Ass'n of Am., Inc. v. Bur. of Alcohol, Tobacco, Firearms & Explosives (NRA)*, 700 F.3d 185, 207–11 (5th Cir. 2012) (relying on legislative facts in upholding firearm restriction); *Horsley v. Trame*, 808 F.3d 1126, 1133–34 (7th Cir. 2015) (same); *see generally Penn Advert. of Baltimore, Inc. v. Mayor & City Council of Baltimore*, 63 F.3d 1318, 1323 (4th Cir. 1995), *cert. granted, judgment vacated on other grounds sub nom. Penn Advert. of Baltimore, Inc. v. Schmoke*, 518 U.S. 1030 (1996), and *adopted as modified*, 101 F.3d 332 (4th Cir. 1996) (government may defend law "by pointing to legislative facts, studies, history, or common sense").

DEFENDANTS' S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT NO. 3:19-cv-05106-JCC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  Table). In 2016, a shooter sat in his car in Mukilteo, Washington, to study the owner's manual

2  for a newly purchased AR-15-style SAR before entering a party, opening fire, and killing

3  multiple people. Dkt. # 90 ¶¶ 4, 17; Dkt. # 94-1 at pp. 71–75. Likewise, the 2016 shooter in

4  Burlington, Washington, used a Ruger 10/22 SAR to kill five people at a Macy's. Dkt. # 94-1 at

5  pp. 64–69; Dkt. # 94-1 at pp. 77–83. The same is true for some of our nation's most horrific

6  mass shootings, such as Sandy Hook (26 killed; shooter used a SAR), Parkland (17 killed;

7  shooter used a SAR), and, more recently, Uvalde (21 killed; shooter used SARs). Dkt. # 94-1 at

8  pp. 90–137; Dkt.# p. 93 ¶ 4; Dkt. # 94-1 at pp. 139–59; *Maker of gun used in Uvalde shooting,*

9  *Daniel Defense, accused of targeting 'at-risk' young men*, Aimee Picchi, CBS News

10  (July 20, 2022), https://www.cbsnews.com/news/daniel-defense-uvalde-ar-15-lawsuit-post-

11  malone-pewpew/.

12        Mass shooters often favor SARs and other high-capacity firearms. *See* Dkt. # 92 at pp.

13  8–9; Dkt. # 94-1 at pp. 161–69. As explained by Defendants' law enforcement expert Mark

14  Jones—a former special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives—

15  "mass shootings . . . are demonstrably more lethal when the assailant uses a [SAR] than when

16  other firearms are used." Dkt. # 89 at pp. 15–16. In each of the five deadliest mass shootings in

17  the United States between 2009 and 2018, the assailant used a SAR. *Id.* It is no mystery why: in

18  general, SARs are easy to use and fire more rapidly than handguns and non-semiautomatic

19  firearms (and often at approximately four times the muzzle velocity). *Id.*; Dkt. # 94-1 at p. 185;

20  Dkt. 94-2 at pp. 10 (59:17–25), 17 (132:14–25), 18–19 (133:23–134:15); Dkt. # 94-1 at p. 39.

21  Anyone can quickly shoot a fusillade of bullets, maximizing lethality. Dkt. # 89 at p. 16.

22        In 2018, Washington voters decided "[e]nough is enough" when it comes to the problem

23  of gun violence. Dkt. # 94-1 at p. 3 (I-1639 § 1).The people of Washington adopted I-1639,

24  with over 59% of voters supporting the measure, to "increase public safety and reduce gun

25  violence." *Id.*; Dkt. # 94-2 at p. 47. Given the prominent use of SARs in mass shootings, I-1639

26  is primarily directed at regulating that type of firearm. The Initiative defines a SAR as "any rifle

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case

2  and chamber the next round, and which requires a separate pull of the trigger to fire each

3  cartridge."[2] I-1639's "common sense" approach was to "require[] the same standards for

4  purchasing semi-automatic assault rifles that are already required for handguns."[3] Dkt. # 94-2

5  at p. 84. The Initiative does so in three respects by (1) extending longstanding federal and state

6  restrictions on the sale and possession of handguns to persons under 21 to SARs (the Age

7  Provision), (2) by requiring local law enforcement agencies to conduct the same enhanced

8  background checks on prospective purchasers of SARs that they have long performed for pistols,

9  Wash. Rev. Code § 9.41.090(2)(b), (the Background Check Provision), and (3) prohibiting in-

10  person handgun sales to nonresidents of the State as has long been required for pistols under

11  federal law (the Nonresident Sales Provision).

12        Specifically regarding background checks, I-1639's background check provision requires

13  local law enforcement agencies to conduct the same enhanced background checks on prospective

14  purchasers of SARs that they long have performed for pistols. Wash. Rev. Code § 9.41.090(2)(b).

15        Basic background check requirements apply to most firearm sales. Federal law requires

16  FFLs to conduct background checks on potential firearm purchasers. 18 U.S.C. § 922(s). It also

17  requires the FBI to maintain the National Instant Criminal Background Check System (NICS),

18  a centralized catalog of records comprising three separate national databases. 18 U.S.C. § 922.

19  States' participation in NICS is voluntary, and the quantity and quality of records shared with

20  NICS varies widely across states. Dkt. # 87 at p. 4 ¶ 8; Dkt. # 86 at p. 4–5 ¶ 6; Dkt. # 95 at p. 4–

21

22      [2] A SAR "does not include antique firearms, any firearm that has been made permanently inoperable, or any firearm that is manually operated by bolt, pump, lever, or slide action." *Id.* at 27–28 (codified at Wash. Rev. Code § 9.41.010(27)). The definition focuses on the semiautomatic action of the rifle rather than a military

23  features test or a list of firearm models. Gun manufacturers regularly and routinely work to design new firearms that "comply with the law [regulating features] while still offering consumers a similar product with all the same

24  accessories." Dkt. # 94-1 at pp. 49–74.
    [3] Although not challenged here, I-1639 also requires firearms safety training and a waiting period prior to

25  purchasing a SAR, Dkt. # 94-1 at p. 10 (I-1639 § 4, codified at Wash. Rev. Code § 9.41.092), and provides criminal penalties if a firearm is stored unsafely and is obtained by a person who cannot legally possess it, *id.* at 11 (I-1639

26  § 5, codified at Wash. Rev. Code § 9.41.360).

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

5 ¶ 6; *see also City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 427 (4th Cir. 2019) ("states are not required to perform any functions associated with the Brady Act[]"). By one count, "at least 25% of felony convictions" in the United States "are not available" in NICS. Dkt. # 87 at p. 4 ¶ 8.

By default, an FFL will contact the FBI's NICS Section when performing a potential firearm transaction. 18 U.S.C. § 922(t). States may also designate a law enforcement agency "point of contact" to initiate the NICS check and to search any other state and local databases required under state law. *See* 28 C.F.R. §§ 25.1–.2, 25.6(d)*; see also* Dkt. # 94-3 at p. 2; Dkt. # 87 at p. 4–5 ¶ 10.

