The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANIEL MITCHELL, ROBIN BALL, and SECOND AMENDMENT FOUNDATION,

*Plaintiffs*,

v.

CHUCK ATKINS, in his official capacity as the Sheriff of Clark County, Washington, CRAIG MEIDL, in his official capacity as the Chief of Police of Spokane, Washington, and TERESA BERNTSEN, in her official capacity as the Director of the Washington State Department of Licensing,

*Defendants*,

and

SAFE SCHOOLS SAFE COMMUNITIES,

*Defendant-Intervenor*.

No. 3:19-cv-05106-JCC

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NOTING DATE: JANUARY 30, 2024

## I. INTRODUCTION.

The State's Opposition to summary judgment on the commerce clause claim throws much at the wall, but little of it sticks. The State makes two basic arguments: (1) That the Plaintiffs lack standing;[1] (2) That the burden placed on interstate commerce by I-1639[2] is constitutional. As to the first issue, Mitchell plainly has standing for the reasons given in this Court's Order of May 20,

[1] The State accurately recalls that Ms. Ball abandoned her commerce clause claim several years ago, a point overlooked by counsel in the Motion. Undersigned counsel regrets the oversight, which does not affect the issues presented.

[2] I-1639 was codified as RCW 9.41.124. For brevity it will be referred to as I-1639.



ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

2019 (Dkt. No. 44). Second, the State attempts to avoid the obvious constitutional infirmity of the statute by pretending that its own interpretation of federal law (its "guidance"[3]) can prevent I-1639 from having an impermissible effect on interstate commerce. Instead, I-1639 has the meaning and effect Mitchell has put forward—resulting in an irreconcilable conflict with federal law. The opinion of the Washington Attorney General's Office (its "guidance") is meaningless on this point, because no state Attorney General has the power to issue a binding interpretation of federal law. Further, this Court's Order of August 31, 2020, denying Mitchell's Motion for Summary Judgment on the commerce clause issue, ruled that the law has precisely the effect Mitchell has advocated.

Finally, just as the previous commerce clause briefing never once mentioned *Heller v. District of Columbia*, 554 U.S. 570 (2008)— because the commerce clause issue is not dependent on the Second Amendment—*New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) has no effect on the commerce clause issue in this case. The Ninth Circuit made no mention of the commerce clause in its remand; the issue has never been reviewed. Whether the Court agrees with the prior ruling or revises it, the issue is ripe for ruling and subsequent appellate review.

## II. Argument.

### A. *Bruen* Is No More Relevant Than *Heller*.

The State criticizes Mitchell's brief for not addressing *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). True, the Ninth Circuit remanded the entire case for this Court to consider the effect of *Bruen*. But as the State knows—because it was the State's Motion that the Ninth Circuit granted—the Commerce Clause claim was not implicated. Footnote One of the State's Motion to Vacate stated:

> The District Court also upheld the other challenged provision of I-1639—its prohibition on in-person sales of semiautomatic assault rifles to non-Washington residents (the Non-Resident Sales Provision). Appellants challenged that provision under the dormant Commerce Clause, not the Second Amendment. ER-23. Because Bruen does not implicate

[3] Dkt. # 94-3, page 86.



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

> the District Court's adjudication of that claim, vacatur is appropriate as to the Second Amendment claim only.

The Ninth Circuit nonetheless vacated the entire matter, remanding it in its entirety. Thus, plaintiffs having dismissed the Second Amendment claims, this case now presents only the same issue, with the same arguments, that the Ninth Circuit vacated and remanded to this Court without any ruling. No wonder Mitchell ignored *Bruen* in his Motion. So, too, did the Ninth Circuit, and so too did this Court correctly ignore *Heller* in its earlier ruling on the Interstate Commerce Clause issue.

**B. Mitchell Has Standing.**

As the Court noted in its ruling on the local law enforcement officers' Motion to Dismiss, Dkt. No. 44, Mitchell has standing. Absent the ban in I-1639, he would make certain sales of firearms to non-Washington residents that are now forbidden: specifically, sales to non-residents, who purchase from Mitchell but are physically present in another state and receive the firearm from a federal licensed firearm dealer (FFL) in that state, in compliance with both federal law and the law of that state. First Amended Complaint ¶¶ 110-115. Because he has been forced to forego those sales and continues to do so, Mitchell is harmed and has standing. *See generally* Dkt. No. 44 at 6-7.

As that Order noted, revocation of Mitchell's license is mandatory and non-discretionary if he violates state or federal law in a firearms transaction, and he must report every single transaction to the local LEO who issues his license. That LEO has the non-discretionary obligation to revoke it if he violates the law. So, too, would the BATF revoke it.[4] Finally, and as discussed in greater detail below, the statute has the indisputable effect of forbidding Mitchell to accept money for a firearm which he transfers to an out-of-state FFL for delivery to the purchaser. The State

[4] https://www.atf.gov/firearms/revocation-firearms-licenses#:~:text=Basis%20for%20Revocation&text=Transferring%20a%20firearm%20to%20a,respond%20to%20a%20trace%20request



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

minimizes the significance of this outcome, but does so in reliance on the *ipse dixit* of a state officer who has no authority to interpret or prevent the application of ***federal*** law.

