THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL MITCHELL, *et al.*, | CASE NO. C19-5106-JCC |
| Plaintiffs, | ORDER |
| v. | |
| CHUCK ATKINS, *et al.*, | |
| Defendants, | |
| and | |
| SAFE SCHOOLS SAFE COMMUNITIES, | |
| Intervenor-Defendant. | |

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 150, 151). Having thoroughly considered the briefing and the relevant record, the Court GRANTS Defendants' and Intervenor-Defendant's motion and DENIES Plaintiffs' motion for the reasons explained herein.

I.  **BACKGROUND**

Plaintiffs are licensed firearm dealers residing in Washington. (Dkt. No. 1.) In 2019, they brought this suit challenging the constitutionality of section 12 of Washington State Initiative

ORDER
C19-5106-JCC
PAGE - 1

1  Measure 1639 ("I-1639"), which was approved by voters in 2018.[1] Section 12 amended
2  RCW 9.41.124, which legalized the in-person sale of rifles and shotguns to nonresidents. 1970
3  Wash. Sess. Laws, ch. 74, § 2 (originally codified at RCW 19.70.020, codified as amended at
4  RCW 9.41.124). Specifically, it narrowed the scope of that permission by removing semi-
5  automatic rifles ("SARs") from the category of "rifles and shotguns" that legally may be
6  purchased in person by nonresidents. *See* RCW 9.41.124. Federal law already prohibits in-person
7  handgun sales to nonresidents of a state. 18 U.S.C. § 922(a)(5)(A), (b)(3). Section 12 in effect
8  mirrors that requirement for SARs. Plaintiffs are licensed firearm dealers in the state of
9  Washington and allege that I-1639 is unconstitutional under the Dormant Commerce Clause.

## II. DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts in the light most favorable to the nonmoving party and draw justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Standing

As a threshold matter, the Court first addresses Defendants' justiciability argument. (*See generally* Dkt. No. 151.) Defendants argue that Plaintiffs lack standing to challenge I-1639

---

[1] I-1639 expanded background checks for gun purchases in Washington, prohibited those under age 21 from purchasing a semi-automatic rifle, and prohibited in-person sales of such rifles to out-of-state purchasers. The constitutional challenge here is to the third provision prohibiting in-person sales of SARs to non-Washington residents (the "Nonresident Sales Provision").

because they have not indicated an intent to violate the statute, nor do they face the specter of prosecution or administrative revocation. (*Id*.)

A plaintiff only has standing to sue if they present a legitimate "case of controversy," meaning the issues are "definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). Ripeness and standing overlap by both focusing on whether an injury is "real and concrete." *Id*. (quoting Gene R. Nichol, Jr., Ripeness and the Constitution, 54 U. CHI. L. REV. 153, 172 (1987)). When plaintiffs challenge a statute, the standing and ripeness requirements are met if "the plaintiffs face a *realistic* danger of sustaining a direct injury as a result of the statute's operation or *enforcement*," rather than an "imaginary or speculative" threat. *Id*. (emphasis added). In other words, there must be a "genuine threat of imminent prosecution." *Id*. (quoting *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126–27 (9th Cir. 1996)). "In evaluating the genuineness of a claimed threat of prosecution, [courts] look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Id.* (quoting *Reno*, 98 F.3d at 1126–27). Moreover, "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979).

Here, Plaintiffs' allegations identify a sufficiently definite injury for purposes of standing and ripeness. While the State may not have fashioned specific plans to enforce the challenged law against Plaintiffs, the entire business of selling guns is a "course of conduct" that makes prosecution under Washington's gun laws a realistic threat. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). This threat can be structurally inferred from RCW 9.41.090

1  which *requires* a gun-dealer to notify law enforcement each time they want to sell a pistol or
2  semiautomatic assault rifle.[2] It is difficult to see how Plaintiffs could sustain a more concrete
3  form of injury without violating the law. The standing and ripeness requirements have therefore
4  been satisfied, and the Court DENIES Defendants summary judgment on this issue.

5         **C.**       **Constitutionality of RCW 9.41.124 under the Dormant Commerce Clause**

6        The Commerce Clause provides that Congress shall have the power "[t]o regulate
7  Commerce with foreign Nations, and among several states, and with the Indian Tribes." U.S.
8  Const. Art. 1, § 8, cl. 3. In addition to this express grant of power to Congress, the Commerce
9  Clause has an implicit negative aspect—known as the Dormant Commerce Clause—that
10 "prohibits state laws that unduly restrict interstate commerce." *Tenn. Wine & Spirit Retailers*
11 *Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). The Dormant Commerce Clause serves as a
12 bulwark against state programs of "economic protectionism—that is, regulatory measures
13 designed to benefit in-state economic interests by burdening out-of-state competitors." *Int'l*
14 *Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) (internal citations and
15 quotations omitted).

16       To determine whether a law violates the Dormant Commerce Clause, courts "first ask
17 whether it discriminates on its face against interstate commerce." *United Haulers Ass'n v.*
18 *Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338–39 (2007). If so, the law is
19 invalid unless the state "has no other means to advance a legitimate local purpose." *Id*. (citing
20 *Maine v. Taylor*, 477 U.S. 131, 138 (1986)). If the law is non-discriminatory, however, it violates
21 the Dormant Commerce Clause only if the burden on interstate commerce is "clearly excessive
22 in relation to the putative local benefits." *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir.