As of the date of filing this brief, Washington is a "partial" point-of-contact state.[4] Dkt. # 87 at p. 5 ¶ 11. Before I-1639, FFLs contacted the FBI for NICS checks on sales of all firearms except pistols. *See* Wash. Rev. Code § 9.41.090(1); Dkt. # 87 at p. 3. For pistols, Washington law enforcement agencies conduct "enhanced background checks." In such a check, law enforcement queries not only the NICS databases to determine a purchaser's eligibility, but also various state and local databases, including: (1) the Washington Crime Information Center (which may disclose state arrest warrants not in the NICS databases); (2) the DOL Firearms System (which reflects whether the purchaser has a concealed pistol license and whether it has been revoked); (3) Washington court databases; (4) the Washington Department of Corrections database; (5) local records management systems; and (6) the Washington Health Care Authority's mental health records. Dkt. # 87 at p. 5–6 ¶¶ 14–17. It is undisputed that the enhanced background check is more comprehensive than a NICS check alone. *See, e.g.*, Dkt. # 94-2 at p. 107–108 (Mitchell Dep. 119:18–120:16); Dkt. # 94-3 at p. 16–17 (107:25–108:3); Dkt. # 86 at p. 4–5 ¶¶ 6–7; Dkt. # 87 at p. 6–8 ¶¶ 15–18; Dkt. # 95 at p. 4–5 ¶¶ 6–7. This helps prevent ineligible purchasers from falling through the cracks due to gaps in the NCIS data. I-1639 now

---

[4] On January 1, 2024, the provisions of HB 1134, Laws of 2023, will go into effect which will require all firearm purchases to undergo an enhanced background check making Washington a "full point of contact state."

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  requires local law enforcement to conduct enhanced background checks for SARs as well. Dkt. #

2  94-1 at p. 4–10 (I-1639 § 3) (codified at Wash. Rev. Code § 9.41.090(2)).

3      Regarding the prohibition on nonresident sales, federal law has long prohibited in-

4  person handgun sales to nonresidents of a state. I-1639 mirrors that requirement for SARs.

5  Under the Gun Control Act of 1968 (GCA), it is unlawful for anyone to sell a handgun in person

6  to a nonresident. 18 U.S.C. § 922(a)(5)(A), (b)(3). All interstate transfers of firearms must take

7  place through an FFL, *id.* § 922(a)(1)–(5), and only FFLs may "engage in the business of . . .

8  dealing in firearms" (interstate or otherwise), *id.* § 922(a)(1)(A); *see United States v. Redus*, 469

9  F.2d 185, 187 (9th Cir. 1972). To buy a handgun from an out-of-state FFL, a nonresident may

10  arrange for its delivery to an in-state FFL, from whom the buyer may retrieve the gun. 18 U.S.C.

11  § 922(b). *See also* 27 C.F.R. § 478.99(a); *Mance v. Sessions*, 896 F.3d 699, 709 (5th Cir. 2018)

12  (per curiam); Dkt. # 94-3 at p. 29; Dkt. # 94-4 at p. 153. This process is known as an "FFL-to-

13  FFL transfer." To purchase a rifle or shotgun from an out-of-state FFL, the buyer may do so in

14  person—provided that the sale "compl[ies] with the legal conditions of sale in both such States."

15  *Id.* § 922(b)(3).

16      Shortly after the GCA's enactment, Washington legalized the in-person sale of rifles and

17  shotguns to nonresidents. 1970 Wash. Sess. Laws, ch. 74, § 2 (originally codified at Wash. Rev.

18  Code § 19.70.020, codified as amended at Wash. Rev. Code § 9.41.124). Later, in I-1639,

19  Washington narrowed the scope of that permission by removing SARs from the category of

20  "rifles and shotguns" that legally may be purchased in person by nonresidents. Wash. Rev.

21  Code § 9.41.124. The effect of this provision is that SARs are treated the same as handguns: they

22  may not be purchased by nonresidents in person. But just as for handguns—and contrary to

23  Plaintiffs' claims—a nonresident may still purchase a SAR through an FFL-to-FFL transfer. Dkt. #

24  94-3 at p. 38.

25      The Nonresident Sales Provision is a logical corollary to the background check provision.

26  Because enhanced background checks query an array of state and local databases, it is difficult if

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  not impossible for law enforcement agencies to effectively conduct such checks on nonresidents.

2  Dkt. # 87 at p. 6–8 ¶¶ 17–18; Dkt. # 86 at p. 5–7 ¶¶ 8–9; Dkt. # 95 at p. 5–6 ¶ 8.

3  **B.      Judge Leighton (Ret.) Grants Summary Judgment to Defendants**

4          Plaintiffs initially filed this lawsuit on February 8, 2019. Dkt. # 1. They challenged the

5  Age Provision as violating the Second Amendment and the Nonresident Sales Provision as

6  violating the dormant Commerce Clause. *Id.* At the time, the Plaintiffs consisted of two firearms

7  dealers (Daniel Mitchell and Robin Ball), four individuals under twenty-one (Luke Rettmer,

8  Armen Tooloee, Nathaniel Casey, and Matthew Wald), and two firearms organizations (the

9  Second Amendment Foundation and the National Rifle Association). *Id.*

10          This case was previously litigated before Judge Ronald Leighton (Ret.). Following cross-

11  motions for summary judgment, Judge Leighton ruled on August 31, 2020 that the challenged

12  provisions of I-1639 were constitutional. Dkt. # 124. Specifically, Judge Leighton held that the

13  Age-Provision comported with the Second Amendment under the test used at the time. *Id.* Judge

14  Leighton also ruled that the Nonresident Sales Provision was constitutional and did not violate

15  the dormant Commerce Clause. Specifically, he held that the provision "neither benefits in-state

16  economic interests nor burdens out-of-state economic interests" and that rather than establishing

17  any kind of discrimination, the provision connotes a burden to Washington's economic interests.

18  *Id.* at 17. Thus, applying the *Pike* balancing test, he held that "enhanced background checks are

19  more comprehensive than a NICS check alone" and the enhanced background checks cannot be

20  conducted on nonresidents, making the Nonresident Sales Provision necessary. *Id.* at 19. Or put

21  another way, the Nonresident Sales Provision "advances a bona fide state interest in public safety

22  that far outweighs any perceived burden on interstate commerce." *Id.* at 18.

23  **C.      The Ninth Circuit Remands for the Sole Purpose of Addressing *Bruen***

24          Plaintiffs appealed Judge Leighton's Order to the Ninth Circuit and the parties completed

25  briefing. But, before the Ninth Circuit ruled, the Supreme Court issued *New York State Rifle and*

26  *Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which significantly altered the

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

framework for adjudicating Second Amendment claims. Following *Bruen*, Defendants moved unopposed to vacate and remand the case to district court to compile the historical record required by the new framework set forth in *Bruen*. Dkt. # 61. The Ninth Circuit granted that motion and remanded for further proceedings consistent with the United States Supreme Court's decision in [*Bruen*]." *Id.*; Dkt. # 62.