**C. I-1639 Bans Certain Interstate Commerce.**

The State continues to insist that I-1639 does not ban purchases from Mitchell by out-of-state residents if Mitchell does so by transferring the firearm to an out-of-state FFL for delivery to the purchaser. This Court's Order of August 31, 2020, suggests a contrary conclusion. That Order did not explicitly answer the question, but it held that the Initiative burdened in-state commercial interests and benefited out-of-state interests. Dkt. No. 124 at 17-18. That holding is impossible to square with the State's claim that Mitchell is still permitted to accept money from an out-of-state buyer of a restricted firearm when the firearm is transferred to an out-of-state FFL for ultimate delivery to the buyer. If I-1639 permitted Mitchell to make those sales, then the state of the law would remain as it was prior to the passage of I-1639, and all FFLs in the country would have an equal opportunity to sell firearms to any purchaser by making the transfer through a local FFL just as Mitchell was permitted to do prior to the passage of the Initiative. But the Court thought otherwise. By holding that I-1639 benefits out-of-state FFLs at Mitchell's expense (and at the expense of other in-state FFLs), the Court must have agreed with Mitchell that, after passage of I-1639, he can no longer allow a resident of Georgia to purchase a restricted firearm from him, even if he transfers the firearm to a Georgia FFL for delivery to the purchaser.

**D. The Restriction Violates The Commerce Clause.**

This Court's Order of August 31, 2020 erred in finding no Interstate Commerce Clause violation, as detailed in the opening brief. The State offers no serious response on two key points, and thereby commits two fundamental errors: First, neither the State nor this Court identified any occurrence in the past in which a person purchased a firearm in an FFL to FFL transfer (now prohibited by I-1639) and subsequently brought the firearm to Washington and committed a crime. Thus, when the earlier Order stated that "I-1639's benefits, however, are substantial," Order at 18:19, it could cite no evidence for that assertion. In fact, none exists. The class of crimes that I-1639 claims to be preventing is in fact a null set. No such crime has ever occurred.



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

The Order further asserts, again without evidence, that enhanced background checks provide local benefits. *Id.* But there is no evidence in the record—and the State identifies none—showing that enhanced background checks are likely to prevent any crime that has ever been committed in the state, whether by a resident or non-resident. Again, I-1639 is touted by the State as producing a local benefit, but when the State is forced to concede that the starting point is zero, it is impossible for the crime rate to be reduced any further.

The State's fundamental error, adopted by the Court's earlier Order, is that any impediment the State imposes upon the exercise of Second Amendment rights is beneficial. Thus, because neither the State nor the Court could cite any evidence of an ***actual*** benefit flowing from the background check, the Court's conclusion was erroneous. A background check could be a constitutionally cognizable benefit but only if the state had any evidence that the increased burden actually offsets the negative effect on the exercise of fundamental human rights recognized by the Second Amendment. It has no such evidence.

The Order also erred by holding that the Interstate Commerce Clause is only implicated when a state law benefits in-state interests at the expense of out-of-state interests. The Order never once cites *Brown-Forman*, in which the Supreme Court adopted a test that this law fails: "Economic protectionism is not limited to attempts to convey advantages on local merchants; it may include attempts to give local consumers an advantage over consumers in other States." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 580 (1986). The Order erred by limiting its analysis to the economic interest of Mitchell, a Washington *seller*. Economic protectionism is equally forbidden when the effect of a state law is to benefit in-state *purchasers* of any product at the expense of out-of-state purchasers (and in-state sellers). *Id.* This is the obvious effect of the law. For that reason it fails the test of *Oregon Waste Systems, Inc. v. Department of Environmental Quality of State of Or.*, 511 U.S. 93, 99 (1994): "'Discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually per se invalid." This law discriminates against the out-of-state purchaser's economic interests and benefits in-state



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

purchasers. That renders it per se invalid. And because the State cannot identify any single act of criminality which would ever have been prevented by the statute, there is zero corresponding benefit to offset the burden it imposes.[5]

## III. Conclusion.

By imposing a complete ban on the sale of the banned firearms to non-resident purchasers, I-1639 (RCW 9.41.124) obstructs constitutionally protected interstate commerce, requiring a finding that this portion of the law is invalid.

///

[5] The State cannot possibly show a benefit on its own preferred terms, because since implementation of I-1639, firearms deaths have ***increased*** on an absolute and per-population basis in Washington. *See, e.g.*, https://www.cdc.gov/nchs/pressroom/sosmap/firearm_mortality/firearm.htm (10.7 per 100,000 and 842 total in 2019; 10.9 per 100,000 and 864 total in 2020; 11.2 per 100,000 and 896 total in 2021); https://www.waspc.org/assets/CJIS/CIW%20Report%20News%20Release%207-10-23.pdf ("The rate of murders, violent and property crimes rose across the state" in 2022); https://www.waspc.org/assets/Crime%20in%20Washington%202022-compressed.pdf%2007-2023.pdf (detailed report of crime statistics in Washington state for 2022 showing increase in offenses committed with firearms).



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

I certify that the foregoing brief contains 1,746 words, in accordance with the Local Rule and this Court's Order on briefing this matter.

///

January 8, 2024.

ARD LAW GROUP PLLC

By: ____________________
Joel B. Ard, WSBA # 40104
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243
Attorneys for Plaintiffs

ALBRECHT LAW PLLC

By: ____________________
Matthew C. Albrecht, WSBA #36801
David K. DeWolf, WSBA #10875
421 W. Riverside Ave., Ste. 614
Spokane, WA 99201
(509) 495-1246
Attorneys for Plaintiffs