---

[2] I-1639's amendments to RCW 9.41.090 provide that a dealer may not deliver a pistol or semiautomatic assault rifle until they have obtained an application from the purchaser, delivered it to the local chief of police or sheriff, and waited the requisite time period without receiving a response. RCW 9.41.090(6)(a)-(c). If the chief of police or sheriff find that the purchaser is ineligible to buy a firearm, they must deny the application. RCW 9.41.090(6)(c).

2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). This *Pike* balancing test requires "sensitive consideration of the weight and nature of the state regulatory concern in light of the extent of the burden imposed on the course of interstate commerce." *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 441 (1978). And to prove a Dormant Commerce Clause violation, that burden must be "substantial." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (citing *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984)).

1. <u>Facial Discrimination Against Interstate Commerce</u>

The threshold question under the Dormant Commerce Clause is whether the law is discriminatory on its face. The term "discrimination" has a specific meaning in the Dormant Commerce Clause context: it 'simply means differential treatment of in-state and out-of-state economic interests that *benefits* the former and *burdens* the latter.'" *Rocky Mtn. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)). Mere differential treatment of in-state and out-of-state interests is insufficient to establish discrimination. Rather, there must be some *economic* benefit to in-state interests or some economic burden on out-of-state interests. *City of Phila. v. New Jersey*, 437 U.S. 617, 624 (1978) ("The crucial inquiry . . . [is] whether [the law] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental."). Indeed, "[t]he central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994).

On its face, Section 12 does not trigger this protectionism concern because it neither benefits in-state economic interests nor burdens out-of-state economic interests. Indeed, the statute signifies a burden to Washington economic interests. Conversely, the likely economic

beneficiaries of a prohibition on Washington sales to out-of-state buyers are out-of-state gun dealers who would see a corresponding increase in sales at the expense of Washington gun dealers. In other words, the Washington law neither has the potential to excite jealousies or court retaliatory measures. *See C & A Carbone*, 511 U.S. at 390. Unsurprisingly, Plaintiffs fail to offer evidence creating a genuine dispute on this threshold issue. (*See generally*, Dkt. No. 150.) Accordingly, the core concern of discriminatory state protectionism under the Dormant Commerce Clause is not triggered and Section 12 is not *prima facie* discriminatory.

### 2. The *Pike* Balancing Test

Absent facial discrimination, a law need only satisfy the *Pike* balancing test, under which courts "will uphold the law 'unless the burden imposed on [interstate] commerce is *clearly excessive* in relation to the *putative* local benefits.'" *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (emphasis added). Plaintiffs "bear the burden of proof in establishing the excessive burden in relation to the local benefits." *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 528 (9th Cir. 2009).

As noted, Plaintiffs fail to put forth evidence showing how the law confers an economic benefit to in-state interests or an economic burden on out-of-state interests. By contrast, I-1639's noneconomic *putative* benefits are self-evident.[3] Indeed, there are few interests more paramount to state governments than protecting public safety, and especially "the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000). To

---

[3] At the Founding, single-fire muskets had certain democratic properties. A person had to get close to kill you and, in getting close, he typically rendered himself vulnerable to counterattack. It took time to reload, and so one person could not kill dozens in a few seconds. One person, one gun, one shot was not as perfect a system of majority rule as one person, one vote, but the side with the most men often won. Today, technological advancements have made the right to bear arms substantially more dangerous. Washington's regulation of firearms is just another paradigmatic example of the police power which the Founders reposed in the States. *See United States v. Morrison*, 529 U.S. 598, 618 (2000) ("[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime.")

advance this public-safety interest, the people of Washington, <u>with over 59% of the vote</u>, extended an existing safeguard on handgun sales to SAR sales.[4] This decision is more than legitimate—it is *compelling*. *See, e.g.*, *Mance v. Sessions*, 896 F.3d 699, 719 (5th Cir. 2018) (federal prohibition on in-person sales of handguns to nonresidents, 18 U.S.C. § 922(a)(3), was "justified by a *compelling* . . . interest and is narrowly tailored to serve that interest").

The Supreme Court's recent decision in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), supports insulating I-1639 from judicial invalidation. As the Court noted, "preventing state officials from enforcing a *democratically adopted* state law in the name of the dormant Commerce Clause is a matter of "extreme delicacy," something courts should do only "where the infraction is clear." *Id*. at 1165 (quoting *Conway v. Taylor's Executor*, 1 Black 603, 634 (1862)). In a plurality opinion, Justice Gorsuch wrote that the fact that California's new law might shift market share from one set of producers to another did not constitute a sufficient burden on interstate commerce to warrant further judicial scrutiny. *Id.* at 1166 (*See* Sotomayor, J., concurring in part) (citing *id.* at 1164–65 (majority opinion)). Here, as there, any shift in the economic balances-of-power among gun manufacturers in the SARs market is of no import under *Pike*. And in any event, even assuming, *arguendo*, that I-1639 imposes a burden on interstate commerce, this would still fail to offset the substantial benefit to public safety that *the people* of Washington voted for.

Accordingly, the Nonresident Sales Provision is constitutional under *Pike*.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (Dkt. No. 150) is DENIED, and Defendants' and Intervenor's cross motion for summary judgment (Dkt. No. 151) is GRANTED. Plaintiffs' amended complaint (Dkt. No. 17) is DISMISSED with prejudice.

---

[4] As explained by Defendants' law enforcement expert Mark Jones—a former special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives— "mass shootings . . . are demonstrably more lethal when the assailant uses a [SAR] than when other firearms are used." (Dkt. No. 89 at pp. 15–16.)

DATED this 23rd day of February 2024.

_John C. Coughenour_
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C19-5106-JCC
PAGE - 8