**D.     Several Plaintiffs Dismiss Themselves; Plaintiffs also Dismiss their Second Amendment and § 1983 Claims**

Since the lawsuit was filed in 2019, the individual Plaintiffs under twenty-one have reached the age of 21, and all four of those individuals have been granted motions to dismiss themselves as Plaintiffs. Dkt. # 75 (granting dismissal of Tooloee); Dkt. # 149 (granting dismissal of Rettmer, Casey, and Wald). Plaintiffs also dismissed their Second Amendment challenge to the Age Provision as well as the NRA as a Defendant. Dkt. # 149.

The only remaining claim is the dormant Commerce Clause claim. The only remaining plaintiffs are the Dealer Plaintiffs (Mitchell and Ball) and the Second Amendment Foundation.

### III.     ARGUMENT

**A.     Standard of Review**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the opposing party must then set forth specific facts showing a genuine issue for trial in order to defeat the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). If the nonmoving party fails to make this showing, "Rule 56(c) mandates the entry of summary judgment[.]" *Id.* at 322.

**B.     This Court Should Adopt Judge Leighton's Earlier Ruling Dismissing Plaintiffs' Dormant Commerce Clause Claim**

Summary judgment should be granted in favor of Defendants first and foremost because Judge Leighton already rejected Plaintiffs' arguments and dismissed their dormant Commerce

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    Clause claim on summary judgment. *Mitchell*, 483 F. Supp. 3d at 999. Without any

2    acknowledgement of this prior ruling, Plaintiffs repeat the same previously rejected arguments.

3    *Compare* Dkt. # 76, *with* Dkt. # 150 at p. 20–22. Plaintiffs also fail to acknowledge the Ninth

4    Circuit's remand order or make any effort to explain how the remand entitles them to relitigate

5    their dormant Commerce Clause claim. It does not. The scope of the Ninth Circuit's remand was

6    limited to a single purpose: addressing *Bruen*. Dkt. # 62 ("[T]he case is remanded for further

7    proceedings consistent with the United States Supreme Court's decision in . . . *Bruen*."). And

8    while *Bruen* significantly altered the framework for adjudicating claims under the *Second*

9    *Amendment*, the decision had no bearing on the *dormant Commerce Clause*, which was not at

10   issue in *Bruen* and is not even mentioned in the decision. Indeed, Plaintiffs do not even attempt

11   to tie their dormant Commerce Clause arguments to *Bruen*—which is not mentioned once in

12   their Motion. Given that *Bruen*—the sole reason for remand—is silent on the dormant

13   Commerce Clause, Plaintiffs' attempt to relitigate that claim is improper and should not be

14   countenanced. *See United States v. Cabaccang*, 226 F. App'x 750, 751 (9th Cir. 2007) ("[W]e

15   have repeatedly held . . . that a district court is limited by this court's remand in situations where

16   the scope of the remand is clear."). Instead, this Court should adopt Judge Leighton's earlier

17   ruling dismissing Plaintiffs' dormant Commerce Clause claim and granting summary judgment

18   in favor of Defendants.

19   **C.      Plaintiffs Dormant Commerce Clause Claim Should Be Dismissed**

20          Even if Plaintiffs' dormant Commerce Clause claim had not already been adjudicated,

21   summary judgment for Defendants would still be warranted because the Plaintiffs lack standing

22   and the Nonresident Sales Provision does not violate the dormant Commerce Clause for multiple

23   reasons.

24          **1.      Plaintiffs' lack standing**

25          Plaintiffs bear the burden of establishing Article III standing. *Spokeo, Inc. v. Robins*, 578

26   U.S. 330, 338 (2016). Because standing is jurisdictional, it can be raised at any time. *United*

DEFENDANTS' S RESPONSE TO                                    9           ATTORNEY GENERAL OF WASHINGTON
PLAINTIFFS' MOTION FOR SUMMARY                                              Complex Litigation Division
JUDGMENT AND CROSS-MOTION FOR                                                7141 Cleanwater Dr. SW
                                                                                  P.O. Box 40111
SUMMARY JUDGMENT                                                             Olympia, WA 98504-0111
NO. 3:19-cv-05106-JCC                                                            (360) 709-6470

1    *States v. Viltrakis*, 108 F.3d 1159, 1160 (9th Cir. 1997). In assuring that a plaintiff has standing

2    or that an issue is ripe, courts "consider whether the plaintiffs face a realistic danger of sustaining

3    a direct injury as a result of the statute's operation or enforcement or whether the alleged injury

4    is too 'imaginary' or 'speculative' to support jurisdiction." *Thomas v. Anchorage Equal Rts.*

5    *Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (cleaned up) (internal citation omitted). Here,

6    Plaintiffs' alleged injury is imaginary. Plaintiff Mitchell has conceded that he has no evidence

7    that I-1639 has diminished his sales: he did not consult any financial records or sales data in

8    arriving at his "ballpark" estimate.[5] Dkt. # 94-2 at p. 112–15 (Mitchell Dep. 169:7–172:9). Ball

9    abandoned her claim by failing to move for summary judgment on it when the parties first briefed

10   their cross-motions. *Mitchell*, 483 F. Supp. 3d at 998; *see, e.g.*, *Kovaco v. Rockbestos-Surprenant*

11   *Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[W]hen a counseled party moves for summary

12   judgment, a partial response by the non-movant arguing that summary judgment should be

13   denied as to some claims while not mentioning others may be deemed an abandonment of the

14   unmentioned claims."). And even if she hadn't abandoned her dormant Commerce Clause claim,

15   Ball lacks standing to raise it because she testified that her firearm revenue *increased* after the

16   passage of I-1639. Dkt. # 17 ¶ 120; Dkt. # 94-2 at p. 15–16 (Ball Dep. 125:25–126:5).

17          Further, in instances such as this one, where a law has not yet been enforced against

18   plaintiffs in a case, the Ninth Circuit asks whether "there [is] a 'genuine threat

19   of . . . prosecution.'" *Thomas*, 220 F.3d at 1139. Whether there is a genuine threat of prosecution

20   is analyzed by looking to three factors: "[1] whether plaintiffs have articulated a 'concrete plan'

21   to violate the law in question, [2] whether the prosecuting authorities have communicated a

22   specific warning or threat to initiate proceedings, and [3] the history of past prosecution or

23   enforcement under the challenged statute." *Id.* Plaintiffs fail all three.

24   _____

25          [5] Indeed, Plaintiff Ball did not even challenge the dormant Commerce Clause as part of Plaintiffs' initial motion
     for summary judgment. Dkt. # 76 at p. 16. As Judge Leighton noted, "Plaintiff Ball had originally alleged a Dormant
26   Commerce Clause claim too, but Plaintiffs' abandoned her claim after Ball revealed in discovery that, after I-1639
     went into effect, her firearm sales revenue increased." *Mitchell*, 483 F. Supp. 3d at 998.

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    First, Mitchell and Ball have neither alleged nor shown that they have articulated any

2    plans to sell SARs to nonresidents. Second, Plaintiffs have not provided any evidence that even

3    a single law enforcement agency has threatened an FFL with enforcement of the law as they

4    interpret it. Nor is such enforcement likely given that the Attorney General's Office has issued

5    guidance that FFL to FFL transfers for SARs are legal under I-1639. Dkt. # 94-3 at p. 38. And,

6    third, despite I-1639 taking effect over four years ago, Plaintiffs cannot point to a single instance

7    of a firearm dealer being prosecuted for selling a SAR to a nonresident using the FFL to FFL

8    transfer process.

9        Plaintiffs tilt at windmills when they argue that "sales" are not "purchases" and thus

10   Nonresident sales are wholly prohibited by I-1639. Dkt. # 150 at p. 2–4. Not only is this incorrect,

11   as discussed in the Attorney General Office's guidance, but Article III standing cannot be

12   manufactured by a plaintiff interpreting a statute in a way would create a crime where no

13   government enforcement entity agrees a crime exists. For this reason alone, Plaintiffs' remaining

14   claim should be dismissed.

15   **D.      The Nonresident Sales Provision Does Not Violate the Dormant Commerce Clause**

16       The Commerce Clause provides that Congress shall have the power "[t]o regulate

17   Commerce with foreign Nations, and among . . . several states, and with the Indian Tribes[.]"

18   U.S. Const. art. 1, § 8, cl. 3. In addition to this express grant of power to Congress, the Commerce

19   Clause has an implicit negative aspect—known as the dormant Commerce Clause—that

20   "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirit Retailers*

21   *Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). The dormant Commerce Clause serves as a

22   bulwark against state programs of "economic protectionism—that is, regulatory measures

23   designed to benefit in-state economic interests by burdening out-of-state competitors." *Int'l*

24   *Franchise Ass'n, Inc. v. City of Seattle* (*Int'l Franchise Ass'n*), 803 F.3d 389, 399 (9th Cir. 2015)

25   (internal citations and quotations omitted).

26       If a law affects interstate commerce, then a court applies one of two levels of scrutiny

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   depending on whether the law is "discriminatory" as that term is used in dormant Commerce

2   Clause jurisprudence. *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 995 (9th Cir. 2002).

3   Here, the Nonresident Sales Provision is valid regardless of what level of scrutiny applies.

4        **1.**     **Dormant Commerce Clause framework**

5        At the "very core" of the Supreme Court's "modern" dormant Commerce Clause

6   jurisprudence lies an "antidiscrimination principle": "the Commerce Clause prohibits the

7   enforcement of state laws 'driven by economic protectionism—that is, regulatory measures

8   designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Nat'l*

9   *Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (quoting *Dep't of Revenue of Ky. v.*

10  *Davis*, 553 U.S. 328, 337–338 (2008)). To determine whether a law violates the dormant

11  Commerce Clause, courts "first ask whether it discriminates on its face against interstate

12  commerce." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330,

13  338–39 (2007). If so, the law is invalid unless the state "has no other means to advance a

14  legitimate local purpose[.]" *Id.* (citing *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).

15       If the law is non-discriminatory, however, it violates the dormant Commerce Clause only

16  if (1) the "challenged law imposes 'substantial burdens' on interstate commerce[,]" *id.* at 383,

17  and (2) those burdens are "clearly excessive in relation to the putative local benefits[.]" *Pike v.*

18  *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The *Pike* balancing test requires "sensitive

19  consideration of the weight and nature of the state regulatory concern in light of the extent of the

20  burden imposed on the course of interstate commerce." *Raymond Motor Transp., Inc. v. Rice*,

21  434 U.S. 429, 441 (1978). That there "[be] a *substantial burden* on *interstate commerce*" is a

22  "critical requirement" of a dormant Commerce Clause violation. *Ross*, 598 U.S. at 383; *id.* at

23  391 (Sotomayor, J., concurring); *id.* at 403 (Roberts, C.J., concurring in part and dissenting in

24  part); *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012)

25  (citing *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984)).

26

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

### 2. The Nonresident Sales Provision is non-discriminatory because it does not involve economic protectionism

2   The threshold question under the dormant Commerce Clause is whether the law is

3   discriminatory. The term "discrimination" has a specific meaning in the dormant Commerce

4   Clause context: "economic protectionism, or discrimination, 'simply means differential

5   treatment of in-state and out-of-state economic interests that *benefits* the former and *burdens* the

6   latter.'" *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting

7   *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994)) (emphases

8   added); *see also Ross*, 598 U.S. at 369 ("In its 'modern' cases, this Court has said that the

9   Commerce Clause prohibits the enforcement of state laws driven by economic protectionism—

10   that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-

11   state competitors.") (cleaned up).

12   Mere differential treatment of in-state and out-of-state interests alone is not sufficient to

13   establish discrimination. Rather, there must be some economic benefit to in-state interests or

14   some economic burden on out-of-state interests. *See, e.g.*, *City of Philadelphia v. New Jersey*,

15   437 U.S. 617, 624 (1978) ("The crucial inquiry . . . [is] whether [the law] is basically a

16   protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local

17   concerns, with effects upon interstate commerce that are only incidental."). This makes sense,

18   as "[t]he central rationale for the rule against discrimination is to prohibit state or municipal laws

19   *whose object is local economic protectionism*, laws that would excite those jealousies and

20   retaliatory measures the Constitution was designed to prevent." *C & A Carbone, Inc. v. Town of

21   Clarkstown, N.Y.*, 511 U.S. 383, 390 (1994) (emphasis added).

22   Plaintiffs bear the burden of establishing that the Nonresident Sales Provision

23   discriminates as defined above. *Int'l Franchise Ass'n*, 803 F.3d at 400. But Plaintiffs have

24   wholly failed to do so because Plaintiffs are not prohibited from selling to nonresidents via the

25   FFL to FFL process. But even if Plaintiffs were prohibited from selling to nonresidents (which

26

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    again, I-1639 permits),[6] this restriction would *burden Washington* economic interests—the very

2    opposite of economic protectionism. Conversely, the likely economic beneficiaries of a

3    prohibition on Washington sales to out-of-state buyers are out-of-state gun dealers who would,

4    if anything, see a corresponding *increase* in sales at the expense of Washington gun dealers. *See*

5    *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298–99 (1997) ("[A]ny notion of discrimination

6    assumes comparison . . . of substantially similar entities.") (footnote omitted). Thus, the central

7    concern of the dormant Commerce Clause is not triggered by the Nonresident Sales Provision,

8    which is nondiscriminatory. *See Mitchell,* 483 F. Supp. 3d at 998 ("The Nonresident Sales

9    Provision does not trigger this protectionism concern because it neither benefits in-state

10   economic interests nor burdens out-of-state economic interests."); *see also, e.g.*, *Town of*

11   *Southold v. Town of E. Hampton*, 477 F.3d 38, 49 (2d Cir. 2007) (law nondiscriminatory where

12   "it does not confer a competitive advantage upon local business vis-a-vis out-of-state

13   competitors" and "even local businesses operating within the Town itself challenge [its]

14   validity"); *Cohen v. R.I. Tpk. & Bridge Auth.*, 775 F. Supp. 2d 439, 447 (D.R.I. 2011) ("[W]hen

15   a law does not implicate the kind of 'local economic protectionism' that the Commerce Clause

16   aims to eradicate, the rationale for equating differentiation and discrimination disappears . . . .

17   Plaintiff has failed to identify a specific in-state commercial interest that is favored by the [law]

18   at the expense of particular out-of-state competitors, so it cannot demonstrate that the discount

19   discriminates against interstate commerce.").

20        Plaintiffs' cherry-picked phrases from dormant Commerce Clause cases does not

21   establish discrimination. Nor do these cases support their claim. First, there is no advantage to

22   consumers in Washington, because if anything, a burden has been placed on Washington dealers.

23   *See* Dkt. # 150 at p. 5 (citing *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*,

24   476 U.S. 573, 580 (1986) and *Nationwide Biweekly Administration, Inc. v. Owen*, 873 F.3d 716,

25
26   ───────────
     [6] Even if the Nonresident Sales Provision reached FFL to FFL transfers, this would not be a reason to
     invalidate the law in a facial challenge. No FFL from another state has raised a challenge to this provision and such
     a challenge would be an as-applied challenge.

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   736 (9th Cir. 2017)). Second, for the same reason there is no differential treatment between in-

2   state and out-of-state economic interests that benefit the former and burden the latter. *See* Dkt. #

3   150 at p. 5, 6 (citing *Oregon Waste Systems, Inc. v. Dep't of Envt'l Quality of State of Or.*, 511

4   U.S. 93, 99 (1994) and *New England Power Co. v. New Hampshire*, 455 U.S. 331, 338 (1982)).

5   Third, because Washington dealers may continue to use the FFL to FFL transfer process to sell

6   SARs to nonresidents, nothing prevents SARs from being shipped and sold in interstate

7   commerce. *See* Dkt. # 150 at p. 6 (citing *Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1, 10

8   (1928)). And finally, there is no economic isolation that prohibits out-of-state access to in-state

9   resources. Dkt. # 150 at p. 6 (citing *Camps Newfound/Owatonna, Inc. v. Town of Harrison,*

10  *Maine*, 520 U.S. 564, 575 (1997)).

11       Regarding economic protectionism, specifically, Plaintiffs fail to address how

12  prohibiting Washington dealers from selling to nonresidents provides any economic benefit to

13  in-state interests or economic burdens on out-of-state interests. Once again, Plaintiffs only make

14  bald claims and provide quotes from cases without applying the holdings of those cases to

15  I-1639. For example, Plaintiffs' rely on decisions that concern state attempts to hoard natural

16  resources or other unique state products for the purpose of benefitting in-state interests. *See* Dkt.

17  # 150 at p. 4. One such case is *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S.

18  564, 576–77, 580–81 (1997), where the Court struck down a state tax exemption for summer

19  camps serving mostly Mainers that did not apply to camps serving primarily out-of-state campers

20  because the tax burdened "out-of-state access to" a "natural resource"—namely, "the natural

21  beauty of Maine itself"—while the exemption gave a "preferred right of access" to Mainers.

22  Similarly, in *New England Power Co. v. New Hampshire*, 455 U.S. 331, 339 (1982), the

23  prohibition on selling hydroelectric energy outside the state was "simple economic

24  protectionism" designed to gain an "economic advantage for New Hampshire citizens at the

25  expense of New England Power's customers." Likewise, in *City of Philadelphia*, the prohibition

26  on the importation of out-of-state waste to conserve New Jersey's remaining landfill space

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   "overtly moved to slow or freeze the flow of commerce for protectionist reasons" because it was

2   an "attempt by one State to isolate itself from a problem common to many by erecting a barrier

3   against the movement of interstate state." 437 U.S. at 628.

4       In contrast, here, Plaintiffs do not allege that I-1639's purpose or effect is to hoard scarce

5   Washington products for in-state consumers. Nor could they. I-1639 indisputably

6   restricts in-person SAR sales while continuing to allow FFL to FFL sales to "increase public

7   safety and reduce gun violence"—a goal wholly unrelated to seeking in-state economic

8   advantage or creating a functional export tariff. Dkt. # 94-1 at p. 3 (I-1639 § 1).

9       Further, I-1639 does not result in hoarding or discriminatory protection of in-state

10  resources and is not a law that would incite retaliatory measures from other states. Indeed, the

11  flow of commerce is not shut off at all. As stated above, contrary to Plaintiffs' unsupported

12  assertion otherwise, Dkt. # 150 at p. 2, nonresidents may continue to purchase SARs from

13  Mitchell, Ball, and other Washington dealers using the FFL to FFL transfer process. *See supra*

14  at 9. Moreover, Plaintiffs do not contend that nonresidents are constrained in their ability to

15  purchase SARs in their home states; rather, nonresidents may continue to purchase SARs in their

16  home states or in other states. Nor is there a nonresident plaintiff who asserts any injury from

17  I-1639. According to Plaintiff Mitchell, it is the other way around: Washington residents prefer

18  to purchase firearms in Oregon to avoid paying sales tax or transfer fees that apply to sales in

19  Washington (regardless of whether you are a Washington resident). Dkt. # 94-2 at p. 104–105

20  (Mitchell Dep. 42:21–43:13). Thus, SARs remain widely available to nonresidents.

21      Finally, Mitchell's reliance on *Brown-Forman Distillers Corp. v. New York State Liquor*

22  *Authority*, 476 U.S. 573 (1986), for the proposition that a regulation that disadvantages in-state

23  interests may constitute economic protectionism, is misplaced. Dkt. # 150 at p. 5. In

24  *Brown-Forman Distillers*, the Supreme Court struck down a state law that, to give low prices to

25  New Yorkers, required liquor distillers to sell their products to in-state wholesalers for no more

26  than the lowest price offered in any other state. *Id.* at 576. The Court held that the law violated

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   the dormant Commerce Clause because it, in effect, "regulate[d] out-of-state transactions":

2   "Once a distiller ha[d] posted prices in New York, it [wa]s not free to change its prices elsewhere

3   in the United States during the relevant month." *Brown-Forman Distillers*, 476 U.S at 582. The

4   Court noted that "[w]hile New York may regulate the sale of liquor within its borders, and may

5   seek low prices for its residents, it may not project its legislation into [other States] by regulating

6   the price to be paid for liquor in those States." *Id.* at 582–83 (quotation marks and citation

7   omitted). As the Supreme Court recently explained, in *Brown-Forman Distillers*, the

8   protectionist "goal was plain: New York sought to force out-of-state distillers to 'surrender'

9   whatever cost advantages they enjoyed against their in-state rivals. Once more, the law amounted

10  to 'simple economic protectionism.'" *Ibid.* (internal quotation marks omitted). *Ross*, 598 U.S. at

11  372 (quoting *Brown-Forman Distillers*, 476 U.S. at 580). Thus this case is inapposite because I-

12  1639 does not regulate or limit sales of SARs in other states. Instead, the law permissibly

13  "regulate[s] the sale of [firearms] within [Washington's] borders." *Brown-Forman Distillers*,

14  476 U.S. at 582. Doing so does not discriminate under the dormant Commerce Clause.

15  ### 3.   The Nonresident Sales Provision meets the *Pike* balancing test

16  Absent discrimination, a law need only meet the lenient *Pike* balancing test, under which

17  courts "will uphold the law 'unless the burden imposed on [interstate] commerce is clearly

18  excessive in relation to the putative local benefits.'" *Corey*, 730 F.3d at 1087–88 (quoting *Pike*,

19  397 U.S. at 142). Plaintiffs bear the burden to establish that I-1639 substantially burdens

20  interstate commerce. *See Ross*, 598 U.S. at 385. They also then "bear[] the burden of proof in

21  establishing the excessive burden in relation to the local benefits." *Nat'l Ass'n of Optometrists*

22  *& Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 528 (9th Cir. 2009). Courts will not look

23  beyond a law's putative benefits absent proof of an excessive burden. *Harris*, 682 F.3d at 1155.

24  The Court's recent decision in *National Pork Producers Council v. Ross*, 598 U.S. 356

25  (2023) is instructive in understanding what is an "excessive burden." There, California's

26

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    Proposition 12[7] forbade the importation of pork from pigs "confined in a cruel manner." *Id.* at

2    365–66. Pork producers challenged the law, alleging that "certain out-of-state farmers and

3    processing firms [may] find it difficult to comply with Proposition 12 and may choose not to"

4    or that "a shift from one set of production methods to another promises some costs." *Id.* at 386.

5    The Court referred to these as "nothing more than a speculative possibility" and that the

6    complaint merely alleged "harm to some producers' favored methods of operation." *Id.* So too

7    here, while Mitchell and Ball may prefer to hand a SAR directly to a nonresident purchaser,

8    requiring them to use the FFL to FFL transfer process is not a constitutional violation because

9    "the dormant Commerce Clause does not protect a particular structure or method of operation."

10   *Id.* at 385 (cleaned up).

11          Plaintiffs put forth no evidence to establish a substantial burden on interstate commerce.

12   When asked to identify details of his out-of-state SAR sales, including the number and value of

13   such sales, Mitchell offered no answer. He objected that, among other bases, the inquiry was

14   "not relevant to any party's claims or defense" and that the "information . . . has no relevance to

15   any issue in this case." Dkt. # 94-4 at pp. 115–116, 118, 121–22; *see also id.*, Dkt. # 94-2 at p.

16   112–13 (Mitchell Dep. 169:22–170:4) (examination of sales records would be "exceptionally

17   difficult to do"). Mitchell cannot meet his burden of demonstrating a substantial burden on

18   interstate commerce. Plaintiff Ball has similarly failed to put forth any evidence to establish any

19   burdens on interstate commerce. And notably, no out-of-state competitors to Mitchell or Ball or

20   nonresident consumers have asserted that their interests are in any way harmed. Because

21   Mitchell and Ball fail to show any burden on out-of-state interests, much less an excessive one,

22   the Nonresident Sales Provision is presumptively valid even without evidence of any valid

23

24          [7] Proposition 12 passed with about 63% of the vote, *Ross*, 598 U.S. at 365, and Justice Gorsuch, in an
     opinion joined by two other justices, noted that stated that "[i]n a functioning democracy, policy choices . . . usually
25   belong to the people and their elected representatives . . . [who] are entitled to weigh the relevant political and
     economic costs and benefits for themselves and try novel social and economic experiments if they wish." *Id.* at 382
26   (opinion of Gorsuch, J.) (cleaned up). This is equally true of I-1639, passed by Washington voters with an
     overwhelming majority.

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC                                    18                ATTORNEY GENERAL OF WASHINGTON
                                                                              Complex Litigation Division
                                                                                7141 Cleanwater Dr. SW
                                                                                    P.O. Box 40111
                                                                                Olympia, WA 98504-0111
                                                                                   (360) 709-6470

1    noneconomic benefits. *See, e.g.*, *Ross*, 598 U.S. at 393 (Sotomayor, J., concurring in part)

2    ("Alleging a substantial burden on interstate commerce is a threshold requirement that plaintiffs

3    must satisfy before courts need even engage in *Pike*'s balancing and tailoring analyses.").

4           I-1639's noneconomic benefits, however, are substantial. Even if Plaintiffs had shown

5    that the law substantially burdens interstate commerce, it would still pass constitutional muster

6    because it advances a bona fide state interest in public safety that far outweighs any perceived

7    burden on interstate commerce. I-1639 was adopted to "increase public safety and reduce gun

8    violence," an unquestionably legitimate government interest. Dkt. # 94-1 at p. 3 (I-1639 § 1).

9    Indeed, there are few interests more paramount to state governments than protecting public

10   safety, and especially "the suppression of violent crime and vindication of its victims." *United*

11   *States v. Morrison*, 529 U.S. 598, 618 (2000); *see also United States v. Salerno*, 481 U.S. 739,

12   755 (1987). To advance this interest, the people of Washington extended an existing safeguard

13   on handgun sales to SAR sales: the requirement to undergo an enhanced background check, in

14   which law enforcement searches additional state and local databases to ensure that the buyer is

15   not prohibited by law from buying the firearm. *Supra* at 8–9. It is undisputed that enhanced

16   background checks are more comprehensive than a NICS check alone. *See, e.g.*, Dkt. # 86 at

17   p. 4–5 ¶¶ 6–7; Dkt. # 87 at p. 6–8 ¶¶ 15–18; Dkt. # 95 at p. 4–5 ¶¶ 6–7; Dkt. # 94-2 at p. 107–

18   108 (Mitchell Dep. 119:18–120:16); Dkt. # 94-3 at p. 16–17 (107:25–108:3);Dkt. # 94-2 at pp.

19   11–12 (71:22–72:3),17 (132:1–11). As the Fifth Circuit has noted, "The states voluntarily

20   provide records for use in the databases accessed by NICS[,]" and, "for various reasons, some

21   records are not timely provided, or are not provided at all." *Mance*, 896 F.3d at 707. This

22   enhanced background check cannot be conducted on nonresidents because Washington State

23   cannot request—much less require—out-of-state law enforcement agencies to assist with

24   running Washington's background checks. Dkt. # 87 at p. 6–8 ¶¶ 17–18; Dkt. # 86 at p. 4–7

25   ¶¶ 6–9. Thus, the Nonresident Sales Provision is necessary to ensure an enhanced background

26   check is conducted before a SAR is sold in Washington. This local public-safety benefit far

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  outweighs any alleged burden. Accordingly, the "Nonresident Sales Provision is constitutional

2  under *Pike* balancing." *Mitchell*, 483 F. Supp. 3d at 999.

3  **4.      The Nonresident Sales Provision would meet stricter scrutiny if it applied**

4  Even if this Court were to conclude that the Nonresident Sales Provision is discriminatory

5  (and it is not), the provision would still survive the stricter level of scrutiny applied to

6  discriminatory provisions under the *Pike* balancing test. A law that discriminates is invalid

7  "[unless the respondents can show] that it advances a legitimate local purpose that cannot be

8  adequately served by reasonable nondiscriminatory alternatives." *Oregon Waste Sys., Inc. v.*

9  *Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 101 (1994) (quoting *New Energy Co. of Ind.*

10  *v. Limbach*, 486 U.S. 269, 278 (1988)).

11  Here, the Nonresident Sales Provision serves the legitimate local purpose of ensuring

12  that Washington's enhanced background check procedures apply to all direct sales of SARs in

13  this state. This concern is more than legitimate—it is compelling. *See, e.g.*, *Mance*, 896 F.3d at

14  706 (federal prohibition on in-person sales of handguns to nonresidents, 18 U.S.C. § 922(a)(3),

15  was "justified by a compelling . . . interest and is narrowly tailored to serve that interest").

16  Indeed, in the 2019 Gilroy Garlic Festival mass shooting, which killed or injured 20 people, the

17  shooter purchased his SAR in Nevada before carrying out his attack in California. Dkt. # 94-1 at

18  p. 64–69;) Dkt. # 94-4 at p. 127. And the 2013 D.C. Navy Yard shooter had attempted to purchase

19  an AR-15 in a Virginia gun store "but was stopped from buying one because state law there

20  limits the sale of such weapons to out-of-state buyers" by requiring additional forms of

21  identification. Dkt. # 94-4 at p. 132–34. Forced to use a shotgun and a handgun instead, the killer

22  could well have harmed many more victims had his arsenal included a SAR. Moreover, contrary

23  to Plaintiffs claims, Washington is not be required to show that such tragedies have occurred

24  within its borders before its voters can act to protect Washingtonians from the same. Dkt. # 150

25  at p. 4–5.

26  Further, the need to conduct enhanced background checks prior to handing the gun to the

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  seller within the bounds of Washington cannot be accomplished by a reasonable

2  nondiscriminatory alternative. The Nonresident Sales Provision is already nondiscriminatory,

3  and as this Court previously found, it is necessary in light of the mechanics of the enhanced

4  background check process. *See supra* at 7–9. Washington cannot compel thousands of local law

5  enforcement agencies across the country to conduct detailed background checks on prospective

6  nonresident SAR purchasers. Dkt. # 87 at p. 7–8 ¶ 18; Dkt. # 86 at p. 5–7 ¶¶ 8–9. And it would

7  also be "unrealistic" to require Washington FFLs to "become, and remain, knowledgeable about

8  the handgun laws of the 50 states and the District of Columbia, and the local laws within the 50

9  states and the District." *Mance*, 896 F.3d at 708 (federal in-state sales requirement for handguns

10  "is narrowly tailored to assure that an FFL . . . can . . . know and comply with the laws of the

11  state in which the delivery occurs").

12      No alternative means are available to advance this interest, and nonresidents have

13  adequate alternative channels to purchase SARs through the FFL-to-FFL transfer process, in

14  their own states, and in other states. *Supra* at 9; *see also Mance*, 896 F.3d at 709 ("a qualified

15  person in any state may purchase a firearm] from an FFL in his or her state of residence, or may

16  purchase the firearm from an out-of-state FFL as long as the weapon is lawfully transferred to

17  an in-state FFL").[8] The Nonresident Sales Provision would survive any strict scrutiny analysis.

18      **5.   Congress has authorized states to restrict sales of rifles to nonresidents**

19      Plaintiffs' dormant Commerce Clause claim also fails because Congress has specifically

20  authorized states to prohibit the sale of rifles to nonresidents. "It is well established that Congress

21  may authorize the States to engage in regulation that the Commerce Clause would otherwise

22  forbid." *Maine*, 477 U.S. at 138. Federal law permits sales of rifles to nonresidents only if they

23  "fully comply with the legal conditions of sale in both such States." 18 U.S.C. § 922(b)(3); 27

---

24      [8] Dkt. # 94-3 at p. 29 ("[T]he sale may be made if the firearm is shipped to a licensee whose business is in the
25  purchaser's State of residence and the purchaser takes delivery of the firearm from the licensee in his or her State
    of residence."); *Id.* at 38 ("[N]othing in the Initiative prohibits an FFL from transferring a semiautomatic assault
26  rifle to an FFL in a different state, consistent with federal law—a practice long utilized for interstate sales of pistols
    and other types of firearms.").

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    C.F.R. § 478.99. Because § 922(b)(3) "plainly authorizes" states to restrict rifle sales to

2    nonresidents, the Nonresident Sales Provision is "invulnerable to constitutional attack under the

3    Commerce Clause." *Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159,

4    174 (1985).

5         Congress first enacted § 922(b)(3) as part of the GCA "to strengthen Federal controls

6    over interstate and foreign commerce in firearms and to assist the States effectively to regulate

7    firearms traffic within their borders." H.R. Rep. No. 90-1577, at 6 (1968), *reprinted

8    in* 1968 U.S.C.C.A.N. 4410, 4411. Having found that "the sale . . . of firearms" (including

9    "[r]ifles") "to nonresidents . . . has tended to make ineffective the laws, regulations, and

10   ordinances in the several States," S. Rep. No. 90-1501, at 28 (1968), Congress made it unlawful

11   for FFLs to sell or deliver "any firearm" (including a rifle) to a nonresident, 18 U.S.C.

12   § 922(b)(3). That general prohibition contained an exception for sales of rifles or shotguns to

13   residents of "contiguous" states. *Id.* But the exception applied only if allowed by law in both

14   states. *Id.* At the time of the GCA's enactment, at least 16 states had laws restricting acquisition

15   or possession of one or more types of firearms by nonresidents.[9]

16        In enacting 18 U.S.C. § 922(b)(3), Congress did not intend to displace state residency

17   restrictions. Quite the opposite: its goal was to "[a]ssist and encourage States and local

18   communities to adopt and enforce *stricter* gun control laws." H.R. Rep. No. 90-1577, at

19   8, 1968 U.S.C.C.A.N. at 4413 (emphasis added). By adopting a default rule that nonresidents

20   may not purchase firearms—subject to an exception if and only if the laws of both states permit

21

22        [9] *See, e.g.*, Act of Mar. 2, 1937, No. 190, § 1, 1937 Ala. Laws 223, 223; Act of Mar. 19, 1923 §§ 1, 3, 1923 Ark.
     Acts 379, 379–80; Act of Aug. 12, 1910, No. 432, 1910 Ga. Laws 134; Act of July 11, 1919, § 4, 1919 Ill. Laws 431,
23   432; Act of Feb. 21, 1935, ch. 63, §§ 1, 3, 5, 1935 Ind. Laws 159, 159–61; Act of Feb. 25, 1939, ch. 14, 1939 Me.
     Acts 53; Act of May 29, 1922, ch. 485, § 9, 1922 Mass. Acts 560, 563; Act of June 2, 1927, ch. 372, §§ 2, 6,
24   1927 Mich. Acts 887, 887–89; Act of Apr. 7, 1921, § 2, 1921 Mo. Laws 692; Act of Feb. 20, 1918, ch. 2, §§ 1–3,
     8, 1918 Mont. Laws 6, 6–9; Act of Mar. 3, 1919, ch. 74, § 5, 1919 Mont. Acts 147, 148; Act of Mar. 11, 1924, ch.
25   137, §§ 1–2, 1924 N.J. Acts 305, 305–06; Act of May 21, 1913, ch. 608, § 1, 1913 N.Y. Laws 1627, 1628–29; Act
     of Mar. 10, 1919, ch. 197, §§ 1–2, 1919 N.C. Laws 397, 397–98; Act of Feb. 26, 1913, ch. 256, § 1, 1913 Or.
26   Laws 497; Act of May 2, 1910, ch. 591, § 1, 1910 R.I. Acts 156, 156–57; Act of Feb. 16, 1909, ch. 51, 1909 W. Va.
     Acts 394, 395–96.

DEFENDANTS' S RESPONSE TO                          22
PLAINTIFFS' MOTION FOR SUMMARY                                    Complex Litigation Division
JUDGMENT AND CROSS-MOTION FOR                                    7141 Cleanwater Dr. SW
SUMMARY JUDGMENT                                                 P.O. Box 40111
NO. 3:19-cv-05106-JCC                                            Olympia, WA 98504-0111
                                                                 (360) 709-6470

1   it—Congress sought to strengthen state restrictions on out-of-state purchasers. *See* S. Rep. No.

2   90-1097, at 50 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2166 (residency provisions "will

3   enable the States to more effectively control this traffic within their own jurisdictions under the

4   police power"). When Congress amended the GCA, it reaffirmed its original purpose to "prevent

5   the use of interstate sales to defeat state and local gun restrictions," S. Rep. No. 98-583, at 10

6   (1984), and to "[l]et the States make those decisions," *Legislation to Modify the 1968 Gun

7   Control Act: Hearing on S. 49 Before the Subcomm. on Crime, H. Comm. of Judiciary*, 99th

8   Cong., 1st & 2d Sess., Pt. 1, Serial No. 131, at 785 (1985-86).[10] In sum, 18 U.S.C. § 922(b)(3)

9   vests in each state the authority to determine whether to permit FFLs to sell rifles to nonresidents.

10       In 1970, Washington allowed qualified nonresidents to purchase rifles and shotguns in

11   person. 1970 Wash. Sess. Laws at 668, ch. 74, § 2 (originally codified at Wash. Rev. Code §

12   19.70.020, codified as amended at Wash. Rev. Code § 9.41.124). But in I-1639, Washington's

13   voters amended the law to remove SARs from the class of rifles that may be sold in person to

14   nonresidents. This decision to limit Washington's own law is squarely within congressionally

15   delegated authority.

16       That statutory authorization defeats Plaintiffs' dormant Commerce Clause claim at its

17   threshold. "Where state or local government action is specifically authorized by Congress, it is

18   not subject to the Commerce Clause even if it interferes with interstate commerce." *White v.

19   Mass. Council of Const. Employers, Inc.*, 460 U.S. 204, 213 (1983). Here, Congress

20   unambiguously authorized states to regulate firearms sales to nonresidents. Section 922(b)(3)

21   permits sales of rifles to nonresidents, but only if they "fully comply with the legal conditions of

---

22       [10] In the Firearm Owners Protection Act (FOPA), Pub. L. No. 99-308, § 102(4)(B), 100 Stat. 449, 451 (1986),

23   Congress expanded the exception for rifles and shotguns to permit their sale to residents of noncontiguous states—
     provided, again, that the "sale, delivery, and receipt fully comply with the legal conditions of sale in both such

24   States." *Id.* (codified at 18 U.S.C. § 922(b)(3)). As FOPA's chief sponsor explained, Congress "never intended in
     the interstate sales [exception] to make any change in any local or State law." *Legislation to Modify the 1968 Gun

25   Control Act: Hearing on S. 49 Before the Subcomm. on Crime, H. Comm. of Judiciary*, 99th Cong., 1st & 2d Sess.,
     Pt. 1, Serial No. 131, at 785 (1985-86); *see also* 131 Cong. Rec. S9149–50 (daily ed. July 9, 1985) (Statement of

26   Sen. Hatch) (FOPA "permits out[]of State purchases but it also ensures that the laws of the buyer's as well as the
     seller's State shall be scrupulously obeyed.").

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

sale in both such States." *Id.*; *see also* 27 C.F.R. § 478.99 (same). By allowing nonresident rifle purchases only if they "fully comply" with state laws, Congress allowed states to impose additional limits on such sales. *See, e.g.*, *Hirst v. Skywest*, 910 F.3d 961, 967 (7th Cir. 2018) (holding state minimum wage laws were authorized by federal law providing that "[n]o provision of this chapter or of any order thereunder *shall excuse noncompliance with any Federal or State law* . . . establishing a minimum wage higher than the minimum wage established under this chapter.") (emphasis added). Indeed, the "entire thrust" of 18 U.S.C. § 922(b)(3) "is for each state to resolve for its own" how to regulate sales of rifles and shotguns to nonresidents. *Norfolk S. Corp. v. Oberly*, 632 F. Supp. 1225, 1247 (D. Del. 1986), *aff'd*, 822 F.2d 388 (3d Cir. 1987).[11]

## IV.   CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment and grant summary judgment in Defendants' favor.

DATED this 12th day of December 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ R. July Simpson*
R. JULY SIMPSON, WSBA #45869
WILLIAM MCGINTY, WSBA #41868
ANDREW HUGHES, WSBA #49515
Assistant Attorneys General
NOAH G. PURCELL, WSBA #43492
Solicitor General
july.simpson@atg.wa.gov
william.mcginty@atg.wa.gov
andrew.hughes@atg.wa.gov
noah.purcell@atg.wa.gov
*Attorneys for Defendant Teresa Berntsen*

---

[11] That Congress sought to authorize state restrictions on the sale of firearms to out-of-state residents is reinforced by its specification that "[n]o provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates *to the exclusion of the law of any State on the same subject matter*, unless there is a direct and positive conflict . . . ." 18 U.S.C. § 927 (emphasis added).

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PACIFICA LAW GROUP LLP


*/s/ Kai A. Smith*
ZACHARY J. PEKELIS, WSBA #44557
KAI A. SMITH, WSBA #54749
Attorneys at Law
zach.pekelis@pacificalawgroup.com
kai.smith@pacificalawgroup.com
*Attorneys for Intervenor-Defendant*
*Safe Schools Safe Communities*


CLARK COUNTY PROSECUTOR'S OFFICE


*/s/ Leslie A. Lopez*
LESLIE A. LOPEZ, WSBA #46118
Deputy Prosecuting Attorney
leslie.lopez@clark.wa.gov
*Attorney for Defendant Chuck Atkins*


SPOKANE CITY ATTORNEY'S OFFICE


*/s/ Nathaniel J. Odle*
NATHANIEL J. ODLE, WSBA #39602
Assistant City Attorney
nodle@spokanecity.org
*Attorney for Defendant Craig Meidl*


I certify that this memorandum contains 9,288 words, in compliance with the Local Civil Rules.

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

## __DECLARATION OF SERVICE__

2       I hereby declare that on this day I caused the foregoing document to be electronically

3   filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of

4   this document upon all counsel of record.

5       DATED this 12th day of December 2023, at Tacoma, Washington.

6

7                           */s/ R. July Simpson*
                            R. JULY SIMPSON, WSBA #45869
8                           Assistant Attorney General

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' S RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:19-cv-05106-JCC

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470